**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LYNN KOHAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:06 CV 01066 (RCL) |
| | ) |
| H&R BLOCK, INC. and | ) |
| H&R BLOCK FINANCIAL ADVISORS, INC. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**
**AND POSTPONE DATE TO ANSWER OR OTHERWISE PLEAD**

Defendants, H&R Block, Inc. ("Block") and H&R Block Financial Advisors, Inc. ("HRBFA"), by their counsel, hereby move this Court pursuant to 28 U.S.C. §1404(a) to transfer this action to the United States District Court for the Western District of Missouri, Western Division. Pursuant to Fed. R. Civ. P. 6(b), Defendants also request that the date for filing their answers or other responsive pleadings to Plaintiff's Complaint be postponed until after this Court rules on Defendants' motion to transfer or, alternatively, until such time as the Court in the Western District of Missouri sets for the filing of responsive pleadings.

**INTRODUCTION**

Plaintiff brought this suit on behalf of the general public of the District of Columbia, alleging that Defendants violated the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.* through deception and misrepresentations in connection with the marketing and sale of a qualified, federally-insured cash deposit account called the "Express IRA" ("XIRA").[1] Plaintiff's complaint alleges substantially similar facts and mirrors

---

[1] Plaintiff filed this suit on May 8, 2006 in the Superior Court of the District of Columbia and the complaint was served on Defendants on May 10. On June 9, 2006, Defendants removed the case to this Court under 28 U.S.C. § 1441 on the basis of diversity of citizenship.

1

the allegations of a lawsuit filed by the Attorney General of the State of New York on March 15, 2006.

Since the filing of the New York Attorney General's lawsuit, 15 XIRA class action lawsuits that also allege substantially similar facts and allegations have been filed in federal district courts. Nine of the XIRA cases were originally filed in the Western District of Missouri, while five other cases were filed in other district courts but have now been transferred to the Western District of Missouri.[2] Defendants have moved to consolidate the cases in the Western District of Missouri into a single proceeding before that Court. Thus, the present case is now one of only two XIRA lawsuits that are still pending outside the Western District of Missouri, and a motion to transfer the other case from the Southern District of Illinois to the Western District of Missouri is fully briefed and awaiting decision.[3]

The same reasons that caused other XIRA plaintiffs to file in the Western District of Missouri and convinced other federal courts to transfer XIRA cases to that district also compel the transfer of this case to that court. Accordingly, Defendants ask this Court to transfer this case to the Western District of Missouri, where it may be consolidated with the other 14 XIRA cases in that Court to avoid the waste of time, energy and money associated with duplicative, piecemeal litigation.

---

[2] On May 9, 2006, Judge W. Harold Albritton of the Middle District of Alabama transferred an XIRA case to the Western District of Missouri. (*Dowda v. H&R Block Tax Services, Inc.*, No. 2:06-CV-00255-WHA (M.D. Ala.); Exhibit A, attached.) On May 12, 2006, Judge E. Richard Webber of the Eastern District of Missouri consolidated three XIRA cases and then transferred them to the Western District of Missouri. (*Silverberg v. H&R Block, Inc.*, No. 4:06 CV 00519 ERW (E.D. Mo.); Exhibit B, attached.) On May 17, 2006, Judge Garnett Thomas Eisele of the Eastern District of Arkansas transferred an XIRA case to the Western District of Missouri. (*Jenkins v. H&R Block, Inc.*, No. 4:06-CV-00365 GTE (E.D. Ark.); Exhibit C, attached.)

[3] *Perkins v. H&R Block, Inc.*, No. 06-317-GPM (S.D. Ill.) was filed in the Southern District of Illinois on April 24, 2006, and briefing on Defendants' motion to transfer venue to the Western District of Missouri was completed on June 5, 2006.

**ARGUMENT**

This Court has discretion to transfer venue of this action to the Western District of Missouri under 28 U.S.C. § 1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The purpose of this provision is to prevent avoidable "waste of time, energy and money" and to "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *See Williams v. Purdue Pharma Co.*, No. 04-451 (EGS), 2004 U.S. Dist. LEXIS 10395, at *3 (D.D.C. Jun. 3, 2004) (*quoting Van Dusen v. Barrack*, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)). As an initial matter, transfer under Section 1404(a) is appropriate only if venue would originally have been proper in the desired district of transfer. *Trout Unlimited v. United States Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). Once this threshold has been met, Section 1404(a) vests the district courts with broad discretion to transfer venue in accordance with individualized, case-by-case considerations of convenience and fairness. *Id.* In addition to the convenience of parties and witnesses and the interest of justice, courts in the District of Columbia have outlined a number of case-specific private and public interest factors to weigh when considering transfer under Section 1404(a). *Id.* All of these factors weigh heavily in favor of transfer here, as "a venue transfer in this case is likely to save a significant amount of time, energy and money." *Jenkins*, Exhibit C at 4.

