**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LYNN KOHAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:06 CV 01066 (RCL) |
| | ) | |
| H&R BLOCK, INC. and | ) | |
| H&R BLOCK FINANCIAL ADVISORS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Plaintiff Lynn Kohan has moved to remand this suit to the Superior Court of the District of Columbia on the ground that diversity jurisdiction does not exist because the amount in controversy requirement is not satisfied. However, because Plaintiff chose to file her lawsuit as an individual rather than class action, the rule against aggregation on which Plaintiff relies does not apply. As a result, the amount in controversy requirement is easily met, diversity jurisdiction plainly exists, and the Court should deny Plaintiff's motion to remand.

## BACKGROUND

Plaintiff brought this suit in the Superior Court of the District of Columbia on behalf of the general public of the District of Columbia, alleging that Defendants violated the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*, through deception and misrepresentations in connection with the marketing and sale of a qualified, federally-insured cash deposit individual retirement account called the "Express IRA" ("XIRA"). Plaintiff's factual allegations mirror those made by the Attorney General of New York in a state court action filed on March 15, 2006, as well as those made in 15 XIRA class actions

subsequently filed in various district courts, all but one of which are now pending in the Western District of Missouri.[1]

Plaintiff alleges that Defendants violated section 28-3904's prohibition on deceptive trade practices when they marketed the Express IRA to H&R Block customers, but failed to fully disclose the fees and tax penalties associated with the XIRA and to adequately warn customers that the fees and penalties could result in the reduction of principal over time.  Compl. ¶¶ 2-3, 61-62.  Plaintiff contends that Defendants engaged in this conduct in the District of Columbia so there is "reason to believe that Defendants have caused, and will continue to cause damage and adverse effects to residents of this District."  *Id.* ¶ 10.  Plaintiff does not allege that she invested in an XIRA or was injured by Defendants' conduct, rather she brings this suit "for the benefit of the General Public."  *Id.*  As a remedy, Plaintiff seeks an injunction against "Defendants' conduct found to be in violation of the [CPPA]," *id.* ¶ (b); an order "granting Plaintiff and the General Public of the District of Columbia treble damages or statutory damages in the amount of $1,500 [per violation], whichever is greater," *id.* ¶ (c); and an order "granting Plaintiff her costs of prosecuting this action, including attorneys' fees, experts' fees and costs together with interest," *id.* ¶ (d).

Defendants removed this action to this Court on June 9, 2006, pursuant to 28 U.S.C. §§ 1441 and 1332, on the grounds that this Court has original jurisdiction over this action because the parties are citizens of different states and the amount in controversy exceeds $75,000.  *See* Defendants' Notice of Removal ("Notice") ¶ 3.  Plaintiff is a resident of the

---

[1] Briefing on Defendants' motion to transfer *Perkins v. H&R Block, Inc.*, No. 06-317-GPM (S.D. Ill.) was completed on June 5, 2006.  Since Defendants removed the present action, two new XIRA class actions have been filed in the Eastern District of Michigan and one in the Southern District of Florida.  Defendants intend to seek transfer of those actions to the Western District of Missouri.

District of Columbia, while Defendant H&R Block, Inc., is incorporated in Missouri with its headquarters in Kansas City, Missouri, and Defendant H&R Block Financial Advisors, Inc., is incorporated in Michigan with its headquarters in Detroit, Michigan.  *See* Notice ¶ 4; Compl. ¶ 8. Defendants alleged that the amount in controversy requirement is satisfied because the costs to Defendants of complying with the injunction sought by Plaintiff, the total amount of statutory damages sought in the Complaint, and the amount of attorney's fees, independently and in combination, amount to well over $75,000.  *See* Notice ¶¶ 5-8.

On June 22, 2006, Plaintiff moved to remand this case to the Superior Court.  Although conceding that complete diversity of citizenship exists, Plaintiff disputes that the amount at stake meets the $75,000 jurisdictional requirement specified in section 1332(a).  Because the assertion of jurisdiction in this Court is supported by the facts and well-reasoned authority, the motion to remand should be denied.

## <u>ARGUMENT</u>

Plaintiff Kohan's invocation of the substantial and far-reaching remedies provided by the CPPA against Defendants cause the $75,000 amount in controversy requirement to be easily satisfied.  As established in Defendants' Notice of Removal, the following remedies sought by Plaintiff, both individually and combined, easily will exceed $75,000:  (1) the costs of complying with any injunctive relief obtained by Plaintiff, measured from Defendants' perspective;  (2) the total amount of statutory damages sought by Plaintiff; and  (3) the amount of attorney's fees that Plaintiff seeks and potentially will be awarded pursuant to the CPPA.  Therefore, this Court should deny Plaintiff's motion to remand.

