UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LYNN KOHAN, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>H&R BLOCK, INC. and H&R BLOCK )<br>FINANCIALADVISORS, INC., )<br>)<br>Defendants. )<br>) | Civil Action No. 06-1066 (RCL) |

**PLAINTIFF'S CORRECTED MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE**

Plaintiffs submit this memorandum in opposition to Defendants' Motion to Transfer Venue to the Western District of Missouri ("Motion to Transfer"). Plaintiffs have already filed a Motion to Remand arguing that jurisdiction is not proper in federal court. These arguments are also relevant here. This case does not meet the bare requirements of 28 U.S.C. § 1404(a) because subject matter jurisdiction is lacking in the transferee court and it is therefore not one in which this action "might have been brought." Plaintiff's choice of forum should not be disturbed in this case, because Plaintiff's choice of home forum deserves substantial deference as this case has a substantial nexus to the District of Columbia. Additionally, this case involves novel issues of District of Columbia law which should be decided here rather than in Missouri. Defendants' Motion to Transfer should therefore be denied.

**LEGAL ARGUMENT**

**I.    STANDARD OF REVIEW**

In weighing a request for a transfer, a court must look first to whether the

transferee venue is one in which the case "might have been brought." *Trout Unlimited v. United States Dep't of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996). Once the court has made this determination, it has broad discretion to adjudicate transfer motions according to an "individualized, case-by-case consideration of convenience and fairness." *Id.*. Factors relevant to such determinations include the convenience of parties and witnesses and the interests of justice, as well as other considerations, both public and private, that may be relevant. *See* 28 U.S.C. § 1404(a). Relevant private interests include the plaintiff's choice of forum, the defendant's choice of forum, the forum in which the claims arose, the convenience of the parties, witnesses, and the ease of access to sources of proof. *Navajo Nation v. Peabody Holding Co., Inc.*, 209 F. Supp. 2d 269, 279-80 (D.D.C. 2002). Public interests include the relative familiarity of the two forums' courts with the governing law, the courts' relative congestion, and the relative public interests in having the controversy decided in the given forum. *Id.* at 280. In order to secure a transfer order, the moving party "bears a heavy burden of establishing that plaintiffs' choice of forum is inappropriate." *Thayer/Patricof Educ. Fund. LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 24 (D.D.C. 2002).

**I.      THE PROPOSED TRANSFEREE JURISDICTION IS NOT ONE WHERE THE ACTION "MIGHT HAVE BEEN BROUGHT"**

The present case does not meet even the basic prerequisites for transfer since the Western District of Missouri is not a court in which this matter "might have been brought." *See* 28 U.S.C. § 1404(a). Federal courts are courts of limited jurisdiction and therefore the law presumes that "a cause lies outside of [the court's] limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). Due to the fact that the present

case does not allege a federal cause of action, subject matter jurisdiction could only be predicated on diversity. Diversity jurisdiction exists when the action involves citizens of different states and the amount in controversy exceeds $75,000.00 per plaintiff, exclusive of interest and costs. 28 U.S.C. § 1332(a); *Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990). A case cannot be brought in any federal court when subject matter jurisdiction does not exist. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999); *see also* Fed. R. Civ. P. 12(h)(3).

Diversity jurisdiction does not exist in the present case because the amount in controversy requirement is not met. In her Complaint, Plaintiff seeks to enjoin H&R Block from its misleading marketing practices. Plaintiff also seeks treble or statutory damages which cannot meet the amount in controversy requirement. Defendant has the burden of proving that the amount in controversy requirement will be met. *See Julien v. CCA of Tenn.*, 268 F. Supp. 2d 19, 21 (D.D.C. 2003). They have failed.

Understanding that the requested damages will be insufficient to meet the jurisdictional requirement on an individual basis, Defendants rely on a number of improper theories to attempt to meet this minimum requirement. Specifically, H&R Block argues in their Notice of Removal that removal is proper because: (1) they "believe in good faith" that the total number of Express IRAs established in the District of Columbia is large enough to result in a total statutory damages claim of well over $75,000; (2) they "believe in good faith" that the cost of complying with an injunction would exceed $75,000; and (3) "Plaintiff's legal fees can be expected to exceed $75,000." Notice of Removal at 3-4. Defendants present no affidavit or other evidence to support their "good faith belief" that jurisdiction is appropriate.

