## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LYNN KOHAN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 06-1066 (RCL) |
| v. ) | |
| ) | |
| H&R BLOCK, INC. and H&R BLOCK ) | |
| FINANCIALADVISORS, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## DECLARATION OF TRACY D. REZVANI IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND FOR LACK OF SUBJECT MATTER JURISDICTION

I, Tracy D. Rezvani, an attorney duly admitted to practice before this Court, hereby declare and state:

1.    I am a partner of Finkelstein Thompson & Loughran, 1050 30th Street NW, Washington, DC 20007, attorneys for Plaintiff.

2.    I submit this declaration in support of Reply In Support Of Plaintiff's Motion For Remand For Lack Of Subject Matter Jurisdiction, and in order to put before the Court the exhibits which are described and identified below.

3.    Attached hereto as Exhibit A is a true and correct copy of District of Columbia Bar, *Consumer Protection in the District of Columbia Following Suspension of DCRA Enforcement of the Consumer Protection Procedures Act: Report with Recommendations* (April 1999).

4.    Attached hereto as Exhibit B is a true and correct copy of Mara Verheyden-Hilliard, *Proposed Legislation*, Partnership for Civil Justice, Inc. (April 30, 1999).

Dated: July 14, 2006
    Washington, DC

_____
Tracy D. Rezvani  (Bar #464293)

# EXHIBIT A

Consumer Protection in the District of Columbia Following the Suspension of DCRA
Enforcement of the Consumer Protection Procedures Act

Report With Recommendations

by the Antitrust, Trade Regulation and Consumer Affairs Section of the D.C. Bar.

Steering Committee:
Ray V. Hartwell III, Chair
Mara E. Verheyden-Hilliard, Vice Chair
Don Farmer
Phyllis Kimmel
Carl Messineo
Emily B. Myers
Don A. Resnikoff
Deborah M. Zuckerman

Principal Authors:
Carl Messineo
Don A. Resnikoff
Patricia Sturdevant
Mara Verheyden-Hilliard

April, 1999

---

## STANDARD DISCLAIMER

The views expressed herein represent only those of the Antitrust, Trade Regulation and
Consumer Affairs Section of the District of Columbia Bar and not those of the D.C. Bar
or of its Board of Governors

---

Consumer Protection in the District of Columbia Following the Suspension of DCRA
Enforcement of the Consumer Protection Procedures Act

## EXECUTIVE SUMMARY

This report with recommendations of the Antitrust Trade Regulation and
Consumer Affairs Section updates its October 1997 report of the same title. It is the
outcome of a year long process in which members of the Consumer Affairs Committee of
the Section met and collaborated with a cross section of public and private entities with
an interest in D.C. consumer affairs, to develop achievable recommendations for
modernizing and improving consumer protection.

### The Existing Enforcement Structure

Under the existing enforcement structure, consumer protection is provided by
four types of entities:

1) The Department of Consumer and Regulatory Affairs (DCRA), designated
   by law as the District's consumer protection agency,
2) the Office of the Corporation Counsel,
3) the private bar, and
4) public interest organizations.

The consumer protection authority of DCRA has been suspended since 1994 as a
cost-savings measure, and in the foreseeable future appears unlikely to be reinstated.

### Shortfalls in the Existing System

The Antitrust, Trade Regulation and Consumer Affairs Section of the D.C. Bar
recognizes a number of critical shortfalls in the existing system:

- Suspension of DCRA's authority removed the primary mechanism for halting
  unlawful trade practices, and prohibited D.C.'s consumer protection agency from
  enforcing the law.

- Although the Office of the Corporation Counsel has recently established a new
  Consumer Protection Unit, legislative authority has not been enacted to provide
  Corporation Counsel with a similar range of authority to that previously exercised
  by DCRA, or to that exercised by the FTC or by the consumer protection units of
  state Offices of the Attorney General.

- Public interest organizations, and the bar do not have an enumerated authority to
  halt illegal practices through injunctive relief and disgorgement of ill-gotten gain



i

in the public interest.

- There is no central "point of entry" for consumer complaints.

## Recommendations of the D.C. Bar's Section on Antitrust, Trade Regulation and Consumer Affairs

The Section recommends a number of actions be taken to modernize and improve consumer protection in the District:

- The Office of the Corporation Counsel (OCC) should be provided authority comparable to that held by the Federal Trade Commission, state and local consumer protection agencies and consumer protection units of state offices of the attorney general, and certain authority granted to DCRA but now suspended.

- The OCC Consumer Protection Unit's funding should be supplemented with a Consumer Protection Fund, similar to the account used by OCC's Antitrust Unit.

- Public interest organizations and the private bar should be statutorily enabled to seek injunctive relief and disgorgement of illegal proceeds in the public interest.

- A single point of entry should be reestablished for consumer complaints.

## Financial Impact

Financial Impact of the Recommendations: Low or none.

