

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE H&R BLOCK, INC.                        MDL Docket No. 1786
EXPRESS IRA MARKETING
LITIGATION

MEMORANDUM IN SUPPORT
OF LYNN KOHAN'S MOTION TO VACATE
THE CONDITIONAL TRANSFER ORDER

### Introduction

This litigation should not be subject to transfer because such transfer would not operate for "the convenience of the parties and witnesses" and would not "promote the just and efficient conduct of such actions" as is required by 28 U.S.C. § 1407(a). Accordingly, Lynn Kohan respectfully requests that the Conditional Transfer Order be vacated insofar as it relates to her case.

### Statement of the Case

H&R Block, Inc. ("H&R Block") is the nation's largest tax preparation company, with approximately 10,000 offices in the District of Columbia and other jurisdictions. In a typical year, H&R Block helps file more than 15 million tax returns, mostly for middle- and low-income clients, representing more than 15% of the tax returns filed in the United States. In

addition to its tax services, H&R Block offers financial products to its clients, such as loans, mortgages, and warranties.

Since 2001, H&R Block has marketed an individual retirement account ("IRA") called the "Express IRA," representing it as a suitable retirement vehicle and as a "better way to save" offering "great rates." Unlike other IRAs which offer various investment options such as stocks, bonds and mutual funds, the Express IRA has only one investment option: an FDIC insured money market account. Such accounts typically pay an interest rate less than the rate of inflation. In addition to paying a merely nominal interest rate, the Express IRA charges high fees that are not adequately disclosed. As a result of the low interest rate and high fees, the Express IRA will, in most cases, actually shrink over time.

In May of 2006, Plaintiff Lynn Kohan ("Ms. Kohan" or "Plaintiff") brought an action in D.C. Superior Court on behalf of the General Public of Washington, D.C., alleging violation of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et. seq.* Plaintiff brought this case even though she herself did not open an H&R Block Express IRA account. This suit is not a class action, but is instead a "private attorney general" action brought under a unique provision of the CPPA that, by its plain language, allows a Plaintiff to act on behalf of the General Public of the District of Columbia. *See* D.C. Code § 28-3905(k)(1). This action was subsequently removed to the District Court by Defendants and Plaintiff's Motion to Remand is pending.

Plaintiff's complaint alleges, among other things, that in marketing Express IRA accounts to its customers, H&R Block: Failed to disclose the extent of the fees associated with the Express IRA; failed to adequately warn its customers that these fees would reduce their principal over

2

time unless they made large or repeated deposits; failed to adequately disclose penalties meant to discourage early withdrawals; and failed to provide its clients with adequate guidance in determining whether the Express IRA was a suitable retirement investment for them.

In addition to Plaintiff's suit, at least fifteen class action suits were brought against H&R Block which made similar allegations regarding H&R Block's deceptive marketing of the Express IRA program. Many of these suits have since been transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the Western District of Missouri for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407(a).[1] *See In re H&R Block, Inc. Express IRA Mktg. Litig.*, Docket No. 1786, 2006 U.S. Dist. LEXIS 57813 (J.P.M.L. Aug. 14, 2006). On August 30, 2006, Plaintiff's case, along with other potential tag-along actions, was the subject of a Conditional Transfer Order issued by the Judicial Panel on Multidistrict Litigation, which conditionally transferred the actions to the Western District of Missouri for pretrial proceedings. Ms. Kohan served notice of her opposition to this Conditional Transfer Order on September 12, 2006.

This memorandum is offered in support of Ms. Kohan's Motion to Vacate the Conditional Transfer Order on the ground that, as to her case, transfer will not be for "the convenience of the parties and witnesses" and will not "promote the just and efficient conduct of such actions" as is required by 28 U.S.C. § 1407(a).

### Argument

**I.    Standards for Section 1407(a) Transfer and Consolidation**

---

[1]    Note, however, that not all of the state court actions arising out of H&R Block's misleading marketing of the Express IRA have been removed from state court. *See Starks v. H&R Block, Inc.*, Cause No. 0622CC0029 (Mo. Cir. Ct. 2006).