## I.     VENUE IS PROPER IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI.

When a party seeks to transfer venue under 28 U.S.C. § 1404(a), the threshold question is whether the case could originally have been brought in the desired district of transfer. *Trout Unlimited*, 944 F. Supp. at 16. Venue is proper in a judicial district where any defendant resides

or in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.   28 U.S.C. § 1391(a).   Venue is clearly proper in the Western District of Missouri, because Block is incorporated under the laws of the State of Missouri and maintains its principal place of business in Kansas City, Missouri, which lies in the Western District of Missouri.   (Affidavit of Brian Christensen ¶ 2, attached as Exhibit D.)   In addition, activities related to the development of the XIRA product which serve as the basis for many of the alleged acts or omissions giving rise to Plaintiff's claims involved individuals who work at Block's headquarters in Kansas City, Missouri.  (Christensen Aff. ¶  5.)

Although Defendants believe that questions exist regarding whether personal jurisdiction over them can be established in the District of Columbia, this Court may nonetheless exercise its authority to transfer the case regardless whether personal jurisdiction exists over Defendants. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962) ("Nothing . . . indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants."); *see also Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) ("under 1404(a) as under 1406(a), the transferring court need not have personal jurisdiction over the defendants").

## II.    THE PRIVATE INTERESTS OF THE PARTIES FAVOR TRANSFER TO THE WESTERN DISTRICT OF MISSOURI.

When determining whether transfer is warranted under Section 1404(a), courts weigh the private interests of the parties to determine which party has a more legitimate interest in maintaining venue in its chosen forum.  The private interest factors that the court considers include:  (1) the plaintiff's choice of forum; (2) the defendants' choice of forum; (3) the location where the claim arose; (4) the convenience of the parties; (5) the inconvenience and expense that witnesses must bear; and (6) the ease of access to sources of proof.  *Trout Unlimited*, 944 F.

Supp. at 16; *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52-53 (D.D.C. 2000); *Armco Steel Co., L.P. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991). "The most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." *Yun Ja Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995) (transferring venue where the convenience of the witnesses favored the Western District of New York); *see also DeLoach v. Philip Morris Cos.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000) ("given the number of potential witnesses with first hand knowledge . . . the convenience of the witnesses favored transfer"). Under the facts here, numerous important private interests warrant transfer to the Western District of Missouri.

As discussed above, Block maintains its corporate headquarters in Kansas City, Missouri. (Christensen Aff. ¶ 2.) Development of the XIRA accounts was and is handled out of Block's headquarters in Kansas City, Missouri. (Christensen Aff. ¶ 5.) Defendants have specifically identified by name and job descriptions three key witnesses—Douglas Hartung, Bernie Wilson, and John Thompson—who were or are involved in the development of the Express IRA product at Block headquarters in Kansas City and who will be inconvenienced by traveling to the District of Columbia. (Christensen Aff. ¶ 5.) To the extent Block has any other witnesses relevant to the claims asserted here, all of these witnesses work at Block's headquarters in Kansas City and will be inconvenienced by venue of this action in the District of Columbia.[4] (Christensen Aff. ¶ 6.)

---

[4]   Any such witnesses reside "far beyond the 100-mile limit of the subpoena power of this Court." *See Yun Ja Chung*, 903 F. Supp. at 164 (granting transfer for the convenience of out of state witnesses beyond the subpoena power of this Court). The convenience of witnesses is highly relevant to the analysis even when it appears that witnesses will voluntarily appear in court. *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 52-53 (D.D.C. 2000) (considering both "availability of compulsory process to compel attendance of unwilling witnesses" and "the amount of expense for willing witnesses"); *Armco Steel Co., L.P. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991) (same); *see also DeLoach v. Philip Morris Cos.*, 132 F. Supp. 2d 22, 26 (D.D.C. 2000) (while evidence suggests that defendants' witnesses would appear voluntarily "it can hardly be denied that it would be more convenient for those witnesses to testify in North Carolina, where many of them live, than in the District of Columbia").