Plaintiff's arguments in favor of remand primarily depend on her characterization of this lawsuit as a class action.  *See* Pl's. Mem. at 4.  With this characterization, Plaintiff argues that

the claims of multiple plaintiffs cannot be aggregated for purposes of determining the amount in controversy, *see Snyder v. Harris*, 394 U.S. 332 (1969), and that Defendants must establish that the amount at stake here for at least one plaintiff individually exceeds $75,000. Under Plaintiff's theory, the total cost of this litigation, measured in terms of the injunction sought by Plaintiff, the amount of statutory damages sought, and the potential recovery of attorneys' fees, cannot be used to satisfy section 1332's jurisdictional amount requirement.

Plaintiff's anti-aggregation arguments, however, rest on a fundamental misconception of the nature of the lawsuit that Plaintiff herself decided to bring. While invoking statutory authorization to assert the interests of the general public as a whole, Plaintiff chose to file this lawsuit as an individual action involving only one Plaintiff, and not as a class action or other multiple plaintiff suit, which also are authorized by the statute. As a result, there are no individual claims by multiple plaintiffs to aggregate, and the rule against aggregation on which Plaintiff relies so heavily is inapplicable here. In the absence of the rule against aggregation, Defendants' allegations regarding the amounts in controversy for the primary categories of relief sought by Plaintiff are substantial enough to satisfy the jurisdictional amount requirement.

## I.    THE LEGAL STANDARD

Removal is proper where the federal court would have had original jurisdiction over the plaintiff's complaint had that complaint been initially filed in federal court. *See* 28 U.S.C. § 1441(a). Where original federal jurisdiction is premised on diversity of citizenship, and the existence of jurisdiction turns on whether the amount in controversy is sufficient to satisfy the jurisdictional requirement set forth in section 1332(a), the court should uphold jurisdiction unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Naegele v.*

*Albers*, 355 F. Supp. 2d 129, 133 (D.D.C. 2005) ("[I]t must appear to a legal certainty that the claim is for less than the jurisdictional amount."); *General Electric Capitol Corp. v. Limousines Unlimited LLC*, No. CV-04-976 (RCL), 2005 WL 3276279, at *1 (D.D.C. Aug. 2, 2005) (same). Thus, although the party invoking federal jurisdiction bears the burden of establishing that jurisdiction, where the existence of jurisdiction turns on the amount in controversy, "this burden is not a heavy one." *Ball v. Hershey Foods Corp.*, 842 F. Supp. 44, 47 (D. Conn. 1993); *see also Martin v. Gibson*, 723 F.2d 989, 991-92 (D.C. Cir. 1983) (the *St. Paul Mercury* standard requiring legal certainty that the amount-in-controversy requirement will not be fulfilled is "an exacting one").

## II.    THE PRESENT SUIT IS AN INDIVIDUAL PRIVATE ATTORNEY GENERAL ACTION, NOT A CLASS ACTION OR MULTI-PLAINTIFF ACTION.

While Plaintiff attempts to characterize her lawsuit as a class action for purposes of gaining a remand, she brought this suit under the CPPA as an *individual* action asserting the rights of the general public. In doing so, Plaintiff consciously selected one of the several options available to District of Columbia consumers under the CPPA to challenge defendants who engage in deceptive practices. Under section 28-3905(k)(1), a Plaintiff may bring an action on her own behalf or, if she wishes to obtain broader relief, may bring either a traditional multi-plaintiff class action, in which numerous plaintiffs jointly assert similar but independent claims, or a private attorney general action, in which a private person acts to vindicate the policies behind the CPPA and represents the interests of the public as a whole. *See* D.C. Code § 28-3905(k)(1). Although both types of actions can provide broad relief, a private attorney general action need not involve more than one plaintiff, and therefore is fundamentally an individual action. Plaintiff's own Complaint and the procedural differences between private attorney general actions and class actions illustrate the individual nature of the present case.