Plaintiff has previously responded to all of Defendants' arguments and laid out its case that the amount in controversy requirement is not met in her *Memorandum of Points and Authorities in Support of Plaintiff's Motion For Remand For Lack of Subject Matter Jurisdiction* ("Plaintiff's Motion for Remand"). Docket # 7 (incorporated herein). In the interest of judicial efficiency, such arguments will not be repeated here. Accordingly, Plaintiff respectfully requests that the court refer to Plaintiff's earlier memorandum, as well as any subsequent reply,[1] for a complete discussion of this issue. The arguments and law discussed therein make clear that the jurisdictional requirement is not met here. Hence, the transferee court is not one where this matter "might have been brought." *See* 28 U.S.C. § 1404(a).

## II.  THE DEFENDANTS HAVE NOT MET THEIR BURDEN IN ARGUING FOR TRANSFER

Plaintiff, a resident of the District of Columbia, chose to sue a foreign corporation in the District of Columbia, on behalf of the general public of the District of Columbia, alleging the violation of a single state statute, for misleading actions that occurred within the District of Columbia. In spite of this case's clear connections with this jurisdiction, Defendants unconvincingly argue that the District of Columbia has only a "peripheral connection to the facts of the dispute," and that the case should be transferred to a venue where it can be consolidated with pending *class action* litigation. Def. Mot. at 6. This argument should be rejected as the District of Columbia is clearly the superior venue for this case. The Defendants have not met their burden in arguing for a transfer. But once again, the burden is on the movant to establish that their forum is *more* appropriate than Plaintiff's chosen forum. *See Thayer*, 196 F. Supp. 2d at 24.

---

[1] Plaintiff hereby incorporates any future reply brief as well.

      **A.**     **The Private Interests Overwhelmingly Favor the District of Columbia.**

The private interests that should be evaluated in adjudicating motions to transfer include the plaintiff's choice of forum, the defendant's choice of forum, the forum in which the claims arose, the convenience of the parties, witnesses, and the ease of access to sources of proof. *See Navajo Nation*, 209 F. Supp. 2d at 279-80 (D.D.C. 2002). In the present case, these considerations overwhelmingly favor the District.

To begin with, the Plaintiff's choice of forum is a "paramount consideration" in any determination of a transfer request. *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2003). This is especially true when, as here, the forum is the Plaintiff's home forum, like in this case. This court has stated that "[d]eference to the plaintiff's forum is particularly strong where the plaintiff has chosen his *home* forum." *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48 (D.D.C. 2000)(emphasis added); *see also Shawnee Tribe,* 298 F. Supp. 2d at 24; *Wilderness Soc'y v. Babbitt,* 104 F. Supp. 2d 10, 14 (D.D.C. 2000).

Defendants concede that Plaintiff's choice of forum deserves deference, but seeks to minimize this point by arguing that she has not alleged that Plaintiff, herself, transacted business in this District. Def. Mot. at 6. They of course cite no authority for this newly created exception to the rule of deference. Instead, the cases cited by Defendants stand for the proposition that such deference can be minimized only when the Plaintiff's choice has "no meaningful ties to the controversy and no particular interest in the parties or subject matter" --conditions that are clearly *not* met in the present case given that Plaintiff has sued in her home forum. In fact, not one Defendants' citations were to a case where the Plaintiff litigating in the District was a resident of the District. *Cf. Trout Unlimited*,

944 F. Supp. at 17 ("[O]nly connection" to D.C. is that Plaintiff lives in Arlington, Va.); *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 163 (D.D.C. 1995) (Plaintiff is a resident of Hawaii); *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C 1991) ("It is equally apparent that the District of Columbia is not Armco's 'home turf.'"); *Williams v. Purdue Pharm. Co.*, No. 04-451, 2004 U.S. Dist. LEXIS 10395 (D.D.C. 2004) (No mention of Plaintiff's home forum). Rather, Plaintiff's choice of her home forum is still notably given deference even when the actual transaction has significant contacts to another jurisdiction. *See Thayer,* 196 F. Supp. 2d at 30; *Wilderness Soc'y,* 104 F. Supp. 2d at 14.