Consumer Protection in the District of Columbia Following the Suspension of DCRA
Enforcement of the Consumer Protection Procedures Act

### Report With Recommendations

In October, 1997 the Antitrust, Trade Regulation and Consumer Affairs Section
of the D.C. Bar issued a report with recommendations on the state of consumer
protection in the District of Columbia following the prohibition of the Department of
Consumer and Regulatory Affairs (DCRA), the District's consumer protection agency,
from enforcement of the Consumer Protection Procedures Act, the District's principal
consumer protection law.

A number of important changes have occurred since the issuance of the October,
1997 report, including legislative enactments of portions of the original report's
recommendations. The Section has issued this report as an update of the original report,
with recommendations in light of current circumstances.

### Introduction

Members of the Consumer Affairs Committee of the D.C. Bar Section on
Antitrust, Trade Regulation and Consumer Affairs have spent approximately twelve
months studying possibilities for improving and modernizing consumer protections in the
District, in light of the current crisis and lack of existing consumer law enforcement.

The goal of this process has been to create a series of recommendations that are
manageable and practical to implement, informed and supported by those who will be
affected by them including the various government agencies whose responsibilities
relate to consumer protection, and to develop recommendations that are achievable
given existing government budget constraints and priorities.

We have sought the input and advice of a broad cross section of experts and
persons who share a commitment to creating an honest and fair marketplace that will
prevent deception to consumers, and will level the playing field for legitimate businesses.

We wish to express our sincere appreciation to those who have met with
members of the Committee or otherwise contributed to this process, including: Wayne
Chapman, Office of the Chief Management Officer; Cliff Dedrick, DCRA; Recita
Evans, DCRA; Kitty Huggins, Multi-Door Dispute Resolution Division of D.C. Superior
Court; Edward J. Johnson III, President, Better Business Bureau of Metropolitan
Washington; Joan McKenzie, former Chief, DCRA, Office of Compliance; Nancy

Mercurio, WTOP Call for Action; Charlotte Parker, Office of the Corporation Counsel; Sharis Pozen, Hogan & Hartson; Luis Rambaut, Chief, Civil Division of the Office of the Corporation Counsel; Bennett Rushkoff, Senior Counsel, Consumer and Regulatory Actions, Office of the Corporation Counsel; Melanie Saunders, DCRA.

## Brief History of Consumer Protection in D.C.

The Department of Consumer and Regulatory Affairs Office of Compliance was established by statute in 1976 as the District's "principal consumer protection agency."[1] The legislative history of the D.C. Council in creating this office reflects an intention to create an "independent consumer protection agency structured along the lines and authority of a 'mini-FTC.'"[2]

Among other things, the Office of Compliance was authorized to:
- receive and investigate complaints and initiate its own investigation of deceptive, unfair or unlawful trade practices against consumers; issue summonses, hold hearings, compel the attendance of witnesses, administer oaths and take the testimony of any person under oath, concerning any trade practice or practices;
- issue subpoenas to compel the production of documents, papers, books, records, and other evidence concerning any trade practice;
- report to appropriate governmental agencies information concerning any violation of any law;
- assist, advise, and cooperate with private, local and federal agencies and officials to protect and promote the interest of the District of Columbia consumer public;
- assist, develop, and conduct programs of consumer education and information through public hearings, meetings, publications, or other materials prepared for distribution to the consumer public of the District of Columbia.

DCRA became the primary "point of entry" for consumer protection complaints. In 1993, the Office of Compliance received 3,447 consumer complaints and achieved a

---

[1]    D.C. Code § 28-3902(a).

[2]    Committee Report on Bill 1-253, the District of Columbia Consumer Protection Procedures Act, March 24, 1976.

2

cost savings to consumers of over $1.5 million in refunds and judgments.[3] In 1994, the District Council, citing budget constraints, prohibited DCRA, the District's consumer protection agency, from using administrative process to enforce consumer protection law.[4] That prohibition has been extended, and is now in effect through October, 2000.[5]

Currently, D.C. consumers can seek damages under a private right of action under the Consumer Protection Procedures Act.[6] This provides limited recourse, however, because the right of action does not supplant the role of a consumer protection agency. It does not explicitly empower consumers to obtain injunctive relief to stop a known fraudulent practice prior to its damaging effects; nor for injunctive relief to stop a known fraudulent practice from continuing to cause damage; nor to bring an end to fraudulent misrepresentations.[7] It does not provide for disgorgement of unjust gains to

---

[3]    "DCRA Consumer Protection — Then, Now and Future: DCRA CPPA Statistics," Miriam Hellen Jones, Esq., Chief, Office of Compliance, DCRA, January 30, 1997.

[4]    D.C. Code § 28-3902(h) (suspending enforcement of the Consumer Protection Procedures Act by the DCRA); See also sections 807 and 808 of Act 10-389, the Multiyear Budget Reduction and Support Emergency Act of 1994, 42 D.C. Reg. 229-30 (Jan. 13, 1995).