3

28 U.S.C. § 1407(a) permits transfer and consolidation or coordination of cases for pretrial purposes when the cases "involv[e] one or more common questions of fact" and when such transfer will "be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Given that the overall purpose of the statute is to "achieve efficiencies in the pretrial process," the most important factor is whether transfer will result in the just and efficient conduct of the action. 17-112 Moore's Federal Practice § 112.04 (2006). Each group of cases proposed for multidistrict treatment is evaluated on its own facts. *See Manual for Complex Litigation*, Fourth § 20.131 at 220 (2004) ("Manual") (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort on the part of the parties, attorneys, witnesses, and courts. *Id.* In making its evaluation, the Panel must consider these objectives as well as the interests of all parties to the proceeding. *See In re Commonwealth Oil/Tesoro Petroleum Sec. Litig.*, 458 F. Supp. 225, 229 (J.P.M.L. 1978).

## II. Transfer of This Action Will Not Promote the Just and Efficient Conduct of This Action

Although common issues are shared between this case and the others that have been transferred to the Western District of Missouri for pretrial coordination, a number of differences also exist which show that transfer of this case will not promote the just and efficient conduct of *this* litigation.

### A. Action By the Panel On This Action Will Only Further Burden the Federal Courts

Plaintiff respectfully submits that this is the rare case where federal court jurisdiction is

4

so fundamentally lacking that any action by the Panel will only result in a further burden to the federal court system. As will be shown, the threshold issue of the Plaintiff's standing in federal court is so clearly at issue in this case that it appears almost beyond dispute that this case must be remanded to the D.C. Superior Court. As far as the federal case is concerned, *the dispositive issue* of remand is completely unique to this case – and is already *sub judice* before Judge Lamberth in the District of Columbia.[2] Accordingly, Plaintiff respectfully submits that any action by the Panel in transferring this action will only delay this case's inevitable return to the D.C. Superior Court and result in more work for the federal court system.

"Before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990). Resolution of this "threshold" issue involves assessing whether the plaintiff has "alleged such a personal stake in the outcome of the controversy" as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). To establish federal standing, the plaintiff must always have suffered a "distinct and palpable injury to himself" that can be redressed via judicial action. *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 929 (N.D. Cal 1992) (quoting *Warth*, 422 U.S. at 499); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In the present case, Plaintiff has not alleged that she opened an Express IRA Account.

---

[2]  *See* Plaintiff's Motion for Remand For Lack of Subject Matter Jurisdiction (Ex. A to Declaration of Tracy D. Rezvani in Support of Lynn Kohan's Motion to Vacate the Conditional Transfer Order ("Rezvani Dec.")); Defendant's Memorandum In Opposition to Plaintiff's Motion to Remand (Ex. B to Rezvani Dec.); Reply In Support of Plaintiff's Motion For Remand For Lack of Subject Matter Jurisdiction (Ex. C to Rezvani Dec.).

Accordingly, she asserts this D.C. cause of action – not on her own behalf – but on the behalf of the general public as is expressly allowed by statute. The CPPA provision at issue provides that:

> A person, whether acting for the interests of itself, its members, *or the general public*, may bring an action under this chapter in the Superior Court of the District of Columbia seeking relief from the use by any person of a trade practice in violation of a law of the District of Columbia and may recover or obtain the following remedies:
>
> (A) treble damages, or $ 1,500 per violation, whichever is greater, payable to the consumer;
>
> (B) reasonable attorney's fees;
>
> (C) punitive damages;
>
> (D) an injunction against the use of the unlawful trade practice;
>
> (E) in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or
>
> (F) any other relief which the court deems proper.

*See* D.C. Code §.3905(k)(1) (emphasis added). Importantly, by its plain language this provision does not require that the representative of the General Public be directly injured by the conduct to have a viable cause of action under the CPPA. *See id; see also Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 8 (D.D.C. 2002) (noting that the amendments to the CPPA "eliminates [the] requirements of injury in fact and causation").

Due to the fact that Ms. Kohan relies on the CPPA and does not allege that she herself was misled, this case is proper only in the D.C. Superior Court and is *completely improper in federal court*. *See Mortera v. North Am. Morg. Co.*, 172 F. Supp. 2d 1240, 1244 (N.D. Cal.

2001) (remanding to state court for lack of standing where plaintiff under an analogous California consumer protection statue was not a victim of the proscribed practice); *see also Boston Reed Co. v. Pitney Bowes, Inc.*, No. 02-01106, 2002 U.S. Dist. Lexis 11683 at * 22 (N.D. Cal. June 20, 2002) (distinguishing *Mortera* where the Plaintiff did allege injury to herself). Plaintiff's remand motion has been raised, briefed by both sides, and is currently under consideration by the D.C. District Court. Given that this crucial issue *is **completely unique to this action*** and has already been fully briefed in the district court, transfer of this action will only delay this case's seemingly inevitable return to D.C. Superior Court, require duplicative briefing of the issue, and result in inefficiency and delay.