5

Furthermore, the overwhelming majority of the documents relevant to the claims and defenses at issue in this case are located at Block's headquarters in Kansas City. (Christensen Aff. ¶ 7.) While other witnesses and documents may be located at HRBFA's headquarters in Detroit, none of Defendants' relevant documents or witnesses are located in the District of Columbia. On the other hand, there exists no compelling basis for maintaining venue in the District of Columbia, which has a peripheral connection to the facts of this dispute.  Indeed, in her Complaint, Plaintiff does not allege that she was involved in any transaction that took place in the District of Columbia, and has not alleged any conduct or activity that has not already been alleged in one of the other XIRA cases now pending in the Western District of Missouri.  While "the court must afford some deference to the plaintiff's choice of forum . . . this deference is mitigated where the plaintiff's choice of forum has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'"  *Trout Unlimited*, 944 F. Supp. at 17 (*quoting Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995)); *Armco Steel Co.*, 790 F. Supp. at 323; *see also Williams*, 2004 U.S. Dist. LEXIS 10395 at *1-5 (deference to plaintiff's choice of venue overcome where events giving rise to claim occurred in Southern District of New York and 39 of 60 similar cases were pending in that district).  Plaintiff has chosen venue in the District of Columbia because she resides in this district (Comp. at ¶ 8), but she does not allege that she herself transacted business with Defendants in the District of Columbia or that any underlying events that allegedly give rise to this litigation occurred in the District of Columbia.  Indeed, Plaintiff asserts that she "seeks to represent residents of this district who have purchased an Express IRA from Defendants" (Comp. at ¶ 8), but she fails to allege that she herself made such a purchase.

Plaintiff alleges that Defendants conduct extensive business in the District of Columbia and that Block has at least 18 offices operating in the District (Comp. at ¶¶ 5-6), and asserts that venue is proper because Defendants transact business and have caused injury here (*Id*. at ¶ 8).  In fact, Block's lone office in the District of Columbia is a government relations office that does not conduct business with consumers.[5]  Of greater significance, however, is the fact that Plaintiff does not and cannot allege that any underlying activities or events that give rise to this litigation occurred in the District of Columbia.  Plaintiff sets forth the same alleged acts and omissions as the other XIRA cases, and which, if they are attributed to Block or HRBFA, would have emanated, respectively, from Block's headquarters in the Western District of Missouri or HRBFA's headquarters in Detroit.

The District of Columbia was but one of many nationwide markets for the XIRA product, and XIRA customers residing across the country are now pursuing nearly-identical claims on behalf of themselves and others against Defendants.  Indeed, plaintiffs residing in Missouri, Florida, New York, New Jersey, California, Alabama, Indiana, Arkansas, Illinois, and New Hampshire have already filed nearly identical lawsuits against Defendants arising out of the establishment of XIRAs in their home states.  Because plaintiffs residing in any of these 10 states would each have an identical interest in asserting venue in their home states, "the claim of any one plaintiff that a forum is appropriate merely because it is [her] home forum is considerably weakened."  *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524, 91 L. Ed. 1067, 67

---

[5] H&R Block, Inc. is a holding company that conducts no business with consumers directly. Offices bearing the name "H&R Block" that are located in and around the District of Columbia are not owned or operated by H&R Block, Inc.  "H&R Block" is a federally-registered service mark that is owned by an indirect H&R Block, Inc. subsidiary and licensed for use by other H&R Block, Inc. subsidiaries and third-party licensees, such as independent franchises operating under that mark. (Affidavit of Bret G. Wilson ¶ 8-9, attached as Exhibit E.)

S. Ct. 828 (1947).   Other district courts have recognized that this controversy has a greater connection to the Western District of Missouri than to other districts in which plaintiffs have filed XIRA lawsuits, and have transferred five such cases to the Western District of Missouri. *Dowda*, Exhibit A; *Silverberg*, Exhibit B at 6; *Jenkins*, Exhibit C at 4.   A similar result should obtain here.

### III.     THE PUBLIC INTERESTS OF THE COURT FAVOR TRANSFER TO THE WESTERN DISTRICT OF MISSOURI.

The public interests of the court strongly favor transfer of this action to the Western District of Missouri, where the case can be consolidated with 14 other XIRA cases there which allege substantially similar facts and claims.   The public interests of the court are so significant that where interests of judicial efficiency require it, courts will transfer a case even when transfer is not necessary for the convenience of the parties and witnesses.   *Hawksbill Sea Turtle v. Federal Emergency Mgmt. Agency*, 939 F. Supp. 1, 4 (D.D.C. 1996) (the interest of justice "may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction."); *see also Coffey*, 796 F.2d at 221.   Factors to consider when weighing the public interests of the court include: (1) the interests of judicial economy and efficiency; (2) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.   *See Trout Unlimited*, 944 F. Supp. at 16; *Reiffin*, 104 F. Supp. 2d at 55.