In crafting her Complaint, Plaintiff opted to file suit as a private attorney general acting on behalf of the general public of the District of Columbia, rather than as a class representative suing on behalf of a class of similarly-situated individuals or a group of joined plaintiffs. *See* Compl. ¶¶ 1, 4, 10, 63. Notably absent from the Complaint are additional plaintiffs joined pursuant to permissive or compulsory joinder rules or any allegations of a class of injured plaintiffs or consumers who invested in XIRA accounts. S*ee* D.C. Super. Ct. Civ. R. 23-I(a) (class action complaints must include allegations defining the class involved and the appropriateness of the class action form). Instead, Plaintiff has styled her complaint as an *individual* action, with the caption and jurisdictional allegations mentioning only Plaintiff Kohan, and not any additional, absent Plaintiffs. *See* Compl. ¶¶ 8, 60, 63. Although Plaintiff seeks injunctive relief and statutory fines on behalf of allegedly injured members of the general public, that demand does not change the individual character of the action. Because the "general public" is not a class of injured consumers, the relief Plaintiff seeks is not based on the number and identity of particular people who also are Plaintiffs, but rather is an undetermined amount of damages based on the number of "violations" of the CPPA in the District of Columbia by Defendants. *See id.* ¶ 63.

The procedures applicable to the various types of cases under the CPPA further illustrate that the section 28-3905(k)(1) private attorney general action that Plaintiff has chosen to bring is fundamentally different from a class action or other type of multiple-plaintiff action. In class actions, for example, the numerosity of plaintiffs makes ordinary joinder impractical, so class certification requirements are imposed to ensure that the interests of numerous individual plaintiffs will be adequately represented by one or more named plaintiffs. *See Reed v. Philip Morris Inc.*, No. 96-5070, 1997 WL 538921, at *3 (D.C. Super. Ct. Aug. 18, 1997) (requirements

of Rule 23(a) are designed to ensure that class treatment is "necessary and efficient and that it is fair to the absentees" (internal citation omitted)). These protections are necessary in the multiple-plaintiff context because the claims of absent class members will be precluded in later litigation. *Cf. Dean Witter Reynolds, Inc. v. Superior Court of Alameda Cty.*, 211 Cal. App. 3d 758, 773 (Ct. App. 1st Div. 1989) (suggesting that a private attorney general suit under the previous version of California Bus. & Prof. Code § 17204, which was similar to D.C. Code § 28-3905(k)(1), does *not* preclude members of the general public from later bringing their own claims against the same defendant).

Here, Plaintiff does not invoke D.C. Super. Ct. Civ. R. 23, and its requirements and procedures for obtaining class certification; therefore her action need not satisfy the requirements applicable to class actions, she need not demonstrate the existence of multiple plaintiffs with claims that share common factual and legal questions, and she need not establish herself as an adequate representative of a class. *See* D.C. Super. Ct. Civ. R. 23; Fed. R. Civ. P. 23. There is no need for Rule 23's procedural protections for absent plaintiffs because Plaintiff's private attorney general action does not ask to have certified or to bind a class of multiple plaintiffs asserting numerous claims. Plaintiff's lawsuit is an individual enforcement action that primarily seeks to deter future misconduct which could have been brought by a state official but instead is brought by a private party. *See Reese v. Wal-Mart Stores, Inc.*, 73 Cal. App. 4th 1225, 1239-40 (Ct. App. 3d Dist. 1999) (California Bus. & Prof. Code § 17204's private attorney general provision allowed "individual action[s]" that seek "an alternative form of class-wide relief . . . for purposes of deterring future violations").

Congress recognized the well-established and fundamental distinction between individual private attorney general actions and class actions in its recent enactment of the Class Action

Fairness Act ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (2005).  In CAFA, Congress altered the jurisdictional rules for certain class actions to render them removable to federal court under certain specified conditions, and extended those revised rules to "mass actions," which the Senate Report termed "simply class actions in disguise" because they "involve a lot of people who want their claims adjudicated together and they often result in the same abuses as class actions."  S. Rep. No. 109-14, at 47 (2005); *see* 28 U.S.C. § 1332(d)(11)(A).  At the same time, however, Congress explicitly exempted private attorney general actions from the definition of mass actions:  "'mass action' shall not include any civil action in which . . . all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." 28 U.S.C. § 1332(d)(11)(B)(ii)(III).  The legislative history of CAFA makes plain that the exemption was included because laws such as California Bus. & Prof. Code § 17204 and D.C. Code § 28-3905 "allow[] *individuals* to bring a suit on behalf of the general public," and therefore a suit brought under these laws "would not qualify as a mass action."  S. Rep. No. 109-14, at 47 (emphasis added).

In sum, private attorney general suits such as that brought by Plaintiff here are fundamentally different from class actions.  Plaintiff's private attorney general suit was brought by a single plaintiff seeking to enforce the rights of the public at large, not as a vehicle to assert jointly the similar but independent claims of multiple plaintiffs.  The procedural protections afforded absent class members not being necessary to proceed with Plaintiff's claim here, she should not be permitted to nonetheless invoke those procedural rules when they appear to serve

her interests.  Plaintiff Kohan's suit is an individual suit, not a multi-plaintiff action, and should be treated as such for all purposes.[2]

### III.  THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED HERE BECAUSE THE COSTS TO DEFENDANTS OF COMPLYING WITH PLAINTIFF'S REQUESTED INJUNCTIVE RELIEF WILL EXCEED $75,000.