Additionally, Defendants are wrong in their contention that the District of Columbia lacks connections to the facts of this case. The District in fact has a substantial nexus to the facts of this case. First, the Plaintiff in this case is a resident of the District of Columbia. *See* Complaint at ¶ 4. Additionally, Plaintiff, in prosecuting this action, is acting on the behalf of the General Public of the District of Columbia. *See* Complaint at ¶ 60. She is alleging violation of a single count of a District of Columbia consumer protection statute. And finally, the specific transactions complained of occurred at defendants' offices within the District.[2]

In *Thayer*, the plaintiff was a District resident who brought suit in the District against a Kansas resident for, among other things, breach of contract, misrepresentation, and fraud. *See* 196 F. Supp. 2d at 24. Defendant moved for transfer to Kansas, the

---

[2] Defendants' attempt to rely on the corporate form to argue that they only have one "lone Office" in Washington D.C. is weak. *See* Def. Mot. at 7. Washington D.C. residents that opened an XIRA as a result of misleading marketing materials or misleading statements by H&R Block tax preparer's walked into an office that prominently displayed the H&R Block brand. Even if these offices are really owned by "indirect H&R Block, Inc. subsidiaries," as Defendants claim, H&R Block, Inc. may be found liable if it is found, *inter alia*, if they exercised sufficient control over such subsidiaries. *See* Def. Mot. at 7; *see generally In re Vitamins Antitrust Litigation*, 270 F. Supp. 2d 15, 21 (D.D.C. 2003). In any case, such arguments are premature at this stage of the litigation.

6

location of its headquarters, arguing that "the Company, key witnesses, and documents are located in the Kansas City metropolitan area." *Id.* at 25.  In denying transfer, the court stressed the fact that, in spite of Defendants' arguments about the relevant witnesses and documents being in Kansas City:

> It nonetheless remains the case that the parties negotiated the purchase in the District of Columbia, the defendants made essential oral and written representations here, the parties signed and executed the [relevant agreement] here, and the exchange of cash and securities for Company stock occurred here.  [Plaintiff's] complaint is, at its core, based on the negotiation and execution of the Agreement, which occurred in the District of Columbia.

*Id.* at 27.  In the present case, similar operative facts tie the case to the District.  Plaintiff and those she represents, all District residents, were mislead by the actions of the Defendants in the *District of Columbia.*  Many of these residents walked into H&R Block-owned office for tax preparation services, and walked out with Express IRA accounts that were destined to lose money.  Misleading marketing materials were handed out in the District; misleading statements were made by defendants' agents in the District; account documents were signed in the District and; perhaps most importantly; money changed hands in the District  Like the plaintiff's complaint in *Thayer*, Plaintiff's complaint here is based "at its core" on transactions that occurred in the District.  *See id; see also Osan Ltd., v. Accenture LLP*, No. 04-1296, 2005 U.S. Dist. LEXIS 27488 *12-3 (D.D.C. Sept. 30, 2005).  Clearly, the District of Columbia has a substantial connection to the facts of this case.

The convenience of witnesses is another primary factor in the determination of whether to transfer.  *Yun Ja Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995); *Thayer*, 196 F. Supp. 2d at 27.  But once again, the burden is on movant to

7

establish that their forum is *more* appropriate than Plaintiff's forum.  *See Thayer*, 196 F. Supp. 2d at 24.  In order to establish that the convenience of witnesses supports transfer, Defendants should identify the witnesses that would be inconvenienced and detail, or at least outline, their expected testimony.  *See N2 Consulting v. Engineered Fastener Co.*, No 3-02-CV-0308, 2002 U.S. Dist. LEXIS 18700 *11 (N.D. Texas Oct. 2, 2002); *Houk v. Kimberly Clark Corp.*, 613 F. Supp. 923, 928 (W.D. Mo. 1985).  In addition, the moving party must prove that the witness will be inconvenienced and/or will not voluntarily appear before the court.  *See Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 35 (D.D.C 2004).  Courts give less credence to claims of inconvenience when, as in this case, the witnesses are employees of the party since the party could force them to travel.  *See N2 Consulting*, 2002 U.S. Dist. LEXIS 18700 at *11.