[5]    The Consumer Protection Amendment Act of 1998, Act 12-399 (June 23, 1998) (extending suspension until October, 2000).

[6]    D.C. Code § 28-3905(k)(1).

[7]    Most state Unfair and Deceptive Acts and Practices (UDAP) statutes authorize private injunctive actions, as does the model Uniform Deceptive Trade Practices Act (UDTPA). See e.g., 7 Uniform Laws Annotated (1978) (text of the UDTPA); Ala. Code § 8-19-1; Cal. Civ. Code § 1780 (West); Cal. Bus. & Prof. Code § 17200 (West); Conn. Gen. Stat. § 42-110(g); Del. Code Ann. tit. 6, § 2531; Fla. Stat. Ann. § 501.211(1) (West); Ga. Code Ann. § 106-701, 106-1201; Haw. Rev. Stat. § 480, 481A; Idaho Code § 48-608; 815 Ill. Comp. Stat. 505/10a et seq., 510-1; Kan. Stat. Ann. § 50-634; Me. Rev. Stat. Ann. tit. 5 § 213; Mass. Gen. Laws Ann. ch. 93A § 9 (West); Me. Rev. Stat. Ann. tit. 10, § 1211; Mich. Comp. Laws § 445.910; Minn. Stat. § 325D.23, 325F.69; Neb. Rev. Stat. § 87-301, 59-1608(2); N.H. Rev. Stat. Ann. § 358-A:10; N.M. Stat. Ann. § 57-12-1; N.Y. Gen. Bus. Law § 349; Ohio Rev. Code Ann. § 4165, 1345.09 (Baldwin); Okla. Stat. Ann. tit. 78, § 51 (West); Or. Rev. Stat. § 646.605; R.I. Gen. Laws § 6-13.1-5.2; Tenn. Code Ann. § 47-18-109; Tex. Bus & Comm. Code Ann. tit. 2 § 17.50(b) (Vernon); Utah

the public; nor does it allow an organization acting in the public interest, for example, to seek a remedy for or an end to a fraudulent practice prior to a victim coming forward.[8]

In 1999, the Office of the Corporation Counsel created a new Consumer Protection Unit. That unit does not yet have authority comparable to that exercised by DCRA, or by similar consumer protection offices in other jurisdictions. Legislation should also be enacted to enable the Unit to supplement its funding through the damage awards it obtains, as is provided for in similar units, such as OCC's Antitrust Unit.[9]

### Current Status : Consumer Law Enforcement Must Be Strengthened and Modernized

The prohibition of DCRA from administrative enforcement of the District's consumer protection laws leaves District consumers without a consumer protection agency. Three potential sources of consumer protection in the District remain, each of which has various abilities and legal authority to stop unlawful trade practices: The Office of the Corporation Counsel, [10] Private Attorneys[11] and Public Interest Organizations.[12]

---

Code Ann. § 13-2-1; Utah Code Ann. § 13-11-17; Wash. Rev. Code § 19.86.090; W. Va. Code § 46A-6-106.

[8]     See, Cal. Bus. & Prof. Code § 17200.

[9]     D.C. Code § 28-4516 (establishing District of Columbia Antitrust Fund).

[10]     See D.C. Code § 28-3909 (existing authority of the Office of Corporation Counsel to bring consumer protection actions).

[11]     D.C. Code 28-3905(k) (existing authority of private litigants to bring consumer protection actions).

[12]     Id.

4



**Figure 1: Sources of Consumer Protection in the District of Columbia**

Historically, the most active of the above sources of consumer protection has been DCRA. The authority and the roles of the three remaining consumer protection entities should be adjusted to offset the withdrawal of DCRA from consumer law enforcement.

### Shortfalls in the Existing System

There are a number of critical shortfalls in the existing system:

1)    The suspension of the enforcement authority of DCRA removes the primary mechanism for halting unlawful trade practices. When active, DCRA fielded approximately 3,000 complaints per year.[13]

Some of the complaints fielded by DCRA were misunderstandings involving legitimate businesses that could be resolved through mediation or conciliation. Others involved unscrupulous merchants and required outside intervention to prevent and remedy consumer harm. Some involved patterns of unfair trade practices that caused substantial injury to consumers.

---

[13]    "DCRA Consumer Protection -- Then, Now and Future: DCRA CPPA Statistics," Miriam Hellen Jones, Esq., Chief, Office of Compliance, DCRA, January 30, 1997.

5

For example, DCRA intervened after receiving allegations that D.C. based invention promotion companies were misrepresenting their services to investors across the country. DCRA negotiated a settlement that included repayment to 140 consumers of approximately $500,000, establishment of a fund of $200,000 for future complaints, and payment of fines to the D.C. Government.

In another situation, DCRA received multiple complaints that a local luxury car dealer was selling cars to D.C. area consumers even though the dealership never possessed title to the automobiles. Substantial recovery of damages was made.