### B. Important District of Columbia Policies Are At Issue in This Litigation

In addition to the above, important D.C. policy issues are at stake in this litigation that also weigh against transfer. As described above, the D.C. statute at issue is unique in that it allows private citizens to act as private attorneys general and sue on behalf of the General Public. *See* Sheila Scheuerman, *The Consumer Fraud Class Action: Reigning in Abuse by Requiring Plaintiffs to Allege Reliance as an Essential Element*, 43 Harv. J. on Legis. 1, 44 (2006). This provision was passed in specific response to enforcement shortfalls identified by the Antitrust, Trade Regulation and Consumer Affairs Section of the D.C. Bar resulting from the suspension of the D.C. Department of Consumer and Regulatory Affairs' (DCRA) authority to enforce the previous D.C. CPPA.[3]

---

[3] *See* District of Columbia Bar, *Consumer Protection in the District of Columbia Following Suspension of DCRA Enforcement of the Consumer Protection Procedures Act: Report with Recommendations*, at 10-11 (April 1999)(Ex. D to Rezvani Dec.)("DC Report"); Mara Verheyden-Hilliard, *Proposed Legislation*, Partnership for Civil Justice, Inc. at 3 (April 30,

As of yet, many important questions about this statue have not been resolved by any D.C. court. Questions exist about, among other things: the appropriate role and duties of the private attorney general; whether discovery of the private attorney general is permissible; the available remedies in private attorney general actions; the procedure that needs to be followed in any settlement; etc.

Even at the pre-trial stage, then, this case will ultimately raise novel and important issues about the CPPA in general, and the private attorney general provision in particular. Given the novelty of this statute – as well as the important policy considerations that it represents – such important questions of interpretation should not be left for resolution by a federal court residing in a foreign jurisdiction – because it is a fundamental principle that the public interest is "best served" by having a case decided by a court in the state whose laws govern the interests at stake. *See Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 35 (D.D.C. 2004); *see also O'Shea v. Intern'l Brotherhood of Teamsters*, No. 04-0207, 2005 U.S. Dist. LEXIS 3534, at *13 (D.D.C. March 2, 2005) (citing *Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311, 324 and stating "[o]bviously, a Maryland judge who is more informed about Maryland law is better equipped to interpret and apply Maryland common law.").

What's more, especially in a case like this where the pretrial issues are so novel and fraught with policy implications, these are particularly the type of questions that would be ripe for certification to the state's highest court. *See Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) ("[R]esort to [state court certification procedures] would seem particularly appropriate in view of the novelty of the question and the great unsettlement of Florida law. When federal

---

1999)(Ex. E to Rezvani Dec.).

judges in New York attempt to predict uncertain Florida law, they act . . . as 'outsiders' lacking the common exposure to local law which comes from sitting in the jurisdiction."). Given that the District of Missouri would also be an 'outsider' in its attempt to interpret the CPPA, this is yet another reason that this case should not be transferred to the Western District of Missouri.

### C. Fundamental Differences Between This Case and the Others Also Weigh Against Transfer

Finally, procedural differences exist between Plaintiff's case and the class cases that would counteract any efficiencies that would otherwise be gained through transfer. Unlike all the other cases filed against H&R Block as a result of their improper and misleading marketing of the Express IRA product, *this case is not a class action*. Accordingly, the myriad of rules dictated by Rule 23 of the Federal Rules of Civil Procedure which govern class actions in federal court will not be at issue in this case. *See* Fed. R. Civ. P. 23. Meanwhile, such rulings will be of primary importance in the class cases and will likely take up a substantial amount of the transferee court's time – especially in the pre-trial stage. Even this Panel, in its prior order in this case, cited the elimination of inconsistent pretrial rulings on the "issue of class certification" as one of the important efficiencies that would be gained by pre-trial transfer of the class cases under § 1407(a). *See In re H&R Block, Inc. Express IRA Marketing Litig.*, 2006 U.S. Dist. LEXIS 57813 at *3. Because this is not a class case, none of these efficiencies would be realized from the transfer of this case and, in fact, the requirement of deciding the myriad of class issues in the other cases would slow this case down.