As other district courts considering motions to transfer XIRA cases have found, the interest of justice unequivocally supports transfer to the Western District of Missouri. *Silverberg*, Exhibit B at 6 ("the interests of justice weigh heavily in favor of transfer"); *see also Jenkins*, Exhibit C at 4.   "Factors traditionally considered in an 'interest of justice' analysis relate

to the efficient administration of the court system." *Coffey*, 796 F.2d at 220.  When determining

if transfer is necessary in the interest of justice, "the Court may consider the interest of

conserving judicial resources and practical considerations which will facilitate a final resolution

of the litigation in an expeditious and inexpensive manner." *Harris v. Republic Airlines*, 699 F.

Supp. 961, 962 (D.D.C. 1988).  One of the most significant considerations is whether the action

could be transferred and consolidated with other actions in the transferee district.  *Coffey*, 796

F.2d at 221; *Vencor Nursing Centers, L.P. v. Shalala*, 63 F. Supp. 2d 1, 6 (D.D.C. 1999) ("the

interest-of-justice factor encompasses the desire to avoid multiple litigation from a single

transaction [and] to try related litigation together").  The Supreme Court has acknowledged that

"[t]o permit a situation in which two cases involving precisely the same issues are

simultaneously pending in different District Courts leads to the wastefulness of time, energy and

money that § 1404(a) was designed to prevent."  *Continental Grain Co. v. Barge FBL-585*, 364

U.S. 19, 26, 80 S. Ct. 1470, 1474, 4 L. Ed. 2d 1540 (1960); *see also Coffey*, 796 F.2d at 221

("related litigation should be transferred to a forum where consolidation is feasible").

Courts in this district have unanimously agreed that "[t]he interests of justice are better

served when a case is transferred to the district where related actions are pending."  *See Martin-*

*Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987) (transfer to the District of Connecticut,

where "bankruptcy proceedings related directly to this case, involving similar facts and players,

have long been pending"); *Cal. Farm Bureau Fed'n v. Badgley*, No. 02-2328, 2005 U.S. Dist.

LEXIS 12861 (D.D.C. Jun. 29, 2005) (transfer to the Eastern District of California to avoid

"duplicitous litigation" of nearly identical issues); *Williams*, 2004 U.S. Dist. LEXIS 10395 at *1-

5 (transfer to the Southern District of New York, where 39 of 60 nearly identical cases were

pending); *Reiffin*, 104 F. Supp. 2d at 56 (transfer to the Northern District of California where

"the facts and the legal issues in the complaint" overlapped with an action pending there); *Professional Ass'n. Travel Service v. Arrow Air, Inc.*, 597 F. Supp. 475, 477 (D.D.C. 1984) (transfer to the Southern District of New York, where a similar class action lawsuit was pending, because transfer was "in the interests of justice and will provide for a single, coherent, consistent judgment"); *Iran v. Boeing Co.*, 477 F. Supp. 142 (D.D.C. 1979) (transfer to the Western District of Washington where similar issues were pending, because "[l]itigation of such related claims in the same forum is strongly favored" and litigation in a second court "would be a grossly inefficient use of judicial resources"); *Celanese Corp v. Federal Energy Admin.*, 410 F. Supp. 571 (D.D.C. 1976) (interest of justice weighs "heavily in favor of transferring" case sharing similar factual and legal issues with five cases in the Eastern District of Michigan). Indeed, "this court has transferred an action to a district which had cases sharing only 'the same factual underpinning,' even though the actions in the transferee court concerned different legal issues." *Reiffin*, 104 F. Supp. 2d at 56 (*citing Comptroller v. Calhoun First Nat'l. Bank*, 626 F. Supp. 137, 141 (D.D.C. 1985)).

Here, both the facts and the legal issues in the complaint overlap with those pending in the Western District of Missouri. As discussed above, the substantive allegations of the present case mirror those of 15 essentially identical class action lawsuits that have been filed in courts nationwide, 14 of which are already pending in Western District of Missouri and which Defendants have moved to consolidate into one proceeding in that court. All but one of the 15 other XIRA cases were filed before this case was filed in the Superior Court of the District of Columbia and transferred to this Court. While Plaintiff does not bring this as a class action, the residents of the District of Columbia whom Kohan seeks to represent would constitute a subset

and be part of the nationwide class alleged by all but one of the cases pending in the Western District of Missouri.[6]

These XIRA cases pending in the Western District of Missouri set forth a number of common law claims as well as claims based on state consumer protection statutes, such as Missouri's Merchandising Practices Act (Mo. Rev. Stat. § 407.010 *et seq.*), Florida's Unfair & Deceptive Trade Practices Act (Fl. St. Ann. § 501.204 and 501.211), and Michigan's Consumer Protection Act (Mich. Comp. Laws. Ann. § 445.901 et seq.). If consolidation of the XIRA cases occurs and a Consolidated Complaint is filed, whatever differences currently exist between the various claims will likely be resolved. Even if a Consolidated Complaint is not filed, however, the Western District of Missouri will be required to interpret and apply consumer statutes of several states and should have little additional difficulty applying the District of Columbia's Consumer Protection Procedures Act (D.C. Code § 28-3901 *et seq.*).