This Court has original jurisdiction over this litigation because the cost to Defendants of complying with the injunctive relief sought by Plaintiff will easily exceed $75,000.  For purposes of determining the amount in controversy in a suit seeking injunctive relief, the Court may look to the value of the object of the action, and may measure that value from either plaintiff's or defendant's perspective.  *See Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) ("In assessing whether a complaint satisfies [the amount in controversy], a court may look either to the value of the right that the plaintiff seeks to enforce or to protect or to the cost to the defendants to remedy the alleged denial." (internal quotation marks omitted)).   If Plaintiff succeeds in enjoining Defendants from engaging in any conduct found to violate the CPPA, the costs that Defendants will incur in complying with the injunction will easily exceed $75,000.

Plaintiff contends that Defendants' CPPA violations include marketing the XIRA in a misleading manner by touting the XIRA's utility as a savings device, inadequately training H&R Block tax professionals to disclose the fees associated with the XIRA, maintaining inadequate

---

[2] Contrary to Plaintiff's contentions, treating private attorney general actions brought under the CPPA as individual actions for purposes of the amount in controversy will not result in federal jurisdiction over all or most CPPA claims.  See Pl's. Mem. at 6.  For federal jurisdiction to exist, there must be complete diversity of parties, *Strawbridge v. Curtiss*, 3 Cranch 267 (1806), and the amount at stake in the litigation must exceed $75,000.  Not all private attorney general actions will satisfy these requirements.  In addition, the CPPA provides potential plaintiffs with a number of procedural means of framing their lawsuits, each of which would have different consequences for federal jurisdiction.  See D.C. Code § 28-3905(k)(1) (plaintiffs may bring class actions, individual suits, associational suits, or private attorney general suits).  Here, Plaintiff could have chosen to frame this lawsuit in a variety of ways, with different consequences for the issue of federal jurisdiction.

disclosure documents, and inadequately disclosing fees associated with the XIRA on the XIRA application. *See* Compl. ¶¶ 17, 35, 36, 40, 47. If Plaintiff prevails, Defendants, among other things, would need to completely retool their marketing practices in the District of Columbia by creating and producing new marketing materials, disclosure forms, and XIRA application materials, retraining tax professionals, and potentially reconsidering whether to offer the XIRA accounts in the District of Columbia. *See* Notice ¶ 5. The cost of undertaking these changes would certainly exceed $75,000. *Id.*

Plaintiff does not contest that the cost of such changes would exceed $75,000, but argues instead that the amount in controversy cannot be measured from Defendants' perspective because the value thereby obtained reflects the cost to Defendants from the combination of claims asserted by multiple plaintiffs, which violates the rule against aggregation. *See* Pl.'s Mem. at 8. The fact is, however, that the present case has but one plaintiff, Lynn Kohan. The rule against aggregation on which Plaintiff relies applies only "[w]hen *two or more plaintiffs*, having separate and distinct demands, unite for convenience and economy in a single suit." *Troy Bank of Troy, Indiana v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911) (emphasis added); *see also Snyder v. Harris*, 394 U.S. 332, 336-38 (1969) (same). Because Plaintiff's suit is solely an individual action, there are no claims by separate plaintiffs to aggregate, and the rule against aggregation does not apply to bar measurement of the amount in controversy from Defendants' perspective. *See NRDC, Inc. v. Berklund*, 458 F. Supp. 925, 933 (D.D.C. 1978) (amount-in-controversy requirement satisfied based on cost to defendant of preparing impact statements and lost contracts).

The case law Plaintiff relies on to argue that similarities between her private attorney general action and a multi-plaintiff action compel application of the rule against aggregation here

are not persuasive.  In *Reigner v. Ingersoll-Rand Co.*, No. 04-1769 (D.D.C. Nov. 23, 2004), the only issue was whether the plaintiff's claims were for "refund" or "disgorgement," so that the total amount of the refund sought could be considered in determining the amount in controversy. Defendants assumed that plaintiff's private attorney general action was a multi-plaintiff suit to which the rule against aggregation applied, and focused the amount-in-controversy allegations in their notice of removal on the existence of a common and undivided interest shared by many members of the public.  *See* Notice of Removal in No. 04-1769 (D.D.C. Oct. 12, 2004), at ¶¶ 11-12; Defendants' Mem. Opp. to Plaintiff's Mot. to Remand, No. 04-1769 (D.D.C. Nov. 12, 2004), at 7.  Consequently, the issue before the court was only whether the claims of multiple plaintiffs could be aggregated because they involved a common fund.  See *Reigner*, slip op. at 2, 4. *Reigner's* ruling on common-fund aggregation does not answer the question here: whether plaintiff's private attorney general action is an individual action to which the rule against aggregation does not apply.