Plaintiff and her witnesses will clearly be inconvenienced by transfer to Missouri.  In order to prove the case, Plaintiff will need to gather information regarding H&R Block's specific sales techniques in the District.  To do this, she will need to depose local H&R Block employees regarding their sales practices.[3]  The testimony of these witnesses is directly relevant to this action because primary inquiries under D.C. Code § 28-3904 involve, among other things, whether the defendant has "represent[ed]" that a service has a "characteristic" or "benefit" that it does not have; or "misrepresent[ed] as to a material fact which has a tendency to mislead."  *See* D.C. Code § 28-3904(a),(k).  In this case, District-based H&R Block employees would need to testify as to, among other things, their training and sales techniques.  By deposing such witnesses and calling them at trial, Plaintiff could prove that such misrepresentations actually occurred.

---

[3] Although we currently do not have the names of specific witnesses in Washington, D.C., this information is contained in Defendants' records and will be obtained during discovery.

Defendants' showing falls far short of the requirements for proving inconvenience described above. *See* Def. Mot. at 5. Their "evidence" consists only of one paragraph in the affidavit of Brian J. Christensen ("the Christensen Affidavit") that identifies a mere three (3) witnesses they say have relevant information and states, without support, that they would be inconvenienced. *Cf. N2 Consulting,* 2002 U.S. Dist. LEXIS 18700 at *11. Additionally, Defendants state generally that other individuals who are employed by the company would be inconvenienced. *See* Def. Mot. at 5. *Cf. N2 Consulting,* 2002 U.S. Dist. LEXIS 18700 at *11. Notably, the Christensen Affidavit does not hint at what the testimony of any of these witnesses would be; and does not state that any witness would be unwilling to travel to this forum. This weighs against giving any credence to this argument. *See Schmidt*, 322 F. Supp. 2d at 35 ("[T]he court considers this factor 'only to the extent that the witnesses may actually be unavailable for trial in one of the fora.'" (quoting *Trout Unlimited*, 944 F. Supp. at 16)). Because Defendants fail to outline the theme or substance of any witness who would purportedly be inconvenienced, as they must, their transfer motion should fail. *See N2 Consulting*, 2002 U.S. Dist. LEXIS 18700 at *11.

Defendants also argue unpersuasively that the fact that "the overwhelming majority" of the "relevant documents" are located in Kansas City necessitates transfer. *See* Def. Mot. at 6. This court has recognized that such arguments do not hold much weight with today's technology, and that they are clearly subordinate to the other factors. *See Thayer*, 196 F. Supp. 2d at 36. "The location of documents factor is neutral [because] in today's era of photocopying, fax machines and Federal Express, [the] documents could easily be sent…" *Thayer,* 196 F. Supp. 2d at 36 (quoting *Coker v. Bank*

*of Am.*, 984 F. Supp. 757, 766 (S.D.N.Y. 1997)); *see also United States v. Fortress Corp.*, No. 92-97, 1992 U.S. Dist. LEXIS 4296 *3 n.1 (D.D.C 1992) (stating that "the location of documents is irrelevant"). Even assuming, *arguendo*, that this was an important factor, it should not be given any weight here since the Defendants do not describe the specific documents that they are referring to or why they are relevant. *See Schmidt*, 322 F. Supp. 2d at 35 (No weight given to plaintiff's "general statement that he possesses relevant documents in the District of Columbia, without elaboration").

Defendants argue that this litigation is "nearly identical" to the numerous other cases filed against them, and that, because of this, less deference should be given to Plaintiff's choice of home forum because "plaintiffs residing in any of these [other districts where cases were filed] would each have an identical interest in asserting venue in their home state." *See* Def. Mot. at 7. This argument is unpersuasive.