DCRA litigated an award of compensatory and punitive damages against the "United Nations Student Council" for misrepresentation, after the Council marketed itself to international students falsely claiming to provide jobs, scholarships, student loans, immigration advise and other benefits.

2a)    The Office of the Corporation Counsel has recently established a new Consumer Protection Unit, but legislative authority has not been enacted to provide Corporation Counsel with a similar range of authority to that previously exercised by DCRA, or to that exercised by the FTC or by the consumer protection units of state Offices of the Attorney General.

The only D.C. Government agency with existing consumer protection authority is the Office of the Corporation Counsel. However, OCC's existing authority was granted at a time when DCRA was understood to be the District's principal consumer protection agency, and therefore OCC's authority is more limited than that granted to DCRA, which is now suspended.[14]

State agencies enforcing unfair and deceptive acts and practices (UDAP) laws generally have authority to conduct pre-filing investigations, and to issue civil investigation demands or subpoenas.[15] Investigative authority was granted to

---

[14]    Compare D.C. Code § 28-3909 (consumer protection authority granted to the Office of the Corporation Counsel), D.C. Code § 28-3903 (powers of the consumer protection agency, DCRA); See also, D.C. § 28-3902(h)(suspending DCRA's powers as consumer protection agency).

[15]    National Consumer Law Center, Unfair and Deceptive Acts and Practices, Fourth Edition (1997) at 641; See also, Md. Code Ann., Com. law II § 13-405 (providing Maryland Attorney General with subpoena power for consumer protection

DCRA for consumer law violations.[16] The Office of the Corporation Counsel currently has such authority to investigate other illegal practices, such as antitrust violations,[17] but such authority has not been vested in OCC for consumer law violations.

The legislative history of the Consumer Protection Procedures Act (CPPA) reflects an intent to grant the District a structure "along the lines and authority of a 'mini-FTC.'"[18] However, the illegal trade practices which the D.C. Government can remedy does not incorporate the definition of an unfair trade practice as defined by the Federal Trade Commission. The FTC's definitions, as defined by federal statute, 45 U.S.C. § 45(a), and administrative rules and regulations, is frequently refined to reflect current business practices, and would be appropriate to incorporate by reference into the CPPA's definition of illegal trade practices.

2b)     The newly created Consumer Unit of the Office of the Corporation Counsel lacks a supplemental source of funding, similar to that used by OCC's Antitrust Unit.[19]

3)      Public interest organizations, and private attorneys do not have the ability to seek injunctive relief and disgorgement of illegal proceeds in the public interest, as provided for example, by California consumer protection law.[20]

Under existing D.C. law, a public interest organization cannot undertake

---

investigations).

[16]     D.C. Code § 28-3903(c), § 28-3903(1)(DCRA may issue subpoenas to compel the production of documents, records, and other evidence concerning any trade practice).

[17]     D.C. Code § 28-4505 (authorizing civil investigative demands for antitrust violations).

[18]     Committee Report on Bill 1-253, the District of Columbia Consumer Protection Procedures Act, March 24, 1976.

[19]     D.C. Code § 28-4526 (establishing D.C. Antitrust Fund).

[20]     Cal. Bus. & Prof. Code § 17200.

7

representative actions to stop fraudulent conduct prior to a victim losing money. For example, under California law, an organization that monitors fraud against the elderly can take immediate action to enjoin illegal conduct, such as a fraudulent sweepstakes, before a victim loses his or her life savings.

4)  There is no central "point of entry" for consumer complaints.

The elimination of DCRA's consumer protection functions left consumers without a central location for lodging complaints and seeking consumer information. It further deprives law enforcement of a central and accessible repository of local complaints for review to identify repeat offenders or patterns and practices of illegal conduct.

## Recommendations

We propose the following actions be taken to modernize and improve consumer protection in the District, and to offset the elimination of the Department of Consumer and Regulatory Affairs (DCRA) as the District's consumer protection agency.

1)  **Extend to the Office of the Corporation Counsel a Range of Enforcement Authority Comparable to that Exercised Previously by DCRA, and by the Federal Trade Commission and Consumer Protection Units of State Offices of the Attorney General**

The Office of the Corporation Counsel should be provided with the ancillary authority necessary to carry out consumer protection functions, comparable to those vested in other law enforcement entities, such as Offices of the Attorney General in other states, the FTC, and those formerly vested in DCRA. This authority would include:

- Any appropriate[21] authority that has already been extended to DCRA, but is now suspended.[22]

- Authority to conduct pre-filing investigations, similar to the authority OCC currently holds for investigations of antitrust violations, and similar to the authority provided for consumer protection investigations to other enforcement agencies, including the Maryland Attorney General and the Federal Trade Commission.[23]

---

[21]    Certain of DCRA's former authorities would not be appropriate to extend to OCC, as they are inconsistent with OCC's function. For example, DCRA previously exercised administrative rulemaking authority that would not appropriately be transferred. See D.C. Code § 28-3903(a)(10). Nor should OCC receive the authority to issue cease and desist orders, See D.C. Code § 28-3903(a)(3), as the OCC petitions for such relief by filing a complaint with the Superior Court of the District of Columbia.