Transfer and consolidation of the present case would therefore not "promote the just and efficient conduct of this action" because it would require that a relatively straightforward private

9

attorney general suit – a suit already on the verge of entering the discovery phase – be lumped together with over a dozen complex national and statewide class action suits. Unlike the present case, the consolidated class actions involve procedural hurdles, like the requirement of the appointment of lead counsel and lead plaintiff,[4] the filing of a consolidated amended complaint,[5] the filing and adjudication of a motion for class certification, the judicial approval of any settlement, etc., that will greatly prolong the pre-trial process in those suits and greatly increase the expense and duration of litigation and prejudice the Plaintiff. Plaintiff wishes to get started prosecuting this case right away, and this will not happen if it is sent halfway across the country only to be sent back. The fact that these actions are therefore at different stages of the litigation process should weigh against transfer. *See In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980); *In re "Lite Beer" Trademark Litig.*, 437 F. Supp. 754, 755 (J.P.M.L. 1977).

Given the differing procedural profiles of the class cases as compared to Plaintiff's case,

---

[4] Currently, no less than three motions have been filed in the federal cases that are now part of the MDL docket in Missouri seeking appointment as lead counsel and plaintiff. This leadership fight will likely add months to the case as it will require the court's time and attention before a leadership structure is appointed, a consolidated amended complaint filed, motions to dismiss serve and briefed, and only then discovery begun. By that time, Plaintiff here could have completed merits discovery and moved on to summary judgment motions.

[5] As was raised with Judge Lamberth, there are analogous decisions from California based on their (now vacated) private attorney general statute that would block any consolidation of this action with the class cases in one action. For example, in *Parrish v. Cingular Wireless*, 129 Cal. App. 4th 601 (Cal. App. 1st 2005), the motions at issue were analyzed against the consolidated class actions separate and apart from the two private attorney general complaints-which were not even consolidated together. *See id.* at 605-8, 617. This action can be loosely coordinated with the class actions by agreement of counsel without the necessity of transfer to a foreign jurisdiction. In other words, this action could never be subsumed by the consolidated amended complaint that would have to be filed in the transferee court.

as well as the concomitant fact that Plaintiff's case is significantly closer to discovery than the class cases, methods other than transfer should be utilized to facilitate efficiency if this case is to remain in federal court. Specifically, Plaintiff would be willing to make any of her discovery that is relevant to the class cases available to them and otherwise cooperate with these actions as would be beneficial. *See In re Cable Tie Patent Litig.*, 487 F. Supp. at 1354. Such treatment would serve the ideal of efficiency while at the same time avoiding the tremendous inconvenience that would otherwise result from transferring a non-class case to a faraway District to be coordinated with disparate class cases.

## Conclusion

Transfer of this litigation to the Western District of Missouri for pretrial proceedings will not "promote the just and efficient conduct of such actions" as is required by 28 U.S.C. § 1407(a). As described above, Plaintiff has filed suit under a unique state law against Defendants for the misleading marketing of their Express IRA product. Plaintiff does not have standing to bring – and the court does not have jurisdiction to hear – this case in federal court. Accordingly, transfer of this case to the Western District of Missouri will only delay this case's inevitable return to D.C. Superior Court and should therefore be avoided.

Additionally, even if this case is appropriate in federal court, important D.C. policies are at issue and counsel against transfer. Finally, transfer makes little sense in the present case because it would require that a relatively simple case – one that is quickly approaching the discovery phase – be consolidated with more than a dozen procedurally complex class actions under Rule 23. The prejudice to plaintiff that would result from her having to wait out the myriad of class related questions that will inevitably arise in the class cases counterbalance any

efficiency gains that could otherwise result through the elimination of duplicative discovery.

Accordingly, Lynn Kohan respectfully requests that the Conditional Transfer Order be vacated insofar as it relates to her case.

Dated: September 28, 2006

Respectfully submitted,

_____
Tracy D. Rezvani, Esq.
Donald J. Enright, Esq.
Stan M. Doerrer, Esq.
FINKELSTEIN, THOMPSON
& LOUGHRAN
1050 30th Street, NW
Washington, DC 20007
Office Tel: (202) 337-8000
Office Fax: (202) 337-8090

*Attorneys For Plaintiff Lynn Kohan*