Not only will transfer of this case to the Western District of Missouri greatly promote the efficient use of judicial resources by allowing the parties to consolidate identical claims and avoid piecemeal litigation, but transfer to the Western District of Missouri will also be more efficient because that court is less congested than the District Court for the District of Columbia. *Compare* District of Columbia Judicial Profile *with* Western District of Missouri Judicial Profile (Attached as Exhibit F). In 2005, this Court had 4,634 pending cases, while the Western District of Missouri had only 2,842 cases pending. Similarly, in 2005 this Court had 468 civil cases more than three years old pending on the Court's docket (amounting to 14.1 percent of the

---

[6]   In contrast to the 14 other XIRA lawsuits which assert nationwide class actions, *Adams v. H&R Block, Inc. and H&R Block Financial Advisors, Inc.*, Case No. 4:06-cv-00231-GAF (W.D. Mo.) asserts only a class of Florida residents.

Court's caseload), while the Western District of Missouri had only 39 cases more than three years old pending on the docket (amounting to 1.9 percent of the total caseload).

Finally, as already addressed above, the present dispute is a nationwide controversy based on factual allegations that have no meaningful connection to the District of Columbia other than the fact that Plaintiff resides here. Therefore, the District of Columbia has no compelling interest in deciding this nationwide controversy at home. *See Reiffin*, 104 F. Supp. 2d at 56 ("Because this controversy is not entirely or peculiarly local, this is not a compelling factor in this case."). On the contrary, the Western District of Missouri has a much more significant interest in regulating the conduct of its local residents, especially because the conduct complained of arises out a product that was developed by individuals working in that district.

## IV.    DEFENDANTS' TIME TO ANSWER OR OTHERWISE PLEAD SHOULD BE ENLARGED.

Plaintiff filed her Complaint on May 8, 2006. By agreement of the parties, Defendants' time to answer or otherwise plead is currently set for June 20, 2006. As discussed above, judicial economy and the interest of justice dictates that this case should be transferred to the Western District of Missouri where Defendants will seek to consolidate it with the 14 class actions challenging Express IRAs that are certain to be litigated there. Accordingly, Defendants request that this Court grant their request to transfer this case and postpone the time for all Defendants to answer or otherwise plead until a date to be determined after this Court rules on Defendants' motion to transfer or, alternatively, until such time as the Court in the Western District of Missouri sets for the filing of responsive pleadings in order to avoid a situation in which Defendants are required to answer repetitive complaints on a piecemeal basis.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court exercise its discretion under 28 U.S.C. § 1404(a) to transfer this action to the United States District Court for the Western District of Missouri, Western Division.  Pursuant to Fed. R. Civ. P. 6(b), Defendants also request that the date for filing their answers or other responsive pleadings be postponed until after this Court rules on the Defendants' motion to transfer or, alternatively, until such time as the Court in the Western District of Missouri sets for the filing of responsive pleadings.

Dated:  June 20, 2006

Respectfully submitted,

**H&R BLOCK, INC. and H&R BLOCK FINANCIAL ADVISORS, INC.**

By:    /s/   Michael B. DeSanctis

One of Their Attorneys

Paul M. Smith (D.C. Bar No. 358870)
Michael B. DeSanctis (D.C. Bar No. 460961)
Ginger D. Anders (D.C. Bar No. 494471)
JENNER & BLOCK LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington DC 20005-3823
Telephone: 202-639-6000
Facsimile: 202-639-6066

Anton R. Valukas
Matthew M. Neumeier
Richard P. Steinken
Molly J. Moran
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2006, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

> Tracy D. Rezvani
> Donald J. Enright
> Hilary Ratway
> Stan M. Doerrer
> FINKELSTEIN, THOMPSON & LOUGHRAN
> The Duvall Foundry
> 1050 30th Street. NW
> Washington, DC 20007
> (202) 337-8000
> (202) 337-8090 fax

/s/    Michael B. DeSanctis