Equally unavailing are four cases from district courts in California that hold that the anti-aggregation rule applies to private attorney general actions brought under California Bus. & Prof. Code § 17204, and therefore the amount in controversy cannot be measured from defendant's perspective.[3]  *See* Pl's. Mem. at 6.  In fact, a split of authority on that issue exists in district courts in California, where an equal number of cases hold that because of the fundamental differences between multi-plaintiff actions and private attorney general actions, the anti-aggregation rule of *Troy Bank* and *Snyder* has no applicability to private attorney general actions. *See Myers v. Merrill Lynch & Co., Inc.*, No. C-98-3532 (WHO), 1999 WL 696082, at *2-*5

---

[3] Although Defendants agree with Plaintiff that judicial treatment of claims brought pursuant to the private attorney general provisions of the California Business and Professional Code are instructive in analyzing the correct treatment of the CPPA for amount in controversy purposes, obviously these cases are not controlling here.

(N.D. Cal. Aug. 23, 1999) (amount in controversy measured from defendant's perspective because private attorney general action not a class action, but rather an action brought "on behalf of the California public"); *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 928 (N.D. Cal. 1992) (private attorney general action not treated as a class action in determining the jurisdictional amount because the action does not "possess many of the defining characteristics of a class action"); *Shearson Lehman Bros., Inc. v. Greenberg*, No. 93-55535, 1995 WL 392028 (9th Cir. July 3, 1995) (unpub. op.) (same); *cf. City and County of San Francisco v. Hartford Life Ins. Co.*, No. C-99-0225 (CRB), 1999 WL 354522, at *3 (N.D. Cal. May 17, 1999) ("Plaintiffs intentionally chose not to file this lawsuit as a class action.  Having made that choice, they cannot now argue that the lawsuit must be treated as a class action for purposes of determining the amount in controversy.").  For the reasons discussed *supra*, Defendants submit that *Mangini* and its progeny reach the correct result; the cases cited by Plaintiff for the contrary position misconceive the nature of the private attorney general action.

## IV.  THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED BECAUSE THE STATUTORY DAMAGES SOUGHT BY PLAINTIFF EXCEED $75,000.

The amount-in-controversy requirement is also satisfied here by Plaintiff's demand for "treble damages or statutory damages in the amount of $1,500 per violation, whichever is greater, pursuant to D.C. Code § 28-3905k)(1)."  *See* Compl. ¶ 63.  Should Plaintiff prevail on her claims, the resulting statutory damages of at least $1,500 for each of Defendants' alleged violations of the CPPA will easily exceed $75,000, as Plaintiff need only proffer evidence that Defendants sold 50 XIRA accounts in the District of Columbia to be entitled to statutory damages of $75,000.  Thus, it is nowhere near a "legal certainty" that Plaintiff will not be able to recover more than $75,000 in statutory damages.  *See General Elec. Capitol Corp.*, 2005 WL

3276279, at *2 (holding that where unspecified liquidated damages were available in addition to $49,000 in compensatory damages, no evidence exists that "it is a legal certainty that the liquidated damages could not meet the required amount in controversy").

Although Plaintiff claims that Defendants have failed to demonstrate the amount of statutory damages that could be awarded in this case, *see* Pl's. Mem. at 7, Plaintiff's Complaint itself establishes that the damages awarded could well exceed $75,000. *See* Compl. ¶ 54 ( "H&R Block has induced hundreds of thousands of individuals to invest" in XIRA accounts by misrepresenting the tax penalties associated with the accounts); *id.* ¶ 52 ("[H]undreds of thousands of customers have invested in an Express IRA . . . ."); *id.* ¶ 5 ("H&R Block conducts extensive business in the District of Columbia and has at least 18 offices operating in the District of Columbia."); *id.* ¶ 21 ("In the last four years H&R Block has opened more than 500,000 Express IRA accounts.").    Given Plaintiff's allegations that Defendants conduct "extensive business" in the District of Columbia, and that "hundreds of thousands" of customers have purchased XIRA accounts, she cannot now claim that it is a "legal certainty" that statutory damages arising from her alleged CPPA violations will not exceed $75,000.[4]