The 15 cases cited by Defendants are in their brief are all class actions. *See* Def. Mot. at 11. Moreover, 14 of these are nationwide classes. Accordingly, Plaintiff's choice of forum for her non-class case here deserves significantly more deference than in these other cases since deference to a plaintiff's choice of forum is decreased in class lawsuits. *See Berenson v. Nat. Fin. Services*, 319 F. Supp. 2d 1, 3 (D.D.C. 2004); *see also Howell v. Shaw Ind.*, Civil No. 93-2068, 1993 U.S. Dist. LEXIS 13784 *9-11 (E.D. Penn. Oct. 1, 1993). Plaintiff here is seeking to take advantage of a local law of her state of residency to cure an injustice she believes has been committed against consumers in the District; she should not be required to fly 2000 miles to do this, be bogged down by rules of procedure that have no bearing to her case, place the interests of the District's consumers in the hands of foreign plaintiffs seeking remedies under foreign laws, and be

10

delayed in providing relief to the general public of the District of Columbia.

### B. The Relevant Public Interests Do Not Support Transfer

In addition to the "interests of judicial economy," *see* 28 U.S.C. § 1404(a), the public interests that need to be considered include the relative familiarity of the two forums' courts with the governing law, the courts' relative congestion, and the relative public interests in having the controversy decided in the given forum. *See Navajo Nation* 209 F. Supp. 2d at 280.

In the present case, the primary public interest that the court should be concerned with is the relative familiarity of the two forums' courts with the governing law. *See id.*. Plaintiff's complaint asserts a single cause of action under the attorney general provision of the Consumer Protection Procedures Act, §28-3905(k)(1), a provision which has yet to be interpreted by the District of Columbia Court of Appeals (or any reported decision by the Superior Court). This case will ultimately raise novel issues about the statute including, among other things: the appropriate role and duties of the plaintiff, whether discovery of the representative is permissible, questions about the available remedies in private attorney actions and their distribution; questions regarding the procedure that needs to be followed in any settlement;[4] etc. It is a fundamental principle that the public interest is "best served" by having a case decided by a court in the state whose laws govern the interests at stake." *Schmidt*, 322 F. Supp. 2d at 35; *see also O'Shea v. International Brotherhood of Teamsters*, No. 04-0207, 2005 U.S. Dist. LEXIS *13 (D.D.C. 2005) (Citing *Armco Steel*, 790 F. Supp. at 324 and stating "[o]bviously, a Maryland judge who is more informed about Maryland law is better equipped to interpret

---

[4] For example, whether any settlement should be approved by the court, or whether guidance should be sought from the Attorney General (as had occurred once under the somewhat analogous California statute). *See American International Industries v. Superior Court*, 72 Cal. App. 4th 1376 (Cal. App. 2nd 1999).

11

and apply Maryland common law"); *Berenson*, 319 F. Supp. 2d at 4-5 (stating that "the most significant" of the public factors in that case was "the ability of the court to interpret and apply the local law applicable to this litigation"); *Martin-Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987). Further, while it is true in general that local law is best construed by courts most familiar with them; it is especially true in cases like the present where the local law has been so sparsely interpreted. *See Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 423-425 (D.C. Cir. 1988) (declining to apply novel theories because such a holding was beyond the "authority of a federal court applying state law" without precedent to follow); *Delahany v. Hinckley*, 845 F.2d 1069, 1070 (D.C. Cir. 1988) (a federal court should decline to speculate on a question of local doctrine); *Penn. Mut. Life Ins. Co. v. Abramson*, 530 A.2d 1202, 1206-07 (D.C. 1987) (noting local benefits of federal court's certification of unclear question of state law to state court.).