[22]    See D.C. Code § 28-3903 (powers exercised by DCRA); D.C. Code § 3902(h) (suspension of powers exercised by DCRA).

[23]    National Consumer Law Center, Unfair and Deceptive Acts and Practices, Fourth Edition (1997) at 641 (state agencies generally have authority to make civil investigative demands); See also, Md. Code Ann., Com. law II § 13-405 (providing Maryland Attorney General with subpoena power for consumer protection investigations).

9

• Creation of a District of Columbia Consumer Protection Fund, similar to the existing District of Columbia Antitrust Fund.[24] Contributions into this fund will consist of sums transferred pursuant to court order or judgment from an enforcement action brought by OCC, in settlement of penalties asserted by OCC, costs and attorneys fees awards to OCC, and gifts or grants or cy pres payments. This supplementary fund will enable consumer protection enforcement to be reestablished within reasonable budgetary constraints, as is the practice in other jurisdictions.

• The definition of unlawful trade practices should incorporate by reference the definition of unfair trade practices, as established by the Federal Trade Commission.[25] This is consistent with the D.C. Council's original intent to create a "mini-FTC"[26] for the District, and will allow the District's definition of unfair trade practices to reflect current federal law.

2)    Provide Public Interest Organizations and Private Attorneys the Ability to Seek Injunctive Relief and Disgorgement of Ill-Gotten Gains in the Public Interest



• Modify the existing private right of action to explicitly authorize injunctive relief and disgorgement. Disgorgement fulfills the "basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom." Bank of the West, 10 Cal. Rptr. 2d, at 547, quoting Fletcher v. Security Pacific National Bank, 23 Cal.3d 442, 451 (1979). Similarly, the inadequacy of injunctive relief alone to deter and remedy wrongful conduct has long been recognized by the courts. "While an injunction against future violations might have some deterrent effect, it is only a partial remedy since it does not correct the past consequences of past conduct...An 'order which commands [a party] only to go and sin no more simply allows every violator a free bite at the apple.'" Consumers Union, 6 Cal. Rptr. 2d, at 198.

• The private right of action should be modified to enable public interest organizations and individuals to take consumer protection actions in the public

---

24    See D.C. Code § 28-4516 (establishing District of Columbia Antitrust Fund)

25    See 15 U.S.C. § 45(a), Section 5, and related regulations.

26    Committee Report on Bill 1-253, the District of Columbia Consumer Protection Procedures Acts, March 24, 1976.

interest to stop fraudulent conduct. Currently it is not possible to bring a consumer action to stop illegal conduct until after a victim suffers injury. This is necessary in any event, but particularly important in light of the prohibition of DCRA from consumer protection enforcement, and OCC's foreseeable inability to step in and completely replace its functions.

This modernization would allow an entity or individual to bring an action and seek judicial relief when an unlawful trade practice comes to its attention. For example, an organization which monitors fraud against the elderly would be able to petition in court to stop a misleading and fraudulent mailing, in the public interest, without waiting for a senior citizen to lose his or her money.[27]

- These actions will also allow the government to coordinate with the private and non-profit sectors more efficiently, allowing the government to target its activities in areas where enforcement by private parties will not be sufficient. As a consequence, consumer protection can be increased without any additional or substantial cost to the government, as the actions brought under the private right of action will be supported by the private and non-profit sectors. Public interest organizations will be able to bring additional resources to consumer protection enforcement in the District, contributing private and donated funds that will advance public priorities without causing the expenditure of additional government resources.

3)   **Reestablish A Single Point of Entry for Consumer Complaints**

The elimination of DCRA as the central point of entry left consumers confused and lacking direction regarding where they can go for assistance, assuming assistance is available. We recommend options be explored for reestablishing a single point of entry for consumer complaints. Certain factors are necessary elements of any proposed point of entry:

- The point of entry should be able to advocate on behalf of the consumer and provide intake staff who are trained in the District's consumer laws.

- The point of entry should provide complainants with information that describes the full range of their options for resolution, including for example, legal remedies, sample complaint letters, information about filing a small claims complaint, and referrals to mediation centers, appropriate enforcement authorities, consumer law

---

[27]   See California Business and Professions Code Sections 17200 et seq.

clinics, public interest organizations and private attorneys who offer consumer protection services.

- The point of entry, if not part of District government, must provide law enforcement and government agencies full access to consumer complaints, for tracking purposes and so priorities for law enforcement actions can be identified. If the point of entry is not part of District government it is particularly important that consumer rights to pursue litigation in addition to mediation or arbitration not be precluded or hindered.