_____

[4] The cases that Plaintiff cites in support of her argument that Defendants have not proffered sufficient factual evidence of the potential damages at stake are inapposite. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003), involves the standard of proof for demonstrating *personal* jurisdiction, not the amount in controversy. In addition, the two Ninth Circuit cases on which Plaintiff relies, *see* Pl's. Mem. at 7, are unhelpful here because the Ninth Circuit determines the amount in controversy at the time of removal with reference not only to the allegations in the complaint, but also to "summary-judgment-type evidence relevant to the amount in controversy," *see Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotation marks omitted).  The D.C. Circuit has never endorsed such an evidentiary requirement, but instead looks to the allegations in the complaint and other filings. *See Smith*, 593 F.2d at 1100 (while a "formal" pleading that damages will exceed the jurisdictional amount, without more, may be insufficient to establish the amount in controversy, "detail[ing] a number of alleged . . . violations" in the complaint can be sufficient); *Martin*, 723 F.2d at 992 (in a diversity case allegations of physical injuries, pain and suffering, and loss of consortium made it

Finally, Plaintiff contends that Defendants must establish that the statutory damages at stake in this case amount to $75,000 for each member of the general public. *See* Pl's. Mem. at 6-7. As discussed *supra*, however, Plaintiff pursues this claim for the interests of the general public but members of the general public are not plaintiffs themselves; because this is an individual action, the total amount of damages requested is the relevant inquiry for purposes of the amount-in-controversy requirement. *See Exxon Mobil Corp v. Allapattah Servs., Inc.*, 125 S. Ct. 2611, 2635-36 (2005) (claims by a single plaintiff against a defendant may be aggregated for purposes of the amount-in-controversy requirement).

## V.    THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED BECAUSE THE ATTORNEY'S FEES SOUGHT BY PLAINTIFF WILL EXCEED $75,000.

The attorney's fees that Plaintiff here seeks to recover under the CPPA authorization to recover "reasonable attorney's fees" also satisfy the amount-in-controversy requirement. *See* D.C. Code § 28-3905(k)(1)(B). A potential award of attorney's fees may be considered for purposes of determining the amount in controversy where, as here, plaintiff is entitled to seek attorney's fees by the governing substantive statute. *See Your Girl Friday, LLC v. MGF Holdings, Inc.*, No. 06-0385 (ESH), 2006 WL 1028959, at *2 (D.D.C. April 18, 2006) (attorney's fees may be considered part of amount in controversy when allowed for by relevant statute); *see also Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981) (where authorized by statute, attorney's fees comprise part of plaintiff's substantive recovery and are includible in the amount in controversy).[5] Because any award of attorney's fees pursuant to the CPPA in this

---

impossible to conclude to a legal certainty that the jurisdictional amount requirement was not satisfied).

[5] Thus, Plaintiff's attempt to argue that attorney's fees may not be considered as part of the amount in controversy because the CPPA "does not mandate the recovery of attorney's fees" is unavailing. As Plaintiff herself notes, it is well-established that attorney's fees may be used to

action would likely exceed $75,000, Plaintiff's attorney's fees also satisfy the amount-in-controversy requirement.

As an initial matter, Plaintiff's argument that Defendants must demonstrate that potential attorney's fees would exceed $75,000 on a "pro rata" basis, *see* Pl's. Mem. at 9, is meritless. Because this is an individual action, there are no additional plaintiffs among whom to apportion an award of attorney's fees on a pro rata basis. Therefore, the rule of *NOW v. Mutual of Omaha Ins. Co.*, 612 F. Supp. 100, 108-09 (D.D.C. 1985), that in class actions, at least one plaintiff's pro rata share of the attorney's fees must exceed $75,000 to satisfy the jurisdictional amount requirement, is not applicable here. The only relevant question is whether the Court can conclude to a legal certainty that *Plaintiff's* attorney's fees will not exceed $75,000.

The probability that Plaintiff will be awarded attorney's fees in excess of $75,000 is hardly, as Plaintiff asserts, "speculative." *See* Pl's. Mem. at 9. Even at a conservative rate of $300 per hour, *see Jackson v. Byrd*, No. 01-ca-825, 2004 WL 3249692, at *3 (D.C. Super. Ct. Sept. 2, 2004) (rate of $270 per hour for work performed in 2003 and 2004), Plaintiff's attorneys will bill $75,000 simply by spending 250 hours on this case. In fact, Plaintiff's attorneys almost certainly will spend many more hours than that in prosecuting this case, as Plaintiff's fraud claims will require extensive written and document discovery and depositions into, among other things, the knowledge and intent of H&R Block employees and executives, the investment returns realized and fees and penalties paid by XIRA holders, Defendants' practices of training its tax professionals, and Defendants' disclosure and marketing practices. *See* Compl. ¶¶ 23, 54, 58. Thus, should Plaintiff prevail, it is almost a certainty that her attorney's fees request will well exceed $75,000.