Besides its interest in interpreting its own laws, the District also has a strong interest in resolving the underlying allegations in this case: that local citizens have been harmed by a foreign corporation. *See Reiffin*, 104 F. Supp. 2d at 52 n.8. The importance of the District of Columbia's interest in the issue of consumer fraud should be particularly clear given that it has adopted a consumer fraud statute that is unique in its breadth and purpose. *See* D.C. Code § 28-3901 *et seq.*[5] Clearly, the local interest in this case weighs heavily in favor of the District. Simply put, a Missouri judge, no matter how learned or able, should not decide issues of first impression concerning this statute. That matter is best left to the judges at the Superior Court and/or the District of Columbia

---

[5] The District of Columbia statute is alone among state consumer fraud statutes that allow private citizens to act as private attorney generals and sue on behalf of the General Public. *See* Sheila Scheuerman, *The Consumer Fraud Class Action: Reining in Abuse by Requiring Plaintiffs to Allege Reliance as an Essential Element*, 43 Harv. J. on Legis. 1, 44 (2006).

12

Court of Appeals. *See* Docket #7.

In spite of Defendants' arguments, interests of justice and factors of judicial economy also favor the District as a forum. Defendants stake much on the argument that this case should be transferred so that it can be consolidated with the other class actions currently pending in the transferee district. *See* Def Mot. at 9. They cite cases stating the proposition that, in many circumstances, related cases should be tried together. *See* Def. Mot. at 9. In the present case, however, transfer and consolidation would not be in the "interests of justice" because it would require that a relatively straightforward private attorney general suit be lumped together with over a dozen complex national class action suits. Unlike the present case, consolidated class actions involve procedural hurdles, like the requirement of the appointment of lead counsel and lead plaintiff,[6] the filing of a consolidated amended complaint, the filing and adjudication of a motion for class certification, the judicial approval of any settlement, etc., that would greatly increase the expense and duration of litigation and prejudice the Plaintiff. Defendants are incorrect in their assertion that a consolidated complaint could "reconcile" the various state law claims together, since no plaintiff (lead or otherwise) in Missouri has standing to assert claims under the D.C. Consumer Protection Procedures Act.[7] *See* Def. Mot. at 11. Thus,

---

[6] Currently, there are no less than three motions filed in the federal cases pending in Missouri and Illinois seeking appointment as lead counsel and plaintiff. This leadership fight will likely put months onto the case as it will require the Court's time and attention before a leadership is appointed, a consolidated amended complaint filed, motions to dismiss served and briefed, and only then *bifurcated* discovery begun. By that time, Plaintiff here could have completed merits discovery and moved onto summary judgment motions.

[7] Given that consolidation sought by Defendants is not even possible, transfer make less sense. In California, private attorney general actions were, at most, coordinated with class actions. For example, in *Parrish v. Cingular Wireless*, 129 Cal. App. 4th 601 (Cal. App. 1st 2005), the motions at issue were analyzed against the consolidated class actions separate and apart from the two private attorney general complaints—which were not even consolidated together. *See id.* at 605-8, 617. This action can be loosely coordinated with the class actions by agreement of counsel without the necessity of transfer to a foreign jurisdiction.

if this case was transferred to Missouri, it could never be consolidated into the class actions and be led by any court-appointed lead plaintiff. *See generally Parrish,* 129 Cal. App. 4th at 605-08, 617.

All of these procedural hurdles will add time and financial expense to the case and will greatly prejudice the Plaintiff. Such prejudice is appropriately considered on a motion to transfer and is another reason that the motion should be denied. *See Martin-Trigona*, 668 F. Supp. at 3.

## CONCLUSION

Defendants' motion should fail because this case does not even meet the basic prerequisites to a §1404(a) transfer because subject matter jurisdiction is lacking in the transferee court and it is therefore not one in which this action "might have been brought." Even assuming this was not the case, Plaintiff's choice of home forum should not be disturbed because of this case's substantial nexus to the chosen forum. This case involves novel issues of local District of Columbia law and should not be decided by a Federal court in Missouri. Because Defendants have failed to meet their burden, their motion to transfer should be denied.

Dated: July 5, 2006                    **FINKELSTEIN, THOMPSON & LOUGHRAN**

  /s/ Tracy D. Rezvani
Tracy D. Rezvani  (DC Bar #464293)
Donald J. Enright (DC Bar #463007)
Hilary Ratway    (DC Bar #481465)
Stan M. Doerrer
The Duvall Foundry
1050 30th Street, NW
Washington, DC  20007
(202) 337-8000
(202) 337-8090 fax

14