The Antitrust, Trade Regulation and Consumer Affairs Section offers its assistance to the D.C. Council in its consideration of these and other consumer related proposals. The Section welcomes input regarding additional measures that might be taken to aid D.C. consumers.

## Financial Impact of the Recommendations

An important consideration in making these recommendations is the constraint created by reduced government funding for consumer protection services. We expect the financial impact of the recommendations to be low or none, for the reasons below.

Recommendation No. 1, to extend to the Office of Corporation Counsel certain authority exercised previously by the DCRA, and by the FTC and consumer units of state law enforcement agencies, can be accomplished through legislative amendment. Expanded functions of the Office of Corporation Counsel may be offset by the supplemental stream of funding produced by the proposed D.C. Consumer Protection Fund. Existing funding within OCC exists for the recently created Consumer Protection Unit. Although increase in that funding for staffing purposes is desirable and possibly necessary for the most effective government consumer protection activities, increased funding is not necessitated by the proposed legislative amendments which do not mandate activities, but rather allow OCC to take actions as it perceives necessary.

Recommendation No. 2, to grant public interest organizations and private attorneys the authority to seek injunctive relief and disgorgement in the public interest, will cause no increase in government funding. Any actions pursuant to the private right of action will be funded solely by the non-profit and private sectors, who may be independently funded for such activities and/or compensated by fee shifting statutes. By coordinating with these sectors, the government can leverage the impact of existing limited public resources.

Recommendation No. 3, to reestablish a single point of entry for consumer complaints, is primarily a statement of need and a proposal for study and informed action. The point of entry may be developed at the OCC or through the creation of a 501(c)(3) non-profit organization for such purposes, which would be funded through foundation funding or other private sources.

13

# EXHIBIT B

LAW OFFICES
# PARTNERSHIP FOR CIVIL JUSTICE, INC.
1901 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20006-3405

CARL MESSINEO*
MARA VERHEYDEN-HILLIARD*
*ADMITTED IN D.C. AND N.Y.

TELEPHONE
(202) 530-5650

FACSIMILE
(202) 530-5634

April 30, 1999

Bennett Rushkoff, Esq.
Senior Counsel
Consumer and Regulatory Actions
Office of Corporation Counsel
441 4th St. NW
Washington, DC 20001

*Via facsimile and first class mail*

Dear Bennett:

As we discussed, please find enclosed the proposed legislation, "The Consumer Protection Amendment Act of 1999." As you know this legislation grew out of the legislative committee of the Public-Private Working Group on Consumer Affairs, which had representatives from your office, DCRA, the non-profit sector and the private bar.

It has been a pleasure working with you to draft this document. Your experience in consumer protection law enforcement and your understanding of the needs of the Office of the Corporation Counsel and of consumers in general has been invaluable.

I believe that the enclosed legislation is consistent with and addresses the recommendations contained in the April, 1999 report of the D.C. Bar's Antitrust, Trade Regulation and Consumer Affairs Section, "Consumer Protection in the District of Columbia Following the Suspension of DCRA Enforcement on the Consumer Protection Procedures Act: Report with Recommendations."

Please let me know if the Office of Corporation Counsel would be willing to support this legislation, in view of the D.C. Bar Section's report.

Sincerely,

Mara Verheyden-Hilliard

## "The Consumer Protection Amendment Act of 1999"

To amend the Consumer Protection Procedures Act to equalize with that exercised by other jurisdictions the Office of the Corporation Counsel's authority to enforce consumer laws, and to modernize and improve existing consumer protection law enforcement systems.

### § 28-3901    Definitions and purposes

§ 28-3901(b)    The purposes of this chapter are to:

(1)    assure that a just mechanism exists to remedy all improper trade practices <u>and deter the continuing use of such practices by, among other things, requiring businesses to disgorge unjust gains obtained by the use of such acts or practices, and by assessing damages and civil penalties;</u>

(2)    promote, through effective enforcement, fair business standards throughout the community; and

(3)    educate consumers to demand high standards and seek proper redress of grievances.

> *Rationale: Disgorgement fulfills the "basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom." <u>Bank of the West v. Superior Court</u>, 10 Cal. Rptr. 2d 538, at 547 (1992)(en banc), quoting <u>Fletcher v. Security Pacific National Bank</u>, 23 Cal.3d 442, 451 (1979). Similarly, the inadequacy of injunctive relief alone to deter and remedy wrongful conduct has long been recognized by the courts. "While an injunction against future violations might have some deterrent effect, it is only a partial remedy since it does not correct the past consequences of past conduct...An 'order which commands [a party] only to go and sin no more simply allows every violator a free bite at the apple.'" <u>Consumers Union v. Alta-Dena Certified Dairy</u>, 6 Cal. Rptr. 2d 193 at 198 (Cal. App. 1 Dist. 1992).*