---

satisfy the jurisdictional requirement if they "are *allowed for* by statute." *See* Pl's. Mem. at 8 (emphasis added).

Moreover, if Plaintiff prevails, case law suggests that a court would find a fee award of more than $75,000 "reasonable," *see* D.C. Code § 28-3905(k)(1)(B), regardless of the size of the damage award.  In recognition of the salutary effect served by CPPA claims that "expose[] . . . deceptive practices" and deter further deceptive conduct, *see Jackson v. Byrd,* 2004 WL 3249692, at *3, and the difficulty of prevailing in complex cases involving fraud, courts have approved significant awards of attorney's fees even where the damages award was dwarfed by the fee award.  *See Williams v. First Gov't Mortgage and Investors Corp.,* 225 F.3d 738, 743, 747 (D.C. Cir. 2000) (given the amount of work performed and the "degree" of success achieved, attorney's fees award of $199,000 approved even though CPAA damages awarded were only $8400; *Jackson*, 2004 WL 3249692, at *3 (awarded attorney's fees of $196,000 where damages totaled $415,000, because case was "complex" and was "grounded substantially in a large volume of documents").  Thus, given judicial recognition that substantial fee awards may be appropriate where, as here, the case requires intensive investigation and voluminous document review, it cannot be deemed speculative to value Plaintiff's ultimate fee award, should she prevail, at well over $75,000.  *Cf. Gardiner Stone Hunter Int'l v. Iberia Lineas Aereas de Espana, S.A.*, 896 F. Supp. 125, 128 (S.D.N.Y. 1995) (given "reasonable probability" that fee award would exceed jurisdictional amount, it was impossible to conclude to "legal certainty" that plaintiffs would not recover attorney's fees and satisfy the jurisdictional amount).

The only case Plaintiff cites to support her argument that any award of attorney's fees is too speculative to support jurisdiction is *Your Girl Friday, LLC v. MGF Holdings, Inc.*, No. 06-0385 (ESH), 2006 WL 1028959 (D.D.C. April 18, 2006), but that case is distinguishable.  *See* Pl's. Mem. at 9-10.  *Your Girl Friday* was not a CPPA case, but rather involved a claim for breach of a settlement agreement where the total amount of damages at stake was $50,000.  The

settlement agreement provided for an award of reasonable attorney's fees, and defendant, who removed the case, argued that plaintiff could receive $25,000 in fees, thereby satisfying the $75,000 jurisdictional requirement. *Id.* at *2. The Court rejected that argument, holding that an award of $25,000 in fees in an ordinary civil trademark dispute with only $50,000 at issue, was highly unlikely. *Id.* Thus, the court there concluded that attorneys' fees of $25,000 would not be reasonable given the nature and size of the case. *Id.*

No such conclusion can be drawn here. First, the amount at stake in this case is substantial, both in the potential cost to Defendants of complying with Plaintiff's requested injunctive relief and the potential statutory damages award. Second, as discussed *supra*, in CPPA cases like this, uncovering and analyzing fraudulent practices is seen as both a complex endeavor and a "public service," *see Jackson*, 2004 WL 3249692, at *3, and courts as a result have been willing to grant substantial fee awards, regardless of the amount of damages recovered.

Finally, Plaintiff's contention that attorney's fees are collateral to the "substantive matter in controversy," Pl's. Mem. at 10, is meritless. Attorney's fees are considered collateral to a dispute only when they are not recoverable under the substantive statute invoked by plaintiff. *See Srour v. Barnes*, 670 F. Supp. 18, 22 & n.3 (D.D.C. 1987) (attorney's fees are "nearly always" collateral to the matter in controversy, except when fees are "provided for by . . . a statute in controversy"). Under the CPPA, attorney's fees are included in the list of remedies available for violations, *see* D.C. Code §28-3905(k)(1)(B), and, along with the treble damages provision, are meant to "encourage the private bar to take such cases." *See District Cablevision Ltd. Partnership v. Bassin*, 828 A.2d 714, 728 (D.C. Ct. App. 2003) (citing CPPA's legislative history). Thus, under the CPPA, attorney's fees are not considered collateral, but rather, are one

17

of the key remedies provided for a violation of the statute. *See Graham*, 640 F.2d at 736. Reliance on the likely attorney's fee award to determine the amount in controversy therefore is entirely appropriate.