<u>§ 28-3901(c)</u>

<u>This chapter shall be construed and applied liberally to promote its purpose. In construing whether a trade practice violates this chapter, due consideration and weight shall be given to interpretations of § 5(a)(1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts.</u>

> *Rationale:*
> *The addition of subsection (c) codifies the general rule that remedial statutes be broadly construed in order to achieve their remedial purpose, and directs the court to interpretation of the FTC Act for guidance. It models a similar provision in the Maryland Consumer Protection Act, Md. Com. Law § 13-105. The*

1

*legislative history of the CPPA reflects an intent to grant the District a structure "along the lines and authority of a 'mini-FTC.'"* See *Committee Report on Bill 1-253, The D.C. Consumer Protection Procedures Act, March 24, 1976.*

§28-3904    Unlawful trade practices
§ 28-3904(ee) violate Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a), or a Federal Trade Commission trade regulation rule.

*Rationale: Subsection (ee) incorporates into the District's definition of unlawful trade practices the definition of "unfair trade practice" as established by the Federal Trade Commission. This is consistent with the legislative history of the CPPA which stated an intent to grant the District a structure "along the lines and authority of a 'mini-FTC.'"* See *Committee Report on Bill 1-253, The D.C. Consumer Protection Procedures Act, March 24, 1976. However, the illegal trade practices which the D.C. Government may currently remedy do not incorporate the definition of an unfair trade practice as defined by the Federal Trade Commission. The FTC's definitions, as defined by 15 U.S.C. § 45(a), and administrative rules and regulations, is frequently refined to reflect current business practices, and would be appropriate to incorporate by reference into the CPPA's definition of illegal trade practices.*

§ 28-3905    Complaint procedures
§ 28-3905(k)(1)
~~Any consumer who suffers any damage as a result of the use or employment by any person of a trade practice in violation of a law of the District of Columbia within the jurisdiction of the Department may bring an action~~ Actions for relief under this chapter seeking remedy for the use or employment by any person of a trade practice in violation of a law of the District of Columbia may be brought by any person, whether acting for the interests of itself, its members, or the general public, in the Superior Court of the District of Columbia to recover or obtain any of the following:
    (a)    a civil fine, payable to the Department, not to exceed $500 per violation;
    (b a)    treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;
    (c b)    reasonable attorney's fees;
    (d c)    punitive damages; and
    (d)    an injunction against the continuing use of an unlawful trade practice;
    (e)    in representative actions, in addition to the relief provided above, such orders or judgments as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unlawful trade practice; and
    (e f)    any other relief which the court deems proper.

2

*Rationale: This enables public interest organizations and individuals to take consumer protection actions in the public interest to stop fraudulent conduct when an unlawful trade practice comes to their attention. Currently it is not possible to bring a consumer action to stop illegal conduct until after a victim suffers injury. This amendment allows, for example, an organization that monitors fraud against the elderly to petition the court to stop a misleading and fraudulent mailing in the public interest without waiting for a senior citizen to lose his or her life savings. This is modeled after existing California consumer protection law. See California Business and Professions Code Sections 17200 et seq.*

*This will also allow the government to coordinate with the non-profit and private sectors more efficiently, allowing the government to leverage the impact of existing public resources and target its activities in areas where enforcement by private parties will not be sufficient. As a consequence, consumer protection can be increased without any additional or substantial cost to the government. Public interest organizations will be able to bring additional resources to consumer protection enforcement in the District, contributing private and donated funds that will advance public priorities without causing the expenditure of additional government resources.*

*Proposed subsections (d) and (e) provide for injunctive relief and disgorgement of ill-gotten gain in representative actions, respectively. Although, injunctive relief presumably is available under current law pursuant to § 28-3905(k)(1)(e), this amendment codifies this presumption to eliminate any statutory ambiguity. Disgorgement has been recognized as an essential element of consumer protection law. According to the California Supreme Court, "[t]o permit the [retention of even] a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement [of the law] is to be achieved. One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom." Bank of the West, supra, 10 Cal. Rptr. 2d, at 547, quoting Fletcher v. Security Pacific National Bank, 23 Cal.3d 442, 451 (1979).*

§ 28-3905(k)(2)

The remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of the District. Nothing in this chapter shall prevent any person who is injured by a trade practice in violation of a law of the District of Columbia within the jurisdiction of the Department from exercising any right or seeking any remedy to which the person might be entitled or from filing any complaint with any other agency.

3

*Rationale: cf. § 28-4514(remedies cumulative in antitrust actions). This language is consistent with the existing provisions and intent of the CPPA.*

## § 29-3909 Authority of Corporation Counsel

(a)     Notwithstanding any provision of law to the contrary, if the Corporation Counsel has reason to believe that any person is using or intends to use any method, act, or practice in violation of section 28-3803, 28-3805, 28-3807, 28-3810, 28-3811, 28-3812, 28-3814, 28-3817, 28-3818, 28-3819, or 28-3904, and if it is in the public interest, the Corporation Counsel, in the name of the District of Columbia, may petition the Superior Court of the District of Columbia to issue a temporary or permanent injunction against the use of the method, act or practice. In any action under this section the Corporation Counsel shall not be required to prove damages and the injunction shall be issued without bond. The Corporation Counsel, on behalf of any identifiable person, may recover restitution for property lost or damages suffered by consumers as a consequence of the unlawful act or practice.