## VI.    THE TOTAL VALUE OF THE VARIOUS COMPONENTS OF THE RELIEF SOUGHT SATISFIES THE AMOUNT-IN-CONTROVERSY REQUIREMENT.

Although Defendants believe that each component of the potential relief discussed above is individually substantial enough to satisfy the $75,000 amount-in-controversy requirement, the sum total of Defendants' costs of complying with an injunction, the statutory damages, and the potential attorney's fees certainly satisfies the jurisdictional amount requirement. *See General Electric Capitol Corp.,* 2005 WL 3276279, at *1-*2 (total of amounts due under lease and potential liquidated damages enough to meet amount-in-controversy requirement). Given that each remedy requested individually involves potentially significant sums, it is impossible to conclude to a legal certainty that the total amount at stake in this litigation is less than $75,000.

## VII.    THE NOVELTY OF A STATE-LAW CAUSE OF ACTION IS NOT A PROPER GROUND ON WHICH TO REMAND A CASE.

Finally, Plaintiff asserts that, in any event, this Court should remand this case because the private attorney general provision of the CPPA "has yet to be interpreted by the District of Columbia Court of Appeals." Pl's. Mem. at 11. The only case that Plaintiff cites for the novel proposition that federal courts may remand cases regardless whether subject-matter jurisdiction exists, however, is one in which the court first found that it *lacked* subject-matter jurisdiction over the suit, a finding that in itself necessitated a remand. *See Smith v. Gutter Covers of Maryland & Virginia*, No. 04-1974 (HHK), 2005 WL 3276280, at *4 (Aug. 4, 2005).[6]   With

---

[6] In addition, the line of precedent cited in *Smith* involves the discretionary inquiry as to whether to assert supplemental jurisdiction over pendent state-law claims pursuant to 28 U.S.C.

exceptions not relevant here, moreover, district courts may not remand cases to state court based on discretionary factors not specified in the removal statute. *See Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 344-45 & n.9 (1976), *abrogated on other grounds, Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). Thus, the asserted novelty of Plaintiff's CPPA claim is not an appropriate basis on which to remand this suit.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's motion to remand to the Superior Court for the District of Columbia.

---

§ 1367(c), which explicitly permits courts to consider the novelty of the state-law issues raised by the pendent claims in determining whether to exercise jurisdiction. *See Smith*, 2005 WL 3276280, at *4 (citing *Vigilant Ins. Co. v. EEMAX, Inc.*, 362 F. Supp. 2d 219, 224 (D.D.C. 2005), (novelty of the asserted state-law issues counseled against exercising supplemental jurisdiction). That provision is not relevant here.

Dated:  July 3, 2006                    Respectfully submitted,

                                        **H&R BLOCK, INC. and H&R BLOCK**
                                        **FINANCIAL ADVISORS, INC.**

                                        By:  /s/   Michael B. DeSanctis

                                        One of Their Attorneys

                                        Paul M. Smith (D.C. Bar No. 358870)
                                        Michael B. DeSanctis (D.C. Bar No. 460961)
                                        Ginger D. Anders (D.C. Bar No. 494471)
                                        JENNER & BLOCK LLP
                                        601 Thirteenth Street, NW
                                        Suite 1200 South
                                        Washington DC 20005-3823
                                        Telephone: 202-639-6000
                                        Facsimile: 202-639-6066

                                        Anton R. Valukas
                                        Matthew M. Neumeier
                                        Richard P. Steinken
                                        Molly J. Moran
                                        JENNER & BLOCK LLP
                                        One IBM Plaza
                                        Chicago, IL 60611
                                        Telephone: (312) 222-9350
                                        Facsimile: (312) 527-0484

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on July 3, 2006, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

       Tracy D. Rezvani
       Donald J. Enright
       Hilary Ratway
       Stan M. Doerrer
       FINKELSTEIN, THOMPSON & LOUGHRAN
       The Duvall Foundry
       1050 30th Street. NW
       Washington, DC 20007
       (202) 337-8000
       (202) 337-8090 fax


                 /s/ ___ Michael B. DeSanctis

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LYNN KOHAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    No. 1:06 CV 01066 (RCL) |
| | ) |
| H&R BLOCK, INC. and | ) |
| H&R BLOCK FINANCIAL ADVISORS, INC. | ) |
| | ) |
| Defendants. | ) |

**[PROPOSED] ORDER**

The Court, having considered Plaintiff's Motion to Remand for Lack of Subject Matter

Jurisdiction, is of the opinion that the motion should be denied.  Therefore, it is ORDERED that

the motion is denied.

DONE and ORDERED this _____ day of _____, 2006.

_____
U.S. DISTRICT JUDGE