(b)     In addition, in any action under this section, the Corporation Counsel may recover a civil penalty of not more than $1,000 for each violation found by the Court, the costs of the action, and reasonable attorney's fees.

*Rationale:     cf. Md. Code Ann., Com. Law II §§ 13-409 and 13-410 (providing for recovery of costs and civil penalties by the Maryland Attorney General in consumer cases). The authority for this penalty exists currently at § 28-3905(k)(1)(A) but is more appropriately placed within the authority of Corporation Counsel, as payment of civil fines in private actions pursuant to § 28-3905 could compromise the ability of Corporation Counsel to recover civil penalties.*

(c)     The Corporation Counsel may also:
     (1)     represent the interests of consumers before administrative and regulatory agencies and legislative bodies;
     (2)     assist, advise, and cooperate with private, local and federal agencies and officials to protect and promote the interests of consumers;
     (3)     assist, develop, and conduct programs of consumer education and information through public hearings, meetings, publications, or other materials prepared for distribution to consumers;
     (4)     undertake activities to encourage local business and industry to maintain high standards of honesty, fair business practices, and public responsibility in the production, promotion, and sale of consumer goods and services and in the extension of

4

consumer credit;

(5)     exercise and perform such other functions and duties consistent with the purposes or provisions of this chapter, and with the Corporation's Counsel's role as parens patriae, which may be deemed necessary or appropriate to protect and promote the welfare of consumers;

(6)     negotiate, agree to, and sign enforceable assurances of voluntary compliance by merchants with the provisions of this chapter;

(7)     publicize its own actions taken in the interests of consumers.

*Rationale:     This extends to Corporation Counsel certain ancillary authorities that have already been extended to the Department of Consumer and Regulatory Affairs, but are suspended due to budget constraints. See D.C. Code § 28-3903; § 28-3902(h). The only D.C. Government agency with existing consumer protection authority is the Office of the Corporation Counsel. However, OCC's existing authority was granted at a time when DCRA was understood to be the District's principal consumer protection agency, and therefore OCC's existing authority is more limited than that granted to DCRA, which is now suspended.*

## § 28-3910     Civil investigative demand

In the course of any investigation to determine whether to seek relief under section 28-3909, the Corporation Counsel may subpoena witnesses, administer oaths, examine an individual under oath, and compel production of records, books, papers, contracts, and other documents. Information obtained under this section is not admissible in a later criminal proceeding against the person who provides the evidence.

*Rationale:     This provides Corporation Counsel with authority to conduct pre-filing investigations similar to the authority Corporation Counsel currently holds for investigations of antitrust violations, and similar to the authority provided for consumer protection investigations to other enforcement agencies, including the Maryland Attorney General and the Federal Trade Commission. cf. Md. Code Ann., Com. Law II § 13-405 (providing Maryland Attorney General with subpoena power for consumer protection investigations).*

## § 28-3911     District of Columbia Consumer Protection Fund

(a)     There is established a "District of Columbia Consumer Protection Fund" (hereafter referred to as "the Fund") to be operated as a proprietary fund with assets not to exceed $1,490,000 at any time. The fund shall consist of such sums as may be transferred to the Fund pursuant to a court order or judgment in an action brought pursuant to section 28-3909, gifts or grants or cy pres payments made to support consumer protection activities by the Corporation Counsel, and such sums as may be

recovered by the Corporation Counsel pursuant to section 28-3909 or in settlement of claims that the Corporation Counsel has asserted or could assert under section 28-3909. Any balance in excess of that allowed in the Fund shall be deposited in the General Fund of the District of Columbia.

(b)    The District of Columbia Consumer Protection Fund shall be available for use by the Corporation Counsel for the payment of costs, expenses, and charges incurred in and reasonably related to

    (1)    the investigation, preparation, institution, and maintenance of actions under section 28-3909 and section 28-3905(i)(4),

    (2)    receiving or responding to consumer complaints, or

    (3)    consumer education activities.

(c)    All income and expenses of the Fund shall be audited annually by the Mayor and reported to the Council of the District of Columbia.

*Rationale:    This will enable consumer protection enforcement to be re-established within reasonable budgetary constraints, and will allow for a supplemental source of funding, similar to that used by OCC's Antitrust Unit. See 28-3902(h) (suspending since October, 1994 enforcement of this chapter by the Department of Consumer and Regulatory Affairs due to budget constraints); cf § 28-4516 (establishing District of Columbia Antitrust Fund).*

6