RECEIVED
CLERK'S OFFICE

7TH SEP 28 P 3: 17

JUDICIAL PANEL ON

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE H&R BLOCK, INC.
EXPRESS IRA MARKETING
LITIGATION

MDL Docket No. 1786

## DECLARATION OF TRACY D. REZVANI
## IN SUPPORT OF LYNN KOHAN'S MOTION TO VACATE
## THE CONDITIONAL TRANSFER ORDER

I, Tracy D. Rezvani, an attorney duly admitted to practice before this Court, hereby

declare and state:

1.    I am a partner of Finkelstein Thompson & Loughran, 1050 30th Street NW,

Washington, DC 20007, attorneys for Plaintiff.

2.    I submit this declaration in support of Lynn Kohan's Motion to Vacate the

Conditional Transfer Order, and in order to put before the Court the exhibits which are described

and identified below.

3.    Attached hereto as Exhibit A is a true and correct copy of Plaintiff's Motion for

Remand For Lack of Subject Matter Jurisdiction.

4.    Attached hereto as Exhibit B is a true and correct copy of Defendant's

Memorandum In Opposition to Plaintiff's Motion to Remand.

5.    Attached hereto as Exhibit C is a true and correct copy of Reply In Support of

Plaintiff's Motion For Remand For Lack of Subject Matter Jurisdiction.

6.    Attached hereto as Exhibit D is a true and correct copy of District of Columbia

Bar, *Consumer Protection in the District of Columbia Following Suspension of DCRA*

*Enforcement of the Consumer Protection Procedures Act: Report with Recommendations* (April

1999).

7.    Attached hereto as Exhibit E is a true and correct copy of Mara Verheyden-

Hilliard, *Proposed Legislation*, Partnership for Civil Justice, Inc. (April 30, 1999).

Dated: September 28, 2006
      Washington, DC

                            Tracy D. Rezvani

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LYNN KOHAN,                                 )<br>                                                         )<br>           Plaintiff,                     )<br>     v.                                           )<br>                                                         )<br>H&R BLOCK, INC. and H&R BLOCK  )<br>FINANCIALADVISORS, INC.,                )<br>                                                         )<br>           Defendants.                  )<br>                                                         ) | Civil Action No. 06-1066 (RCL) |

## PLAINTIFF'S MOTION FOR REMAND
## FOR LACK OF SUBJECT MATTER JURISDICTION

For the reasons stated in the accompanying Memorandum of Points and

Authorities in Support of Plaintiff's Motion to Remand for Lack of Subject Matter

Jurisdiction, Plaintiff respectfully moves, pursuant to 28 U.S.C. § 1447(c), for an order

remanding this case to the Superior Court for the District of Columbia.

Dated: June 22, 2006               **FINKELSTEIN, THOMPSON & LOUGHRAN**

                                  Tracy D. Rezvani  (DC Bar #464293)
                                  Donald J. Enright (DC Bar #463007)
                                  Hilary Ratway   (DC Bar #481465)
                                  Stan M. Doerrer
                                  The Duvall Foundry
                                  1050 30th Street, NW
                                  Washington, DC  20007
                                  (202) 337-8000
                                  (202) 337-8090 fax

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LYNN KOHAN,                )
                              )
           Plaintiff,      )    Civil Action No. 06-1066 (RCL)
      v.                 )
                              )
H&R BLOCK, INC. and H&R BLOCK   )
FINANCIALADVISORS, INC.,       )
                              )
          Defendants.    )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND
## FOR LACK OF SUBJECT MATTER JURISDICTION

For the reasons set forth below, Plaintiffs hereby request, pursuant to 28 U.S.C. §

1447(c), that this Court enter an order remanding this case to the Superior Court of the

District of Columbia.

### BACKGROUND

On May 8, 2006, Plaintiff Lynn Kohan ("Plaintiff") filed suit against H&R Block,

Inc. and H&R Block Financial Advisors, Inc. (collectively, "H&R Block" or

"Defendants") in the Superior Court of the District of Columbia, asserting a single claim

under the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C.

Code § 28-3904. Plaintiff asserts her claim on behalf of the general public of the District

of Columbia pursuant to the private attorney general provision of the CPPA, D.C. Code §

28-3905(k)(1).

Since 2001, H&R Block has marketed an individual retirement account ("IRA")

called the "Express IRA," representing it as a suitable retirement vehicle and as a "better

way to save" with "great rates." However, unlike many other IRAs which offer various

investment options such as stocks, bonds, and mutual funds, the Express IRA has only one investment option: an FDIC insured money market account. Such accounts typically pay an interest rate less than the rate of inflation. In addition to paying a nominal interest rate, the Express IRA charges high fees that are not adequately disclosed. As a result of the low interest rate and high fees, the Express IRA is a retirement account that will actually shrink over time.

In marketing the Express IRA, H&R Block has violated the CPPA by, *inter alia*, failing to disclose the full extent of the fees associated with the Express IRA; failing to adequately warn its customers that these fees will reduce their principal over time unless they make large or repeated deposits; failing to adequately disclose penalties meant to discourage early withdrawals; and failing to provide its clients with adequate guidance in determining whether the Express IRA is a suitable retirement investment.

On behalf of the general public, Plaintiff seeks to enjoin H&R Block from its misleading marketing practices. Plaintiff also seeks treble or statutory damages of $1,500 per violation, *i.e.* per Express IRA sold, whichever is greater, for purchasers of Express IRAs. Finally, Plaintiff seeks her costs of prosecuting this action, including attorneys' fees, and any other such relief as the court may deem just and proper.

On June 9, 2006, Defendants removed Plaintiff's CPPA case to this Court on the basis of diversity jurisdiction. H&R Block argues that removal is proper because: (1) they "believe in good faith" that the total number of Express IRAs established in the District of Columbia is large enough to result in a total statutory damages claim of well over $75,000; (2) they "believe in good faith" that the cost of complying with an injunction would exceed $75,000; and (3) "Plaintiff's legal fees can be expected to

2

exceed \$75,000." Notice of Removal at 3-4. Defendants present no affidavit or other evidence to support their "good faith belief" that jurisdiction is appropriate.

Plaintiff does not dispute that the parties are citizens of different states. However, Plaintiff does dispute Defendants' assertion that the amount in controversy requirement is satisfied. As discussed in more detail below, because Defendants have failed to satisfy the heavy burden of demonstrating that the amount in controversy exceeds \$75,000, remand is appropriate.

## LEGAL ARGUMENT

## I.    DEFENDANTS BEAR A HEAVY BURDEN OF PROVING THAT THIS COURT HAS JURISDICTION

Federal courts are courts of limited jurisdiction and therefore the law presumes that "a cause lies outside of [the court's] limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). A defendant may properly remove to federal court an action brought in a state court when original subject matter jurisdiction exists in the form of diversity. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Diversity jurisdiction exists when the action involves citizens of different states and the amount in controversy exceeds \$ 75,000.00 per plaintiff, exclusive of interest and costs. 28 U.S.C. § 1332(a); *Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990).

When a plaintiff moves for remand, the defendant bears the burden of proving federal jurisdiction. *Kokkonen*, 511 U.S. at 377; *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Nat'l Org. for Women v. Mut. of Omaha Ins. Co.*, 612 F. Supp. 100, 101 (D.D.C. 1985) ("*NOW*"). Jurisdiction must be established in the notice of removal, not some later pleading or filing. *Coco-Cola Bottling of Emporia, Inc. v. South Beach*

3

*Beverage Co., Inc.,* 198 F. Supp.2d 1280, 1283 (D. Kan. 2002); *Laughlin v. Kmart Corp.,*

50 F.3d 871, 873 (10th Cir. 1995). Because the removal statute is to be strictly

construed, *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 107-09 (1941); *Williams*

*v. Howard Univ.,* 984 F. Supp. 27, 29 (D.D.C. 1997), courts must resolve any doubt

concerning the propriety of removal in favor of remand. *Walker v. Waller,* 267 F.

Supp.2d 31, 32 (D.D.C. 2003); *Univ. of S. Ala.,* 168 F.3d at 411; *Nwachukwu v. Karl,* 223

F. Supp. 2d 60, 66 (D.D.C. 2002).

As discussed in more detail below, Defendants' Notice of Removal fails to satisfy

the heavy burden of proving that the amount in controversy is sufficient to confer

jurisdiction upon this Court.

## II.    DEFENDANTS HAVE NOT PROVEN THAT THE AMOUNT IN CONTROVERSY IS SUFFICIENT TO CONFER JURISDICTION UPON THIS COURT

### A.    The Anti-Aggregation Rule Applicable To Class Actions Similarly Prohibits The Aggregation Of Damages In Private Attorney General Actions

The well-settled rule in class actions specifies that the claims of multiple class

members may not be aggregated for purposes of determining the amount in controversy

unless several plaintiffs unite to enforce a single title or right in which they have a

common and undivided interest. *Exxon Mobil Corp. v. Allapattah Services, Inc.,* No. 04-

70, 2005 U.S. LEXIS 5015, *8 (2005); *Zahn v. International Paper Co.,* 414 U.S. 291,

301 (1973); *Snyder v. Harris,* 394 U.S. 332, 335 (1969); *Williams v. Purdue Pharma Co.,*

No. 02-0556, 2003 U.S. Dist. LEXIS 19268, *13 (D.D.C. Feb, 27, 2003); *Aetna U.S.*

*Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 48 F. Supp.2d 37, 40-41 (D.D.C. 1999).

In *Reigner v. Ingersoll-Rand Co.,* No. 04-1769, slip op. at 2 (D.D.C. Nov. 23,

Case 1:06-cv-01066-RCL    Document 7-1    Filed 06/22/2006    Page 6 of 14

2004) (Exhibit 1 to Declaration of Hilary K. Ratway in Support of Plaintiff's Motion to Remand), this court recently addressed the question whether a plaintiff's claims for damages in a private attorney general action are more like those of individual plaintiffs in a class action, which can not be aggregated for purposes of achieving the jurisdictional amount needed for removal, or more like a claim for a common and undivided right, which can be aggregated.

As in the present case, the plaintiff in *Reigner* brought suit under the private attorney general provision of the CPPA seeking actual damages to consumers, treble damages or $1,500 per violation of the CPPA whichever was greater, and "such additional relief in representative actions 'as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice." *Reigner*, slip op. at 4. The court concluded that the requested damages were akin to those sought by individual consumers, not a joint or common right in a common fund, and therefore were not subject to aggregation. *Id.*

Defendants recognize the rule that damages cannot be aggregated in class actions, but claim that damages can be aggregated in private attorney general actions and cite *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 928 (N.D. Cal. 1992).[1] In *Mangini*, the court stated the broad proposition that there was no authority indicating that

---

[1]    In *Mangini*, the plaintiff brought suit on behalf of the California public in a California state court pursuant to the private attorney general provision of the California Business and Professions Code § 17204. Section 17204, upon which D.C. Code § 28-3905(k)(1) is modeled, provides: "Action for injunction pursuant to this chapter may be prosecuted by the Attorney General or any district attorney or by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney of a city, or city and county, having a population in excess of 750,000, and with the consent of the district attorney, by a city prosecutor in any city or city and county having a full-time city prosecutor, or with the consent of the district attorney, by a city attorney in any city and county in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association *or by any person acting for the interests of itself, its members or the general public*." (emphasis added).

5

courts should treat a private attorney general action as a class action for purposes of

determining whether the amount in controversy had been satisfied and the court therefore

refused to do so. 793 F. Supp. at 928.

Defendants' reliance on *Mangini*, however, is misplaced. Numerous courts have

since rejected *Mangini's* distinction between private attorney general actions and class

actions. *See, e.g., Ecker v. Ford Motor Co.,* No. 02-6833, 2002 U.S. Dist. LEXIS 26229,

*8-11 (C.D. Cal. Nov. 12, 2002); *Boston Reed Co. v. Pitney Bowes, Inc.,* No. 02-1106,

2002 U.S. Dist. LEXIS 11683, *12-13 (N.D. Cal. June 20, 2002); *Surber v. Reliance

Nat'l Indem. Co.,* 110 F. Supp.2d 1227, 1232-33 (N.D. Cal. 2000); *Phipps v. Praxair,

Inc.,* No. 99-1848, 1999 U.S. Dist. LEXIS 18745, *14-15 (S.D. Cal. Nov. 12, 1999).

In *Boston Reed*, the Northern District of California expressly acknowledged its

change in reasoning since its decision in *Mangini*, explaining:

> The Court finds the reasoning in Phipps and Surber to be
> persuasive, especially since the California courts
> themselves have recently recognized the representative
> nature of a § 17204 claim. [footnote omitted] Therefore,
> because the Court finds that a UCL private attorney general
> action is a collection of "separate and distinct" claims, the
> claims may not be aggregated to reach the amount in
> controversy and each plaintiff's claim must exceed the
> jurisdictional amount for this court's subject matter
> jurisdiction to be invoked.

2002 U.S. Dist. LEXIS 11683 at *15.

Treating a representative action differently from a class action would essentially

create federal question jurisdiction over any all CPPA claims between diverse parties, no

matter how small the injury to the representative plaintiff. Such a result is untenable as

the CPPA is not a federal cause of action and this Court is a court of limited jurisdiction.

*Kokkonen,* 511 U.S. at 377. Because the *Mangini* rule on aggregation has been

6

repeatedly rejected and because the damages requested by Plaintiff herein are identical to those requested by the plaintiff in *Reigner*, the court should refuse to aggregate the requested damages and should remand the case to Superior Court for the District of Columbia.

Even assuming, *arguendo*, that damages could be aggregated, Defendants have not satisfied their burden of demonstrating the amount in controversy exceeds $75,000. Defendants claim that because Plaintiff seeks at least $1,500 in statutory damages for each Express IRA established in the District of Columbia, the amount in controversy would amount to $75,000 even if only 50 Express IRAs were established here. Notice of Removal at 3. Yet, Defendants provide no evidence, such as an affidavit, in support of their claim that 50 Express IRAs were in fact established here.

Because jurisdiction must be established in the Notice of Removal and not some later pleading or filing, *Coco-Cola*, 198 F. Supp.2d at 1283; *Laughlin*, 50 F.3d at 873, Defendants' assertion of federal jurisdiction is premised solely on conclusory allegations and "good faith" beliefs that the amount in controversy exceeds $75,000. Such allegations and beliefs are not sufficient to confer jurisdiction upon this Court. *See, e.g., Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp.2d 34, 42 (D.D.C. 2003) (the party asserting federal jurisdiction must allege specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations); *Valdez v. Allstate Ins. Co.*, 372 F.2d 1115, 1117 (9th Cir. 2004) (removal petition that averred "upon information and belief" that the amount in controversy exceeded $75,000 was insufficient); *Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992) (holding that a conclusory allegation "neither overcomes the 'strong presumption' against removal jurisdiction, nor satisfies [the defendant's]

7

burden of setting forth, in the removal petition itself, the underlying facts supporting its assertion that the amount in controversy exceeds" the requirement). As such, remand is appropriate.

**B.     The Value Of Injunctive Relief May Not Be Measured From The Defendants' Perspective To Satisfy The Amount In Controversy**

Like the rule prohibiting the aggregation of damages, it is well-settled that in class actions, courts should not consider the cost to the defendant in complying with an injunction for purposes of determining the amount in controversy. *NOW*, 612 F. Supp. at 108 (citing *Snow v. Ford Motor Co.*, 561 F.2d 787 (9th Cir. 1977); *Lonquist v. J.C. Penney Co.*, 421 F.2d 597 (10th Cir. 1970)). The courts that have adopted this rule have reasoned that viewing the cost of complying with an injunction from the defendant's point of view is simply another way of aggregating damages. *Id.* Because, as discussed above, the rule against aggregating damages applies equally to private attorney general actions, measuring the cost of injunctive relief from the defendant's viewpoint is similarly prohibited in private attorney general actions. *Boston Reed*, 2002 U.S. Dist. LEXIS 11683 at *17; *Surber*, 110 F. Supp.2d at 1233-34.

Because Defendants do not claim that the value of injunctive relief from Plaintiff's perspective meets the amount in controversy requirement, Defendants have failed to satisfy their burden of proving jurisdiction.

**C.     Attorneys' Fees May Not Be Aggregated To Satisfy The Amount In Controversy**

The general rule is that attorneys' fees may be considered part of the amount in controversy if they are allowed for by statute or contract. *See, e.g., Brand v. Gov. Employees Ins. Co.*, No. 04-1133, 2005 WL 3201322, *6 (D.D.C. Nov. 29, 2005); *Walker*

8

*v. Waller*, 267 F. Supp.2d 31, 33 (D.D.C. 2003); *NOW*, 612 F. Supp. at 108. While the CPPA allows for the recovery of reasonable attorneys' fees, it does not mandate the recovery of attorneys' fees. Therefore, recovery of attorneys' fees in this case is speculative and should not serve as a basis for federal jurisdiction.

Moreover, even when attorneys' fees are recoverable by statute or contract, they cannot be aggregated to satisfy the amount in controversy and must instead be allocated on a *pro rata* basis. *NOW*, 612 F. Supp. at 108; *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1293 (10th Cir. 2001); *H & D Tire and Automotive-Hardware, Inc. v. Pitney Bowes, Inc.*, 227 F.3d 326, 330-31 (5th Cir. 2000); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1079 (11th Cir. 2000); *Darden v. Ford Consumer Fin Co.*, 200 F.3d 753, 758 (11th Cir. 2000); *Goldberg v. PCP Int'l, Inc.*, 678 F.2d 1365 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Boston Reed*, 2002 U.S. Dist. LEXIS 11683 at *20; *Phipps*, 1999 U.S. Dist. LEXIS 18745 at *11.

Defendants have not proven that Plaintiff's *pro rata* share of any possible attorneys' fees would exceed $75,000. Defendants make only conclusory statements regarding attorneys' fees in this case—"In light of the extensive litigation envisioned by Plaintiff's complaint and the expansive nature of the monetary and injunctive relief sought, Plaintiff's legal fees can be *expected* to exceed $75,000"—and cite to *Your Girl Friday, LLC v. MGF Holding, Inc.*, No. 06-0385, 2006 WL 1028959, *2 (D.D.C. April 18, 2006).[2] Notice of Removal at 4 (emphasis added). As discussed above, conclusory

---

[2]    Defendants also cite *Stevenson v. Severs*, 158 F.3d 1332, 1334 (D.C. Cir. 1998), which is wholly inapposite. After discovering a problem with a trust set up for her children, Stevenson sued her attorney seeking recovery of gift taxes, estate taxes and the attorneys' fees. 158 F.3d at 1333. The district court granted summary judgment and Stevenson appealed. *Id.* On appeal, summary judgment was upheld on the claims for gift taxes and estate taxes, but reversed on the claim for attorneys' fees. *Id.* The court then concluded that since the district court had original jurisdiction over Stevenson's claims since the amount in controversy from the combined claims for gift taxes, estate taxes, and attorneys' fees exceeded $75,000, it

statements are an insufficient basis for jurisdiction. *See, e.g., Atlantigas Corp.*, 290 F. Supp.2d at 42; *Valdez*, 372 F.2d at 1117; *Gaus*, 980 F.2d at 567.

Moreover, *Your Girl Friday*, upon which Defendants rely, actually *supports* remand in this case.[3] Therein, the defendant argued that the amount in controversy was satisfied because the "plaintiff's attorney 'may bill out at as much as $400.00 per hour' and thus 'in order to accrue $25,000 in attorney's fees, [the plaintiff's] counsel would only need to expend some 75 hours of work.'" 2006 WL 1028959 at *2. The court concluded that the defendant's "conjecture regarding the possible amount of fees is inadequate to support an assertion of diversity jurisdiction." *Id.*

In *Surber*, the court similarly concluded that the defendant's conclusory statement that the requested attorneys' fees satisfied the amount in controversy was insufficient:

> Defendant has not estimated the amount of time that the case will require, nor has it revealed plaintiff's counsel's hourly billing rate. Rather than proffer any evidence on this issue, defendant's brief summarily states that plaintiff's Brandt fees "may well, in and of themselves, exceed the jurisdictional minimum." This bald statement, unsupported by any evidence, does not suffice to create subject matter jurisdiction.

110 F. Supp.2d at 1232. The same conclusion should be reached here.

Even assuming, *arguendo*, that Plaintiff's attorneys' fees exceeded $75,000, jurisdictional principles militate against allowing attorney fees to satisfy the amount in controversy because the recovery of attorney fees will nearly always be collateral to a substantive matter in controversy. *Srour v. Barnes*, 670 F. Supp.18, 22 (D.D.C. 1987).

---

was within the district court's discretion to exercise supplemental jurisdiction over the $25,000 claim for attorneys fees on remand. 158 F.3d at 1334. This case does not address whether attorneys' fees are properly included in the amount in controversy when they are not the subject of dispute in the case. Thus, this case in no way supports remand in the present case.

[3]     The complaint sought damages of $50,000, thus the defendant argued that the inclusion of $25,000 in attorneys' fees would satisfy the amount in controversy. *Your Girl Friday*, 2006 WL 1028959 at *2.

"[A]s a policy matter, allowing attorney fees to constitute the matter in controversy

would hinge federal jurisdiction on the fee schedules of lawyers instead of the weight of

the substantive issue before the court." *Id.* In other words, allowing attorneys fees to

satisfy the amount in controversy would confer federal jurisdiction on every mass action

under the CPPA. Such a result is untenable.

Because Plaintiff's recovery of attorneys' fees is speculative and Defendants'

allegations regarding the amount of attorneys' fees are conclusory, Defendants have

failed to satisfy their burden of proving jurisdiction and this Court should remand the

case to the Superior Court for the District of Columbia.

## III. PLAINTIFF ASSERTS A STATE CAUSE OF ACTION WHICH HAS YET TO BE INTERPRETED BY THE DISTRICT OF COLUMBIA COURT OF APPEALS

Plaintiff's complaint contains no federal cause of action and fails to meet the

amount in controversy requirement for diversity jurisdiction. Plaintiff asserts a single

cause of action under the attorney general provision of the CPPA, which has yet to be

interpreted by the District of Columbia Court of Appeals. Because the interpretation of a

state statute is better left to the state courts, the Court should remand this case to the

Superior Court for the District of Columbia. *See Smith v. Gutter Covers of Maryland &*

*Virginia*, No. 04-1974, 2005 U.S. Dist LEXIS 38664, *12 (D.D.C. Aug. 4, 2005)

(remanding case brought under the home solicitation provision of the CPPA because it

had not yet been construed by the District of Columbia courts).

As the court explained in *Smith*, "both judicial economy and this court's

'reluctance to retain pendent jurisdiction over a question for which state jurisprudence

gives inadequate guidance,' ... support remand." 2005 U.S. Dist LEXIS 38664 at *12

(quoting *Vigilant Ins. Co., v. EEMAX, Inc.*, 362 F. Supp.2d 219, 224 (D.D.C. 2005);

*Women Prisoners of District of Columbia Dep't of Corr. v. District of Columbia*, 320

U.S. App. D.C. 247, 93 F.3d 910, 922 (D.C. Cir. 1996)). Accordingly, the law and

analysis governing this action should be determined by the state court system and not a

federal court sitting in diversity.

## CONCLUSION

Because Defendants have failed to satisfy the heavy burden of demonstrating that

the amount in controversy exceeds $75,000 and because interpretation of the attorney

general provision of the CPPA is better left to the District of Columbia courts, Plaintiff's

Motion to Remand for Lack of Subject Matter Jurisdiction should be granted, and this

case should be remanded to the Superior Court for the District of Columbia.

Dated:  June 22, 2006                    **FINKELSTEIN, THOMPSON & LOUGHRAN**

Tracy D. Rezvani  (DC Bar #464293)
Donald J. Enright  (DC Bar #463007)
Hilary Ratway    (DC Bar #481465)
Stan M. Doerrer
The Duvall Foundry
1050 30th Street, NW
Washington, DC  20007
(202) 337-8000
(202) 337-8090 fax

12

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LYNN KOHAN,                        )
                                  )
                Plaintiff,        )        Civil Action No. 06-1066 (RCL)
        v.                        )
                                  )
H&R BLOCK, INC. and H&R BLOCK     )
FINANCIALADVISORS, INC.,          )
                                  )
                Defendants.       )
                                  )

### CERTIFICATE OF SERVICE

The undersigned certifies that on this 22 day of June, 2006, true and correct copies of Plaintiff's Motion for Remand for Lack of Subject Matter Jurisdiction, Memorandum of Points and Authorities in Support of Plaintiff's Motion for Remand for Lack of Subject Matter Jurisdiction, and Declaration of Hilary K. Ratway in Support of Plaintiff's Motion for Remand for Lack of Subject Matter Jurisdiction was served via **facsimile and first class mail** upon:

| | |
|---|---|
| Paul M. Smith<br>Ginger D. Anders<br>JENNER & BLOCK LLP<br>601 Thirteenth Street, NW<br>Suite 1200 South<br>Washington, DC 20005<br>Tel: 202-639-6000<br>Fax: 202-639-6066 | Anton R. Valukas<br>Matthew M. Neurmeier<br>Richard P. Steinken<br>Molly J. Moran<br>JENNER & BLOCK LLP<br>One IBM Plaza<br>Chicago, IL 60611<br>Tel: 312-222-9350<br>Fax: 312-527-0484 |

Sandy Irwin

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LYNN KOHAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:06 CV 01066 (RCL) |
| | ) |
| H&R BLOCK, INC. and | ) |
| H&R BLOCK FINANCIAL ADVISORS, INC. | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Plaintiff Lynn Kohan has moved to remand this suit to the Superior Court of the District of Columbia on the ground that diversity jurisdiction does not exist because the amount in controversy requirement is not satisfied. However, because Plaintiff chose to file her lawsuit as an individual rather than class action, the rule against aggregation on which Plaintiff relies does not apply. As a result, the amount in controversy requirement is easily met, diversity jurisdiction plainly exists, and the Court should deny Plaintiff's motion to remand.

### BACKGROUND

Plaintiff brought this suit in the Superior Court of the District of Columbia on behalf of the general public of the District of Columbia, alleging that Defendants violated the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*, through deception and misrepresentations in connection with the marketing and sale of a qualified, federally-insured cash deposit individual retirement account called the "Express IRA" ("XIRA"). Plaintiff's factual allegations mirror those made by the Attorney General of New York in a state court action filed on March 15, 2006, as well as those made in 15 XIRA class actions

subsequently filed in various district courts, all but one of which are now pending in the Western District of Missouri.[1]

Plaintiff alleges that Defendants violated section 28-3904's prohibition on deceptive trade practices when they marketed the Express IRA to H&R Block customers, but failed to fully disclose the fees and tax penalties associated with the XIRA and to adequately warn customers that the fees and penalties could result in the reduction of principal over time. Compl. ¶¶ 2-3, 61-62. Plaintiff contends that Defendants engaged in this conduct in the District of Columbia so there is "reason to believe that Defendants have caused, and will continue to cause damage and adverse effects to residents of this District." *Id.* ¶ 10. Plaintiff does not allege that she invested in an XIRA or was injured by Defendants' conduct, rather she brings this suit "for the benefit of the General Public." *Id.* As a remedy, Plaintiff seeks an injunction against "Defendants' conduct found to be in violation of the [CPPA]," *id.* ¶ (b); an order "granting Plaintiff and the General Public of the District of Columbia treble damages or statutory damages in the amount of \$1,500 [per violation], whichever is greater," *id.* ¶ (c); and an order "granting Plaintiff her costs of prosecuting this action, including attorneys' fees, experts' fees and costs together with interest," *id.* ¶ (d).

Defendants removed this action to this Court on June 9, 2006, pursuant to 28 U.S.C. §§ 1441 and 1332, on the grounds that this Court has original jurisdiction over this action because the parties are citizens of different states and the amount in controversy exceeds \$75,000. *See* Defendants' Notice of Removal ("Notice") ¶ 3. Plaintiff is a resident of the

---

[1] Briefing on Defendants' motion to transfer *Perkins v. H&R Block, Inc.*, No. 06-317-GPM (S.D. Ill.) was completed on June 5, 2006. Since Defendants removed the present action, two new XIRA class actions have been filed in the Eastern District of Michigan and one in the Southern District of Florida. Defendants intend to seek transfer of those actions to the Western District of Missouri.

District of Columbia, while Defendant H&R Block, Inc., is incorporated in Missouri with its headquarters in Kansas City, Missouri, and Defendant H&R Block Financial Advisors, Inc., is incorporated in Michigan with its headquarters in Detroit, Michigan. *See* Notice ¶ 4; Compl. ¶ 8. Defendants alleged that the amount in controversy requirement is satisfied because the costs to Defendants of complying with the injunction sought by Plaintiff, the total amount of statutory damages sought in the Complaint, and the amount of attorney's fees, independently and in combination, amount to well over $75,000. *See* Notice ¶¶ 5-8.

On June 22, 2006, Plaintiff moved to remand this case to the Superior Court. Although conceding that complete diversity of citizenship exists, Plaintiff disputes that the amount at stake meets the $75,000 jurisdictional requirement specified in section 1332(a). Because the assertion of jurisdiction in this Court is supported by the facts and well-reasoned authority, the motion to remand should be denied.

## ARGUMENT

Plaintiff Kohan's invocation of the substantial and far-reaching remedies provided by the CPPA against Defendants cause the $75,000 amount in controversy requirement to be easily satisfied. As established in Defendants' Notice of Removal, the following remedies sought by Plaintiff, both individually and combined, easily will exceed $75,000: (1) the costs of complying with any injunctive relief obtained by Plaintiff, measured from Defendants' perspective; (2) the total amount of statutory damages sought by Plaintiff; and (3) the amount of attorney's fees that Plaintiff seeks and potentially will be awarded pursuant to the CPPA. Therefore, this Court should deny Plaintiff's motion to remand.

Plaintiff's arguments in favor of remand primarily depend on her characterization of this lawsuit as a class action. *See* Pl's. Mem. at 4. With this characterization, Plaintiff argues that

3

the claims of multiple plaintiffs cannot be aggregated for purposes of determining the amount in controversy, *see Snyder v. Harris*, 394 U.S. 332 (1969), and that Defendants must establish that the amount at stake here for at least one plaintiff individually exceeds $75,000. Under Plaintiff's theory, the total cost of this litigation, measured in terms of the injunction sought by Plaintiff, the amount of statutory damages sought, and the potential recovery of attorneys' fees, cannot be used to satisfy section 1332's jurisdictional amount requirement.

Plaintiff's anti-aggregation arguments, however, rest on a fundamental misconception of the nature of the lawsuit that Plaintiff herself decided to bring. While invoking statutory authorization to assert the interests of the general public as a whole, Plaintiff chose to file this lawsuit as an individual action involving only one Plaintiff, and not as a class action or other multiple plaintiff suit, which also are authorized by the statute. As a result, there are no individual claims by multiple plaintiffs to aggregate, and the rule against aggregation on which Plaintiff relies so heavily is inapplicable here. In the absence of the rule against aggregation, Defendants' allegations regarding the amounts in controversy for the primary categories of relief sought by Plaintiff are substantial enough to satisfy the jurisdictional amount requirement.

## I.   THE LEGAL STANDARD

Removal is proper where the federal court would have had original jurisdiction over the plaintiff's complaint had that complaint been initially filed in federal court.   *See* 28 U.S.C. § 1441(a). Where original federal jurisdiction is premised on diversity of citizenship, and the existence of jurisdiction turns on whether the amount in controversy is sufficient to satisfy the jurisdictional requirement set forth in section 1332(a), the court should uphold jurisdiction unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Naegele v.*

4

*Albers*, 355 F. Supp. 2d 129, 133 (D.D.C. 2005) ("[I]t must appear to a legal certainty that the claim is for less than the jurisdictional amount."); *General Electric Capitol Corp. v. Limousines Unlimited LLC*, No. CV-04-976 (RCL), 2005 WL 3276279, at *1 (D.D.C. Aug. 2, 2005) (same). Thus, although the party invoking federal jurisdiction bears the burden of establishing that jurisdiction, where the existence of jurisdiction turns on the amount in controversy, "this burden is not a heavy one." *Ball v. Hershey Foods Corp.*, 842 F. Supp. 44, 47 (D. Conn. 1993); *see also Martin v. Gibson*, 723 F.2d 989, 991-92 (D.C. Cir. 1983) (the *St. Paul Mercury* standard requiring legal certainty that the amount-in-controversy requirement will not be fulfilled is "an exacting one").

## II.    THE PRESENT SUIT IS AN INDIVIDUAL PRIVATE ATTORNEY GENERAL ACTION, NOT A CLASS ACTION OR MULTI-PLAINTIFF ACTION.

While Plaintiff attempts to characterize her lawsuit as a class action for purposes of gaining a remand, she brought this suit under the CPPA as an *individual* action asserting the rights of the general public. In doing so, Plaintiff consciously selected one of the several options available to District of Columbia consumers under the CPPA to challenge defendants who engage in deceptive practices. Under section 28-3905(k)(1), a Plaintiff may bring an action on her own behalf or, if she wishes to obtain broader relief, may bring either a traditional multi-plaintiff class action, in which numerous plaintiffs jointly assert similar but independent claims, or a private attorney general action, in which a private person acts to vindicate the policies behind the CPPA and represents the interests of the public as a whole. *See* D.C. Code § 28-3905(k)(1). Although both types of actions can provide broad relief, a private attorney general action need not involve more than one plaintiff, and therefore is fundamentally an individual action. Plaintiff's own Complaint and the procedural differences between private attorney general actions and class actions illustrate the individual nature of the present case.

5

In crafting her Complaint, Plaintiff opted to file suit as a private attorney general acting on behalf of the general public of the District of Columbia, rather than as a class representative suing on behalf of a class of similarly-situated individuals or a group of joined plaintiffs. *See* Compl. ¶¶ 1, 4, 10, 63. Notably absent from the Complaint are additional plaintiffs joined pursuant to permissive or compulsory joinder rules or any allegations of a class of injured plaintiffs or consumers who invested in XIRA accounts. *See* D.C. Super. Ct. Civ. R. 23-I(a) (class action complaints must include allegations defining the class involved and the appropriateness of the class action form). Instead, Plaintiff has styled her complaint as an *individual* action, with the caption and jurisdictional allegations mentioning only Plaintiff Kohan, and not any additional, absent Plaintiffs. *See* Compl. ¶¶ 8, 60, 63. Although Plaintiff seeks injunctive relief and statutory fines on behalf of allegedly injured members of the general public, that demand does not change the individual character of the action. Because the "general public" is not a class of injured consumers, the relief Plaintiff seeks is not based on the number and identity of particular people who also are Plaintiffs, but rather is an undetermined amount of damages based on the number of "violations" of the CPPA in the District of Columbia by Defendants. *See id.* ¶ 63.

The procedures applicable to the various types of cases under the CPPA further illustrate that the section 28-3905(k)(1) private attorney general action that Plaintiff has chosen to bring is fundamentally different from a class action or other type of multiple-plaintiff action. In class actions, for example, the numerosity of plaintiffs makes ordinary joinder impractical, so class certification requirements are imposed to ensure that the interests of numerous individual plaintiffs will be adequately represented by one or more named plaintiffs. *See Reed v. Philip Morris Inc.*, No. 96-5070, 1997 WL 538921, at *3 (D.C. Super. Ct. Aug. 18, 1997) (requirements

6

of Rule 23(a) are designed to ensure that class treatment is "necessary and efficient and that it is fair to the absentees" (internal citation omitted)). These protections are necessary in the multiple-plaintiff context because the claims of absent class members will be precluded in later litigation. *Cf. Dean Witter Reynolds, Inc. v. Superior Court of Alameda Cty.*, 211 Cal. App. 3d 758, 773 (Ct. App. 1st Div. 1989) (suggesting that a private attorney general suit under the previous version of California Bus. & Prof. Code § 17204, which was similar to D.C. Code § 28-3905(k)(1), does *not* preclude members of the general public from later bringing their own claims against the same defendant).

Here, Plaintiff does not invoke D.C. Super. Ct. Civ. R. 23, and its requirements and procedures for obtaining class certification; therefore her action need not satisfy the requirements applicable to class actions, she need not demonstrate the existence of multiple plaintiffs with claims that share common factual and legal questions, and she need not establish herself as an adequate representative of a class. *See* D.C. Super. Ct. Civ. R. 23; Fed. R. Civ. P. 23. There is no need for Rule 23's procedural protections for absent plaintiffs because Plaintiff's private attorney general action does not ask to have certified or to bind a class of multiple plaintiffs asserting numerous claims. Plaintiff's lawsuit is an individual enforcement action that primarily seeks to deter future misconduct which could have been brought by a state official but instead is brought by a private party. *See Reese v. Wal-Mart Stores, Inc.*, 73 Cal. App. 4th 1225, 1239-40 (Ct. App. 3d Dist. 1999) (California Bus. & Prof. Code § 17204's private attorney general provision allowed "individual action[s]" that seek "an alternative form of class-wide relief . . . for purposes of deterring future violations").

Congress recognized the well-established and fundamental distinction between individual private attorney general actions and class actions in its recent enactment of the Class Action

Fairness Act ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (2005). In CAFA, Congress altered the jurisdictional rules for certain class actions to render them removable to federal court under certain specified conditions, and extended those revised rules to "mass actions," which the Senate Report termed "simply class actions in disguise" because they "involve a lot of people who want their claims adjudicated together and they often result in the same abuses as class actions." S. Rep. No. 109-14, at 47 (2005); *see* 28 U.S.C. § 1332(d)(11)(A). At the same time, however, Congress explicitly exempted private attorney general actions from the definition of mass actions: "'mass action' shall not include any civil action in which . . . all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." 28 U.S.C. § 1332(d)(11)(B)(ii)(III). The legislative history of CAFA makes plain that the exemption was included because laws such as California Bus. & Prof. Code § 17204 and D.C. Code § 28-3905 "allow[] *individuals* to bring a suit on behalf of the general public," and therefore a suit brought under these laws "would not qualify as a mass action." S. Rep. No. 109-14, at 47 (emphasis added).

In sum, private attorney general suits such as that brought by Plaintiff here are fundamentally different from class actions. Plaintiff's private attorney general suit was brought by a single plaintiff seeking to enforce the rights of the public at large, not as a vehicle to assert jointly the similar but independent claims of multiple plaintiffs. The procedural protections afforded absent class members not being necessary to proceed with Plaintiff's claim here, she should not be permitted to nonetheless invoke those procedural rules when they appear to serve

8

her interests. Plaintiff Kohan's suit is an individual suit, not a multi-plaintiff action, and should be treated as such for all purposes.[2]

## III. THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED HERE BECAUSE THE COSTS TO DEFENDANTS OF COMPLYING WITH PLAINTIFF'S REQUESTED INJUNCTIVE RELIEF WILL EXCEED $75,000.

This Court has original jurisdiction over this litigation because the cost to Defendants of complying with the injunctive relief sought by Plaintiff will easily exceed $75,000. For purposes of determining the amount in controversy in a suit seeking injunctive relief, the Court may look to the value of the object of the action, and may measure that value from either plaintiff's or defendant's perspective. *See Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978) ("In assessing whether a complaint satisfies [the amount in controversy], a court may look either to the value of the right that the plaintiff seeks to enforce or to protect or to the cost to the defendants to remedy the alleged denial." (internal quotation marks omitted)). If Plaintiff succeeds in enjoining Defendants from engaging in any conduct found to violate the CPPA, the costs that Defendants will incur in complying with the injunction will easily exceed $75,000.

Plaintiff contends that Defendants' CPPA violations include marketing the XIRA in a misleading manner by touting the XIRA's utility as a savings device, inadequately training H&R Block tax professionals to disclose the fees associated with the XIRA, maintaining inadequate

---

[2] Contrary to Plaintiff's contentions, treating private attorney general actions brought under the CPPA as individual actions for purposes of the amount in controversy will not result in federal jurisdiction over all or most CPPA claims. See Pl's. Mem. at 6. For federal jurisdiction to exist, there must be complete diversity of parties, *Strawbridge v. Curtiss*, 3 Cranch 267 (1806), and the amount at stake in the litigation must exceed $75,000. Not all private attorney general actions will satisfy these requirements. In addition, the CPPA provides potential plaintiffs with a number of procedural means of framing their lawsuits, each of which would have different consequences for federal jurisdiction. See D.C. Code § 28-3905(k)(1) (plaintiffs may bring class actions, individual suits, associational suits, or private attorney general suits). Here, Plaintiff could have chosen to frame this lawsuit in a variety of ways, with different consequences for the issue of federal jurisdiction.

disclosure documents, and inadequately disclosing fees associated with the XIRA on the XIRA application. *See* Compl. ¶¶ 17, 35, 36, 40, 47. If Plaintiff prevails, Defendants, among other things, would need to completely retool their marketing practices in the District of Columbia by creating and producing new marketing materials, disclosure forms, and XIRA application materials, retraining tax professionals, and potentially reconsidering whether to offer the XIRA accounts in the District of Columbia. *See* Notice ¶ 5. The cost of undertaking these changes would certainly exceed $75,000. *Id.*

Plaintiff does not contest that the cost of such changes would exceed $75,000, but argues instead that the amount in controversy cannot be measured from Defendants' perspective because the value thereby obtained reflects the cost to Defendants from the combination of claims asserted by multiple plaintiffs, which violates the rule against aggregation. *See* Pl.'s Mem. at 8. The fact is, however, that the present case has but one plaintiff, Lynn Kohan. The rule against aggregation on which Plaintiff relies applies only "[w]hen *two or more plaintiffs*, having separate and distinct demands, unite for convenience and economy in a single suit." *Troy Bank of Troy, Indiana v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911) (emphasis added); *see also Snyder v. Harris*, 394 U.S. 332, 336-38 (1969) (same). Because Plaintiff's suit is solely an individual action, there are no claims by separate plaintiffs to aggregate, and the rule against aggregation does not apply to bar measurement of the amount in controversy from Defendants' perspective. *See NRDC, Inc. v. Berklund*, 458 F. Supp. 925, 933 (D.D.C. 1978) (amount-in-controversy requirement satisfied based on cost to defendant of preparing impact statements and lost contracts).

The case law Plaintiff relies on to argue that similarities between her private attorney general action and a multi-plaintiff action compel application of the rule against aggregation here

10

are not persuasive. In *Reigner v. Ingersoll-Rand Co.*, No. 04-1769 (D.D.C. Nov. 23, 2004), the only issue was whether the plaintiff's claims were for "refund" or "disgorgement," so that the total amount of the refund sought could be considered in determining the amount in controversy. Defendants assumed that plaintiff's private attorney general action was a multi-plaintiff suit to which the rule against aggregation applied, and focused the amount-in-controversy allegations in their notice of removal on the existence of a common and undivided interest shared by many members of the public. *See* Notice of Removal in No. 04-1769 (D.D.C. Oct. 12, 2004), at ¶¶ 11-12; Defendants' Mem. Opp. to Plaintiff's Mot. to Remand, No. 04-1769 (D.D.C. Nov. 12, 2004), at 7. Consequently, the issue before the court was only whether the claims of multiple plaintiffs could be aggregated because they involved a common fund. See *Reigner*, slip op. at 2, 4. *Reigner's* ruling on common-fund aggregation does not answer the question here: whether plaintiff's private attorney general action is an individual action to which the rule against aggregation does not apply.

Equally unavailing are four cases from district courts in California that hold that the anti-aggregation rule applies to private attorney general actions brought under California Bus. & Prof. Code § 17204, and therefore the amount in controversy cannot be measured from defendant's perspective.[3] *See* Pl's. Mem. at 6. In fact, a split of authority on that issue exists in district courts in California, where an equal number of cases hold that because of the fundamental differences between multi-plaintiff actions and private attorney general actions, the anti-aggregation rule of *Troy Bank* and *Snyder* has no applicability to private attorney general actions. *See Myers v. Merrill Lynch & Co., Inc.*, No. C-98-3532 (WHO), 1999 WL 696082, at *2-*5

---

[3] Although Defendants agree with Plaintiff that judicial treatment of claims brought pursuant to the private attorney general provisions of the California Business and Professional Code are instructive in analyzing the correct treatment of the CPPA for amount in controversy purposes, obviously these cases are not controlling here.

11

(N.D. Cal. Aug. 23, 1999) (amount in controversy measured from defendant's perspective because private attorney general action not a class action, but rather an action brought "on behalf of the California public"); *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 928 (N.D. Cal. 1992) (private attorney general action not treated as a class action in determining the jurisdictional amount because the action does not "possess many of the defining characteristics of a class action"); *Shearson Lehman Bros., Inc. v. Greenberg*, No. 93-55535, 1995 WL 392028 (9th Cir. July 3, 1995) (unpub. op.) (same); *cf. City and County of San Francisco v. Hartford Life Ins. Co.*, No. C-99-0225 (CRB), 1999 WL 354522, at *3 (N.D. Cal. May 17, 1999) ("Plaintiffs intentionally chose not to file this lawsuit as a class action. Having made that choice, they cannot now argue that the lawsuit must be treated as a class action for purposes of determining the amount in controversy."). For the reasons discussed *supra*, Defendants submit that *Mangini* and its progeny reach the correct result; the cases cited by Plaintiff for the contrary position misconceive the nature of the private attorney general action.

## IV.   THE   AMOUNT-IN-CONTROVERSY   REQUIREMENT   IS   SATISFIED BECAUSE THE STATUTORY DAMAGES SOUGHT BY PLAINTIFF EXCEED $75,000.

The amount-in-controversy requirement is also satisfied here by Plaintiff's demand for "treble damages or statutory damages in the amount of $1,500 per violation, whichever is greater, pursuant to D.C. Code § 28-3905k)(1)." *See* Compl. ¶ 63. Should Plaintiff prevail on her claims, the resulting statutory damages of at least $1,500 for each of Defendants' alleged violations of the CPPA will easily exceed $75,000, as Plaintiff need only proffer evidence that Defendants sold 50 XIRA accounts in the District of Columbia to be entitled to statutory damages of $75,000. Thus, it is nowhere near a "legal certainty" that Plaintiff will not be able to recover more than $75,000 in statutory damages. *See General Elec. Capitol Corp.*, 2005 WL

12

3276279, at *2 (holding that where unspecified liquidated damages were available in addition to $49,000 in compensatory damages, no evidence exists that "it is a legal certainty that the liquidated damages could not meet the required amount in controversy").

Although Plaintiff claims that Defendants have failed to demonstrate the amount of statutory damages that could be awarded in this case, *see* Pl's. Mem. at 7, Plaintiff's Complaint itself establishes that the damages awarded could well exceed $75,000. *See* Compl. ¶ 54 ( "H&R Block has induced hundreds of thousands of individuals to invest" in XIRA accounts by misrepresenting the tax penalties associated with the accounts); *id.* ¶ 52 ("[H]undreds of thousands of customers have invested in an Express IRA . . . ."); *id.* ¶ 5 ("H&R Block conducts extensive business in the District of Columbia and has at least 18 offices operating in the District of Columbia."); *id.* ¶ 21 ("In the last four years H&R Block has opened more than 500,000 Express IRA accounts."). Given Plaintiff's allegations that Defendants conduct "extensive business" in the District of Columbia, and that "hundreds of thousands" of customers have purchased XIRA accounts, she cannot now claim that it is a "legal certainty" that statutory damages arising from her alleged CPPA violations will not exceed $75,000.[4]

---

[4] The cases that Plaintiff cites in support of her argument that Defendants have not proffered sufficient factual evidence of the potential damages at stake are inapposite. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003), involves the standard of proof for demonstrating *personal* jurisdiction, not the amount in controversy. In addition, the two Ninth Circuit cases on which Plaintiff relies, *see* Pl's. Mem. at 7, are unhelpful here because the Ninth Circuit determines the amount in controversy at the time of removal with reference not only to the allegations in the complaint, but also to "summary-judgment-type evidence relevant to the amount in controversy," *see Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotation marks omitted). The D.C. Circuit has never endorsed such an evidentiary requirement, but instead looks to the allegations in the complaint and other filings. *See Smith*, 593 F.2d at 1100 (while a "formal" pleading that damages will exceed the jurisdictional amount, without more, may be insufficient to establish the amount in controversy, "detail[ing] a number of alleged . . . violations" in the complaint can be sufficient); *Martin*, 723 F.2d at 992 (in a diversity case allegations of physical injuries, pain and suffering, and loss of consortium made it

13

Finally, Plaintiff contends that Defendants must establish that the statutory damages at stake in this case amount to $75,000 for each member of the general public. *See* Pl's. Mem. at 6-7. As discussed *supra*, however, Plaintiff pursues this claim for the interests of the general public but members of the general public are not plaintiffs themselves; because this is an individual action, the total amount of damages requested is the relevant inquiry for purposes of the amount-in-controversy requirement. *See Exxon Mobil Corp v. Allapattah Servs., Inc.*, 125 S. Ct. 2611, 2635-36 (2005) (claims by a single plaintiff against a defendant may be aggregated for purposes of the amount-in-controversy requirement).

## V.   THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED BECAUSE THE ATTORNEY'S FEES SOUGHT BY PLAINTIFF WILL EXCEED $75,000.

The attorney's fees that Plaintiff here seeks to recover under the CPPA authorization to recover "reasonable attorney's fees" also satisfy the amount-in-controversy requirement. *See* D.C. Code § 28-3905(k)(1)(B). A potential award of attorney's fees may be considered for purposes of determining the amount in controversy where, as here, plaintiff is entitled to seek attorney's fees by the governing substantive statute. *See Your Girl Friday, LLC v. MGF Holdings, Inc.*, No. 06-0385 (ESH), 2006 WL 1028959, at *2 (D.D.C. April 18, 2006) (attorney's fees may be considered part of amount in controversy when allowed for by relevant statute); *see also Graham v. Henegar*, 640 F.2d 732, 736 (5th Cir. 1981) (where authorized by statute, attorney's fees comprise part of plaintiff's substantive recovery and are includible in the amount in controversy).[5] Because any award of attorney's fees pursuant to the CPPA in this

---

impossible to conclude to a legal certainty that the jurisdictional amount requirement was not satisfied).

[5] Thus, Plaintiff's attempt to argue that attorney's fees may not be considered as part of the amount in controversy because the CPPA "does not mandate the recovery of attorney's fees" is unavailing. As Plaintiff herself notes, it is well-established that attorney's fees may be used to

action would likely exceed $75,000, Plaintiff's attorney's fees also satisfy the amount-in-controversy requirement.

As an initial matter, Plaintiff's argument that Defendants must demonstrate that potential attorney's fees would exceed $75,000 on a "pro rata" basis, *see* Pl's. Mem. at 9, is meritless. Because this is an individual action, there are no additional plaintiffs among whom to apportion an award of attorney's fees on a pro rata basis. Therefore, the rule of *NOW v. Mutual of Omaha Ins. Co.*, 612 F. Supp. 100, 108-09 (D.D.C. 1985), that in class actions, at least one plaintiff's pro rata share of the attorney's fees must exceed $75,000 to satisfy the jurisdictional amount requirement, is not applicable here. The only relevant question is whether the Court can conclude to a legal certainty that *Plaintiff's* attorney's fees will not exceed $75,000.

The probability that Plaintiff will be awarded attorney's fees in excess of $75,000 is hardly, as Plaintiff asserts, "speculative." *See* Pl's. Mem. at 9. Even at a conservative rate of $300 per hour, *see Jackson v. Byrd*, No. 01-ca-825, 2004 WL 3249692, at *3 (D.C. Super. Ct. Sept. 2, 2004) (rate of $270 per hour for work performed in 2003 and 2004), Plaintiff's attorneys will bill $75,000 simply by spending 250 hours on this case. In fact, Plaintiff's attorneys almost certainly will spend many more hours than that in prosecuting this case, as Plaintiff's fraud claims will require extensive written and document discovery and depositions into, among other things, the knowledge and intent of H&R Block employees and executives, the investment returns realized and fees and penalties paid by XIRA holders, Defendants' practices of training its tax professionals, and Defendants' disclosure and marketing practices. *See* Compl. ¶¶ 23, 54, 58. Thus, should Plaintiff prevail, it is almost a certainty that her attorney's fees request will well exceed $75,000.

---

satisfy the jurisdictional requirement if they "are *allowed for* by statute." *See* Pl's. Mem. at 8 (emphasis added).

15

Moreover, if Plaintiff prevails, case law suggests that a court would find a fee award of more than $75,000 "reasonable," *see* D.C. Code § 28-3905(k)(1)(B), regardless of the size of the damage award. In recognition of the salutary effect served by CPPA claims that "expose[] . . . deceptive practices" and deter further deceptive conduct, *see Jackson v. Byrd*, 2004 WL 3249692, at *3, and the difficulty of prevailing in complex cases involving fraud, courts have approved significant awards of attorney's fees even where the damages award was dwarfed by the fee award. *See Williams v. First Gov't Mortgage and Investors Corp.*, 225 F.3d 738, 743, 747 (D.C. Cir. 2000) (given the amount of work performed and the "degree" of success achieved, attorney's fees award of $199,000 approved even though CPAA damages awarded were only $8400; *Jackson*, 2004 WL 3249692, at *3 (awarded attorney's fees of $196,000 where damages totaled $415,000, because case was "complex" and was "grounded substantially in a large volume of documents"). Thus, given judicial recognition that substantial fee awards may be appropriate where, as here, the case requires intensive investigation and voluminous document review, it cannot be deemed speculative to value Plaintiff's ultimate fee award, should she prevail, at well over $75,000. *Cf. Gardiner Stone Hunter Int'l v. Iberia Lineas Aereas de Espana, S.A.*, 896 F. Supp. 125, 128 (S.D.N.Y. 1995) (given "reasonable probability" that fee award would exceed jurisdictional amount, it was impossible to conclude to "legal certainty" that plaintiffs would not recover attorney's fees and satisfy the jurisdictional amount).

The only case Plaintiff cites to support her argument that any award of attorney's fees is too speculative to support jurisdiction is *Your Girl Friday, LLC v. MGF Holdings, Inc.*, No. 06-0385 (ESH), 2006 WL 1028959 (D.D.C. April 18, 2006), but that case is distinguishable. *See* Pl's. Mem. at 9-10. *Your Girl Friday* was not a CPPA case, but rather involved a claim for breach of a settlement agreement where the total amount of damages at stake was $50,000. The

settlement agreement provided for an award of reasonable attorney's fees, and defendant, who removed the case, argued that plaintiff could receive $25,000 in fees, thereby satisfying the $75,000 jurisdictional requirement. *Id.* at *2. The Court rejected that argument, holding that an award of $25,000 in fees in an ordinary civil trademark dispute with only $50,000 at issue, was highly unlikely. *Id.* Thus, the court there concluded that attorneys' fees of $25,000 would not be reasonable given the nature and size of the case. *Id.*

No such conclusion can be drawn here. First, the amount at stake in this case is substantial, both in the potential cost to Defendants of complying with Plaintiff's requested injunctive relief and the potential statutory damages award. Second, as discussed *supra*, in CPPA cases like this, uncovering and analyzing fraudulent practices is seen as both a complex endeavor and a "public service," *see Jackson*, 2004 WL 3249692, at *3, and courts as a result have been willing to grant substantial fee awards, regardless of the amount of damages recovered.

Finally, Plaintiff's contention that attorney's fees are collateral to the "substantive matter in controversy," Pl's. Mem. at 10, is meritless. Attorney's fees are considered collateral to a dispute only when they are not recoverable under the substantive statute invoked by plaintiff. *See Srour v. Barnes*, 670 F. Supp. 18, 22 & n.3 (D.D.C. 1987) (attorney's fees are "nearly always" collateral to the matter in controversy, except when fees are "provided for by . . . a statute in controversy"). Under the CPPA, attorney's fees are included in the list of remedies available for violations, *see* D.C. Code §28-3905(k)(1)(B), and, along with the treble damages provision, are meant to "encourage the private bar to take such cases." *See District Cablevision Ltd. Partnership v. Bassin*, 828 A.2d 714, 728 (D.C. Ct. App. 2003) (citing CPPA's legislative history). Thus, under the CPPA, attorney's fees are not considered collateral, but rather, are one

17

of the key remedies provided for a violation of the statute. *See Graham*, 640 F.2d at 736. Reliance on the likely attorney's fee award to determine the amount in controversy therefore is entirely appropriate.

## VI. THE TOTAL VALUE OF THE VARIOUS COMPONENTS OF THE RELIEF SOUGHT SATISFIES THE AMOUNT-IN-CONTROVERSY REQUIREMENT.

Although Defendants believe that each component of the potential relief discussed above is individually substantial enough to satisfy the $75,000 amount-in-controversy requirement, the sum total of Defendants' costs of complying with an injunction, the statutory damages, and the potential attorney's fees certainly satisfies the jurisdictional amount requirement. *See General Electric Capitol Corp.*, 2005 WL 3276279, at *1-*2 (total of amounts due under lease and potential liquidated damages enough to meet amount-in-controversy requirement). Given that each remedy requested individually involves potentially significant sums, it is impossible to conclude to a legal certainty that the total amount at stake in this litigation is less than $75,000.

## VII. THE NOVELTY OF A STATE-LAW CAUSE OF ACTION IS NOT A PROPER GROUND ON WHICH TO REMAND A CASE.

Finally, Plaintiff asserts that, in any event, this Court should remand this case because the private attorney general provision of the CPPA "has yet to be interpreted by the District of Columbia Court of Appeals." Pl's. Mem. at 11. The only case that Plaintiff cites for the novel proposition that federal courts may remand cases regardless whether subject-matter jurisdiction exists, however, is one in which the court first found that it *lacked* subject-matter jurisdiction over the suit, a finding that in itself necessitated a remand. *See Smith v. Gutter Covers of Maryland & Virginia*, No. 04-1974 (HHK), 2005 WL 3276280, at *4 (Aug. 4, 2005).[6] With

---

[6] In addition, the line of precedent cited in *Smith* involves the discretionary inquiry as to whether to assert supplemental jurisdiction over pendent state-law claims pursuant to 28 U.S.C.

18

exceptions not relevant here, moreover, district courts may not remand cases to state court based on discretionary factors not specified in the removal statute. *See Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 344-45 & n.9 (1976), *abrogated on other grounds*, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). Thus, the asserted novelty of Plaintiff's CPPA claim is not an appropriate basis on which to remand this suit.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's motion to remand to the Superior Court for the District of Columbia.

---

§ 1367(c), which explicitly permits courts to consider the novelty of the state-law issues raised by the pendent claims in determining whether to exercise jurisdiction. *See Smith*, 2005 WL 3276280, at *4 (citing *Vigilant Ins. Co. v. EEMAX, Inc.*, 362 F. Supp. 2d 219, 224 (D.D.C. 2005), (novelty of the asserted state-law issues counseled against exercising supplemental jurisdiction). That provision is not relevant here.

Dated: July 3, 2006

Respectfully submitted,

**H&R BLOCK, INC. and H&R BLOCK**
**FINANCIAL ADVISORS, INC.**

By: /s/ Michael B. DeSanctis

One of Their Attorneys

Paul M. Smith (D.C. Bar No. 358870)
Michael B. DeSanctis (D.C. Bar No. 460961)
Ginger D. Anders (D.C. Bar No. 494471)
JENNER & BLOCK LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington DC 20005-3823
Telephone: 202-639-6000
Facsimile: 202-639-6066

Anton R. Valukas
Matthew M. Neumeier
Richard P. Steinken
Molly J. Moran
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2006, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

> Tracy D. Rezvani
> Donald J. Enright
> Hilary Ratway
> Stan M. Doerrer
> FINKELSTEIN, THOMPSON & LOUGHRAN
> The Duvall Foundry
> 1050 30th Street. NW
> Washington, DC 20007
> (202) 337-8000
> (202) 337-8090 fax

/s/    Michael B. DeSanctis

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LYNN KOHAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   No. 1:06 CV 01066 (RCL) |
| | ) |
| H&R BLOCK, INC. and | ) |
| H&R BLOCK FINANCIAL ADVISORS, INC. | ) |
| | ) |
| Defendants. | ) |

## [PROPOSED] ORDER

The Court, having considered Plaintiff's Motion to Remand for Lack of Subject Matter

Jurisdiction, is of the opinion that the motion should be denied. Therefore, it is ORDERED that

the motion is denied.

DONE and ORDERED this _____ day of _____, 2006.

_____
U.S. DISTRICT JUDGE

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LYNN KOHAN,                          )
                                     )
                 Plaintiff,          )     Civil Action No. 06-1066 (RCL)
        v.                           )
                                     )
H&R BLOCK, INC. and H&R BLOCK        )
FINANCIAL ADVISORS, INC.,            )
                                     )
                 Defendants.         )
_____)

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND
## FOR LACK OF SUBJECT MATTER JURISDICTION

Defendants' Notice of Removal relied extensively on theories underlying class

actions and alleged aggregation to meet the amount in controversy. Notice at ¶¶2, 6.

However, once Plaintiff demonstrated how the body of law governing diversity in class

actions actually supported remand, Defendants changed tactics and now argue that

Plaintiff claims on behalf of the general public is simply an individual action and class

action jurisprudence should not apply. Opp. at 10.

For example, in the Notice of Removal, defendants stated that "Plaintiff alleges

that…she *and the general public of the District of Columbia* are entitled to [injunctive

and monetary relief]." Notice at ¶2 (emphasis added); *see also id.* at ¶6. In fact, in their

Notice of Removal, defendants even attempt to calculate the number of residents it would

take to meet the amount in controversy. *Id.* at ¶6. Thus, it is clear that the Notice of

Removal is predicated on aggregation principles governed by rules analyzing class

actions generally, and the private attorney general actions that have followed that

jurisprudence. *See* Motion for Remand at 3 n.2. Given that jurisdiction must be

established in the notice of removal, not some later pleading or filing, Defendants should
not now be allowed to substantive modify their Notice of Removal. *See Laughlin v. K-
Mart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995); *Coca-Cola Bottling of Emporia, Inc. v.
South Beach Beverage Co., Inc.*, 198 F. Supp.2d 1280, 1283 (D. Kan. 2002).

    Yet their tortured analysis in the opposition brief seeks to re-cast the instant action
in an effort to walk away from the Notice. For example, Defendants now argue that the
rule of aggregation does not apply because that prohibition applies to cases involving
more than one plaintiff. Opp. at 10.[1] Thus, Defendants have completely ignored, for
self-serving purposes, the fact that their Notice of Removal explicitly recognized the
representative capacity in which this action was brought. It also ignores their efforts at
speculating the aggregated damages of the general public in the Notice of Removal (and
oddly enough again in their Opposition). This gamesmanship should be seen for what it
is: a painful contortion of the posture of this action to wrongly confer jurisdiction on this
court. An action on behalf of the general public should not be treated as a mere
"individual" private party action but analyzed as (analogously) to an uncertified putative
class action. To do otherwise would essentially convert all CPPA private attorney
general actions brought under state statute into federal causes of action. Such a result is
untenable as the CPPA is not a federal statute and this Court is a court of limited
jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

---

[1] In support of the notion that a representative plaintiff is the head of an individual action, defendants cite
*Troy Bank of Troy, Indiana v. G.A. Whitehead & Co.*, 222 U.S. 39 (1911) and *Snyder v. Harris*, 394 U.S.
332 (1969). These decisions are unhelpful to defendants for two reasons. *Troy* was decided long before the
enactment of even the earliest version of 28 USC §1332. Moreover, *Troy* and *Snyder* both hold that
aggregation is only appropriate if the claim at issue was to enforce a single title or right. *Troy*, 222 U.S. at
40-41; *Snyder*, 394 U.S. 338-39. Finally, *Troy* has specifically been limited by courts to an opinion
recognizing that lone exception. *See, e.g., Pariente v. Scott Meredith Literary Agency, Inc.*, 771 F. Supp.
609, 613-14 (S.D.N.Y. 1991); *Wales v. Jacobs*, 104 F.2d 264, 267-68 (6th Cir. 1939). Plaintiff and the
general public do not have a single title or right but separate claims which cannot meet the amount in
controversy. *See Reigner, infra.*

## LEGAL ARGUMENT

### I.   DEFENDANTS, AS THE REMOVING PARTIES, HAVE THE BURDEN OF PROVING JURISDICTION

When a plaintiff moves for remand, the defendant bears the burden of proving

federal jurisdiction. *Kokkonen*, 511 U.S. at 377; *Wilson v. Republic Iron & Steel Co.*, 257

U.S. 92, 97 (1921); *King v. Morton*, 520 F.2d 1140, 1145 (D.C. Cir. 1975); *National Org.*

*for Women v. Mutual of Omaha Ins. Co.*, 612 F. Supp. 100, 101 (D.D.C. 1985) ("*NOW*").

The Supreme Court in *Wilson* explained the rule in removal actions:

> If a removal is effected, the plaintiff may, by a motion to
> remand .... take issue with the statements in the petition. If
> he does, the issues so arising must be heard and determined
> by the District Court ... and at the hearing the petitioning
> defendant must take and carry the burden of proof, he being
> the actor in the removal proceeding.

257 U.S. at 97. The removal statute must be narrowly and strictly construed, *Shamrock*

*Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941); *Williams v. Howard Univ.*, 984

F. Supp. 27, 29 (D.D.C. 1997), "so as not to frustrate the congressional purpose behind it:

to keep the diversity caseload of the federal courts under some modicum of control."

*Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1044-45 (3d Cir. 1993). Thus, courts

must resolve any doubt concerning the propriety of removal in favor of remand. *Walker*

*v. Waller*, 267 F. Supp.2d 31, 32 (D.D.C. 2003); *University of S. Alabama v. American*

*Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *Nwachukwu v. Karl*, 223 F. Supp. 2d

60, 66 (D.D.C. 2002).

Ignoring this Supreme Court precedent, Defendants erroneously attempt to shift

the burden of proving jurisdiction to Plaintiff. Citing *Saint Paul Mercury Indemnity Co.*

*v. Red Cab Co.*, 303 U.S. 283, 289 (1938) and its progeny, Defendants repeatedly assert

3

that "the court should uphold jurisdiction unless it 'appear[s] to a legal certainty that the

claim is really for less than the jurisdictional amount.'" Opp. at 4; *see also* Opp. at 12,

13, 18. The cases cited by Defendants, however, are inapposite. They stand for the

proposition that when the plaintiff files suit in federal court and the defendant moves to

dismiss for lack of jurisdiction under FRCP 12(b)(1), dismissal is appropriate only if the

court finds to a legal certainty that the plaintiff could not recover in excess of the

jurisdictional amount. *St. Paul*, 303 U.S. at 288; *Naegele v. Albers*, 355 F. Supp. 2d 129,

133 (D.D.C. 2005); *General Elec. Capitol Corp. v. Limousines Unlimited LLC*, No. CV-

04-976 (RCL), 2005 U.S. Dist. LEXIS 35708 at *2 (D.D.C. Aug. 2, 2005). These cases

in no way alter the burden when a defendant moves for remand from that set forth in

*Kokkonen* and *Wilson. Accord Martin v. Gibson*, 723 F.2d 989, 991 (D.C. Cir.

1983)("While the 'legal certainty' test is an exacting one, the burden of establishing the

amount in controversy, to be sure, rests squarely with the litigant asserting

jurisdiction.")(FRCP 12(b)(1) decision cited by Defendants).

As the court in *Gaus v. Miles, Inc.*, explained:

> In cases brought in the federal court ... it must appear to a
> legal certainty that the [plaintiff's] claim is really for less
> than the jurisdictional amount to justify dismissal ... A
> different situation is presented in the case of a suit
> instituted in a state court and then removed. There is a
> strong presumption that the plaintiff has not claimed a large
> amount in order to confer jurisdiction on a federal court or
> that the parties have colluded to that end ... The "strong
> presumption" against removal jurisdiction means that the
> defendant always has the burden of establishing that
> removal is proper.

980 F.2d 564, 566 (9th Cir. 1992).

More importantly, Defendants' attempt to shift the burden of proving jurisdiction

Case 1:06-cv-01066-RCL     Document 14-4     Filed 10/02/2006     Page 46 of 88
Case 1:06-cv-01066-RCL     Document 12-1     Filed 07/14/2006     Page 5 of 22

based upon the legal certainty language in *St. Paul* was rejected by the court in *NOW*.
612 F. Supp. at 102-3. As the Defendants do here, the defendants in *NOW* argued that
"jurisdiction will be found to exist unless the Court finds 'to a legal certainty' that the
matter in controversy cannot exceed the sum or value of [the jurisdictional amount.]" *Id.*
at 102. In *NOW*, the court concluded, "defendant's attempt to vest the 'legal certainty'
phrase of the *Saint Paul* case with a talismanic quality that prevents remand of cases
where there is some doubt as to the amount to be recovered must be rejected." *Id.* The
court reiterated that in removal actions, the burden of proof is on the defendant to
establish jurisdiction.[2] *Id.* at 102.

## II.    BECAUSE THIS IS A REPRESENTATIVE ACTION RATHER THAN AN INDIVIDUAL ACTION, DEFENDANTS MAY NOT AGGREGATE TO SATISFY THE AMOUNT IN CONTROVERSY

Defendants argue throughout their Opposition that the amount in controversy is
satisfied because this is an individual action and the value of the claims are, therefore,
attributable solely to the Plaintiff. Plaintiff's case, however, is a representative action,
and as explained in Plaintiff's Motion to Remand, recent case law unequivocally holds
that representative actions are to be treated akin to class actions for determining the
amount in controversy. *See, e.g., Ecker v. Ford Motor Co.,* No. 02-6833, 2002 U.S. Dist.
LEXIS 26229, *8-11 (C.D. Cal. Nov. 12, 2002); *Boston Reed Co. v. Pitney Bowes, Inc.,*
No. 02-1106, 2002 U.S. Dist. LEXIS 11683, *12-13 (N.D. Cal. June 20, 2002); *Surber v.*

---

[2]    Although the D.C. Circuit has yet to define the proper evidentiary standard of proof, the majority of circuits that have looked at this issue have concluded that when a defendant removes a case to federal court, the defendant bears the burden of proving jurisdiction by a preponderance of the evidence. *See, e.g., Friedman v. N.Y. Life Ins. Co.,* 410 F.3d 1350, 1353 (11th Cir. 2005); *St. Paul Reins. Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998); *Singer v. State Farm Mut. Auto Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997); *Gafford v. General Elec. Co.,* 997 F.2d 150, 158 (6th Cir. 1993); *see also* 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 3725. In other words, "legal certainty" which is an "exacting standard" has not been adopted by this or a majority of circuits. *See Martin, supra.* In any case, Defendants have failed to meet either test for the burden of proof.

*Reliance Nat'l Indem. Co.*, 110 F. Supp.2d 1227, 1232-33 (N.D. Cal. 2000); *Phipps v. Praxair, Inc.*, No. 99-1848, 1999 U.S. Dist. LEXIS 18745, *14-15 (S.D. Cal. Nov. 12, 1999).[3]

Although they acknowledge these cases holding that representative actions must be treated as class actions for purposes of determining the amount in controversy, Defendants argue that "a split of authority on that issue exists in district courts in California." Opp. at 11 (citing *Myers v. Merrill Lynch & Co., Inc.*, No. C-98-3532, 1999 WL 696082, *2-5 (N.D. Cal. Aug. 23, 1999); *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 928 (N.D. Cal. 1992); *Shearson Lehman Cross, Inc. v. Greenberg*, No. 93-55535, 1995 WL 392028 (9th Cir. July 3, 1995); *City and County of San Francisco v. Hartford Life Ins. Co.*, No. C-99-0225, 1999 WL 354522, *3 (N.D. Cal. May 17, 1999)).

Defendants' argument is disingenuous. As explained in Plaintiffs' Motion for Remand, while earlier cases, such as those cited by Defendants, held that there was a distinction between private attorney general actions and class actions, their reasoning has been expressly rejected by *subsequent* cases. In *Boston Reed*, the Northern District of California expressly acknowledged its change in reasoning, explaining:

> The Court finds the reasoning in Phipps and Surber to be persuasive, especially since the California courts themselves have recently recognized the representative nature of a § 17204 claim. [footnote omitted]  Therefore, because the Court finds that a UCL private attorney general action is a collection of "separate and distinct" claims, the claims may not be aggregated to reach the amount in controversy and each plaintiff's claim must exceed the jurisdictional amount for this court's subject matter jurisdiction to be invoked.

_____

[3]    Defendants cite *Troy Bank* and *Snyder* for the proposition that the anti-aggregation rule is limited to cases in which there are two or more plaintiffs. Opp at 10. Yet in *Boston Reed, Surber*, and *Ecker*, the courts applied the anti-aggregation rule to representative actions brought by only a single plaintiff, as in the present case.

2002 U.S. Dist. LEXIS 11683 at *15. Thus, contrary to Defendants' assertion, all of the

district courts in California that have addressed the issue are in agreement: representative

actions are to be treated as class actions for purposes of determining the amount in

controversy and aggregation is therefore impermissible.[4]

Defendants also seek to distinguish *Reigner v. Ingersoll-Rand Co.*, No. 04-1769

(D.D.C. Nov. 23, 2004), the sole decision analyzing the CPPA private attorney general

action on a motion for remand, by arguing that the facts of the complaint were different

than those found here. Opp. at 11. Of course, differences in factual allegations will

always be found between different complaints, filed by different parties, against different

defendants for different conduct. What is most telling is that while Defendants attempt to

mire the Court in the factual, they completely ignore the *Reigner* court's analysis

regarding the prohibition against aggregation. Specifically, the *Reigner* court ruled that

since it was not dealing with a common or undivided claim, then remand was appropriate.

*Reigner*, slip op at 4 (Ex. 1 to Declaration of Hilary K. Ratway in Support of Plaintiff's

Motion to Remand for Lack of Subject Matter Jurisdiction). In doing so, the *Reigner*

court did not, as defendants here propose, treat the action as an individual action.

Instead, the court analyzed the action much like a class action and determined the value

of the remedies as to *each consumer* sought to be represented. *Id.* Similarly, since the

---

[4] Defendants cite to the legislative history of the Class Action Fairness Act ("CAFA") in support of their argument that representative actions are fundamentally different from class actions. Ironically though, CAFA and its legislative history support Plaintiffs' argument that this court lacks jurisdiction over the present case. CAFA amended 28 U.S.C. § 1332 to provide federal court jurisdiction over class actions and "mass actions" when the aggregate amount in controversy exceeds $5 million and one of the diversity requirements of 28 U.S.C. § 1332(d)(2)(A)-(C) is satisfied. By expressly exempting private attorney general actions from the definition of "mass action" under CAFA, Congress clearly expressed an intent that such actions remain in state court. It would defy logic to permit federal court jurisdiction where the aggregate damages satisfy the $75,000 amount in controversy requirement yet prohibit federal court jurisdiction where the aggregate damages exceed $5 million.

instant action does not seek a common and undivided interest, and since, under *Reigner*,

this Court should apply class principles to the aggregation issue, remand is appropriate.

## III.    DEFENDANTS HAVE NOT PROVEN THAT PLAINTIFF SATISFIES THE AMOUNT IN CONTROVERSY

### A.    The Value Of Injunctive Relief May Not Be Measured From The Defendants' Perspective To Satisfy The Amount In Controversy

It is well-settled that in class actions, courts should not consider the cost to the

defendant in complying with an injunction for purposes of determining the amount in

controversy. *NOW*, 612 F. Supp. at 108 (citing *Snow v. Ford Motor Co.*, 561 F.2d 787

(9th Cir. 1977); *Lonquist v. J.C. Penney Co.*, 421 F.2d 597 (10th Cir. 1970)). Because, as

discussed above, this case should be analyzed under the rubric of a class action, the rule

against aggregating damages applies equally to private attorney general actions. This is

in line with other private attorney general actions facing remand wherein the cost of

injunctive relief is measured from plaintiff's viewpoint. *See, e.g., Boston Reed*, 2002

U.S. Dist. LEXIS 11683 at *17; *Surber*, 110 F. Supp.2d at 1233-34.

Even if the Court were to ignore the basic foundation of Plaintiff's cause of

action, and the sole CPPA private attorney general decision (*Reigner*), Defendants'

arguments and precedents used in valuing the injunctive relief to meet the amount in

controversy is misplaced. The foundation of their argument in favor of measuring that

relief from the defendant's viewpoint is based on *Smith v. Washington*, 593 F.2d 1097,

1099 (D.C. Cir. 1978). However, *Smith* does not support Defendants' argument that

injunctive relief can be measured from their perspective in this case because it is: (1)

limited to cases *solely* seeking declaratory or injunctive relief; (2) looked to the plaintiff's

viewpoint in determining the amount in controversy; (3) limited to claims not capable of

8

objective valuation; and (4) limited to causes of action raising federal questions.

In *Smith*, several inmates filed an action solely seeking declaratory and injunctive

relief for administrative segregation without a hearing. Referring to *Hunt v. Washington*

*State Apple Advertising Commission*, 432 U.S. 333 (1977), the *Smith* court framed the

issue as such:

> [T]he Supreme Court set forth the standard for determining
> whether a complaint for declaratory or injunctive relief
> satisfies the requisite amount in controversy under 28
> U.S.C. § 1331(a) (1976). ... In assessing whether a
> complaint satisfies that standard, a court may look either to
> "the value of the right that plaintiff seeks to enforce or to
> protect" or to the cost to the defendants to remedy the
> alleged denial. Plaintiffs' allegations, that the complained-
> of practices result in a substantial deprivation of their
> liberty without adequate procedural safeguards, are clearly
> sufficient to meet their burden of establishing the requisite
> amount under the standard enunciated in *Hunt*. In *Sullivan
> v. Murphy*, 156 U.S.App.D.C. 28, 50-1 [], we found that the
> requisite $ 10,000 was satisfied by plaintiffs' allegations of
> even a short period of unlawful confinement. The view that
> alleged deprivations of liberty may be sufficient to establish
> the requisite amount in controversy has been echoed in
> subsequent decisions of this court....

*Smith*, 593 at 1100. Thus, what should be clear from a full reading of *Smith* is that the

point of view measured was the *plaintiffs'* viewpoint (and not defendants'), namely the

worth of a person's liberty. In *Smith*, as well as the cases upon which it relied, it was

ruled that liberty without process was worth at least $10,000 to a plaintiff.

The *Hunt* decision is instructive and also negates Defendants' arguments on this

point. There, the Supreme Court held: "In *actions seeking declaratory or injunctive

relief*, it is well established that the amount in controversy is measured by the value of the

object of the litigation." 432 U.S. at 347 (emphasis added). The Supreme Court then

looked to the valuation to the growers (which the organization represented) in valuing the

9

loss of right imposed by the statute and not to the valuation to the state defending the statute. *Id.* at 347-48. Thus, as commentators have noted, the "either viewpoint" rule announced in *Smith* is only useful when dealing with amorphous federal questions involving rights which have no obvious cash value. *NOW*, 612 F. Supp. at 108; Jaren Casazza, *Valuation Of Diversity Jurisdiction Claims In The Federal Courts*, 104 Colum. L. Rev. 1280, 1281 n.4 (2004); Brittain Shaw McInnis, *The $ 75,000.01 Question: What Is The Value Of Injunctive Relief?*, 6 Geo. Mason L. Rev. 1013, 1015 n.10 (1998).

Defendants' reliance on the *Smith* decision is further undermined by the more recent opinion in *NOW*. There, like here, the defendant argued that since a component of the relief sought was injunctive relief, the court could look to "either viewpoint". Like here, the defendant relied on *Smith*. However, in specifically *rejecting* the application of the "either viewpoint" rule to mix-remedy cases, the court limited *Smith* to cases in which the plaintiff was *not* "seeking both equitable and money damages." *NOW*, 612 F. Supp. at 107-08. Under *NOW* reliance and application of opinions for cases seeking only declaratory and injunctive is incorrect.

Here, Plaintiff is not seeking solely declaratory or injunctive relief, is not basing the claim on a federal question, and is not solely raising claims incapable of objective cash valuation. As such, *Smith* is inapplicable and Defendants' reliance thereon is misplaced.[5]

---

[5]   Defendants also rely on *Natural Resources Defense Counsel v. Berklund*, 458 F. Supp. 925, 933 (D.D.C. 1978)("*NRDC*") which, like *Smith*, is a case only seeking declaratory and injunctive relief. Opp. at 10. There are, however, additional problems with defendants' reliance on *NRDC*. First, although brought by two organizations as representatives of its members, it was brought under federal statutes. 458 F. Supp. at 928. Second, given the nature of the suit, jurisdiction was accordingly sought under 28 U.S.C. §1331 (*id.* at n.16) which is not, and cannot be, invoked here.

**B.    Defendants Have Not Proven That Plaintiff's Individual or Statutory Damages Exceed $75,000**

Defendants continue to argue that "because this is an individual action, the total amount of damages requested is the relevant inquiry for purposes of the amount in controversy." Opp. at 14. Thus, in the same sentence, Defendants liken the action to an individual *and* group action in order to bootstrap themselves into this Court. Defendants further argue that the amount in controversy is satisfied *if Plaintiff ultimately proves* that they sold 50 Express IRAs in the District of Columbia. *Cf.* Opp. at 12 *with* §I, *supra*. In other words, Defendants seek to satisfy the amount in controversy by (a) arguing that it is an individual action and (b) nevertheless asking the Court to aggregate the statutory (not actual) damages attributable to each purchaser of an Express IRA. This does not suffice to satisfy the amount in controversy in a representative action such as this one.

As discussed above, Plaintiff's representative action must be treated akin to a class action for purposes of satisfying the amount in controversy, and therefore damages attributable to the general pubic cannot be aggregated and attributed to the named Plaintiff.[6] *See, e.g., Ecker,* 2002 U.S. Dist. LEXIS 26229 at *8-11; *Boston Reed,* 2002 U.S. Dist. LEXIS 11683, at *12-13; *Surber,* 110 F. Supp.2d at 1232-33; *Phipps,* 1999 U.S. Dist. LEXIS 18745, at *14-15. Thus, Defendants must demonstrate that Plaintiff's *pro rata* share of the damages exceeds $75,000. *Id.* Defendants have not even attempted to do so and they have therefore failed in their burden of proving jurisdiction.

Even assuming, *arguendo,* that damages could be aggregated, Defendants have still failed in their burden of proving jurisdiction. Defendants have not placed any

---

[6]    Since the compensatory and statutory damages are linked to individual consumers, D.C. Code § 28-3905(k)(1)(A), the statute does not confer a right to a common or united interest which could properly be aggregated under *Zahn* and *Snyder. See Reigner,* slip op. at 4.

evidence into the record regarding the actual damages suffered by each individual

consumer in the District of Columbia. Defendants' argument is premised on the fatal

flaw that Plaintiff is eligible to receive the total amount of damages to which the general

public might be eligible and that amount of damages should be assigned to Plaintiff

alone. Opp. at 14.[7]  There is no logic to this argument. In other words, someone with

transaction nexus could file an action in Superior Court alleging damages by the general

public and recoup all the damages for himself.[8]  The CPPA was not meant to become a

new lottery but a means by which to aid the beleaguered and unfunded consumer

protection branch of the Attorney General's office. DC Bar Report at 10-11; *see also*

Verheyden-Hilliard, at 3.

---

[7]    For support, Defendants cite the dissenting opinion in *Exxon Mobil Corp v. Allapattah Servs., Inc.*, 125 S. Ct. 2611, 2635-36 (2005) which clearly does not so state. To the extent the mere citation to *Allapattah* generally implies an argument that Kohan herself has $75,000 in damages and this Court has jurisdiction over the general public under 28 U.S.C. §1367, that argument equally fails. If Defendants are correct and Kohan's is only an individual action, then she has brought only a one-count complaint under the CPPA which will entitle her to (at the very most), the statutory damages of $1500—not $75,000. If Defendants are incorrect and this is not an individual action, *Allapattah* specifically held that "§1367 confers supplemental jurisdiction over claims by Rule 20 and Rule 23 plaintiffs." *Id.* at 2621. This action is not brought under either rule. For this case to satisfy *Allapattah*, the Court would have to view this action as a Rule 20 or Rule 23 action, Kohan alone would have to satisfy the amount in controversy, and the Court would then take supplemental jurisdiction over members of the general public. Since neither predicate is satisfied here, and since Defendants concede the members of the general public are not plaintiffs to this suit (Opp. at 14), *Allapattah* does not confer jurisdiction on this Court.

[8]    A representative of the general public need not be injured by the conduct in order to have a viable cause of action under the CPPA on behalf of the general public. *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 8-9 (D.D.C. 2002); District of Columbia Bar, *Consumer Protection in the District of Columbia Following Suspension of DCRA Enforcement of the Consumer Protection Procedures Act: Report with Recommendations*, at 10-11 (April 1999)(Ex. A to Declaration of Tracy D. Rezvani in Support of Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction ("Rezvani Dec."))("DC Report"); Mara Verheyden-Hilliard, *Proposed Legislation*, Partnership for Civil Justice, Inc. at 3 (April 30, 1999)(Ex.B to Rezvani Dec.). Thus, Plaintiff could have no actual damages, since she was never a customer of H&R Block, yet have standing to bring this suit in Superior Court. This does of course raise the question as to whether this Article III court, instead of an Article I court in which this case was filed, could ever take jurisdiction over such a cause of action. *See, e.g., Mangini*, 793 F. Supp. 929-30; *Levy v. Dial Corp.*, No., C-97-0537, 1997 U.S. Dist. LEXIS 21398, *11-12 (N.D. Cal. Sept. 10, 1997) (remanding a private attorney general action because the representative plaintiff had not herself been injured); *As You Sow v. Sherwin-Williams Co.*, No. C-93-3757, 1993 U.S. Dist LEXIS 18310, *7-8 (N.D. Cal. Dec. 27, 1993); *see also Allapattah*, 125 S. Ct. at 2624-25 (noting that original jurisdiction is divested in the presence of other relevant jurisdictional defects).

Moreover, Defendants' conclusory allegations in their Notice of Removal are insufficient to prove that over 50 Express IRAs were sold in the District of Columbia and damages will therefore exceed $75,000 since the speculative allegations are premised on a shifting of the burden to *Plaintiff* to so prove. If it is unclear what amount of damages the plaintiff has sought, as is true here, the defendant bears the burden of actually *proving* the facts to support jurisdiction. *Gaus*, 980 F.2d at 566-67. As the court explained in *Gaus*,

> The authority which the statute vests in the court to enforce the limitations of its jurisdiction preclude the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdiction facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.

*Id.* at 567. Defendants' assertion of federal jurisdiction is premised solely on conclusory allegations and "good faith" beliefs that the amount in controversy exceeds $75,000. Such allegations and beliefs are not sufficient to confer jurisdiction upon this Court. As the Supreme Court explained in *McNutt v. General Motors Acceptance Corp,*

> The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction maybe maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.

298 U.S. 178, 189 (1936); *see also Valdez v. Allstate Ins. Co.*, 372 F.2d 1115, 1117 (9th Cir. 2004) (removal petition that averred "upon information and belief" that the amount in controversy exceeded $75,000 was insufficient); *Gaus*, 980 F.2d at 567 (holding that a conclusory allegation "neither overcomes the 'strong presumption' against removal

13

jurisdiction, nor satisfies [the defendant's] burden of setting forth, in the removal petition itself, the underlying facts supporting its assertion that the amount in controversy exceeds" the requirement).[9]

### C.    Attorneys' Fees Cannot be Aggregated and Defendants Have Nevertheless Failed to Prove That They Exceed $75,000

The general rule is that attorneys' fees may be considered part of the amount in controversy if they are allowed for by statute or contract. *See, e.g., Brand v. Gov. Employees Ins. Co.*, No. 04-1133, 2005 WL 3201322, *6 (D.D.C. Nov. 29, 2005); *Walker v. Waller*, 267 F. Supp.2d 31, 33 (D.D.C. 2003); *NOW*, 612 F. Supp. at 108. While the CPPA allows for the recovery of reasonable attorneys' fees, it does not mandate their recovery. Therefore, recovery of attorneys' fees in this case is speculative and should not serve as the sole basis for federal jurisdiction.

Moreover, even when attorneys' fees are recoverable by statute or contract, they cannot be aggregated to satisfy the amount in controversy and must instead be allocated on a *pro rata* basis. *NOW*, 612 F. Supp. at 108; *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1293 (10th Cir. 2001); *H & D Tire and Automotive-Hardware, Inc. v. Pitney Bowes, Inc.*, 227 F.3d 326, 330-31 (5th Cir. 2000); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1079 (11th Cir. 2000); *Darden v. Ford Consumer Fin Co.*, 200 F.3d 753, 758 (11th Cir. 2000); *Goldberg v. PCP Int'l, Inc.*, 678 F.2d 1365 (9th Cir. 1982), *cert. denied*, 459 U.S. 945 (1982); *Boston Reed*, 2002 U.S. Dist. LEXIS 11683 at *20; *Phipps*, 1999 U.S. Dist. LEXIS 18745 at *11.

---

[9]    Defendants attempt to distinguish these cases on the ground that the D.C. Circuit has never adopted such an evidentiary standard and instead "looks to the allegations in the complaint and other filings." Opp. at 13 n.4. Defendants rely on *Smith* and *Martin*. Putting aside that these were FRCP 12(b0(1) decisions and not remand decisions, in each of these cases, the court noted the existence of, considered, and relied on such additional proof to determine that the amount in controversy was satisfied. *See Martin*, 723 F.2d at 991-92; *Smith*, 593 F.2d at 1099.

Even if Defendants are correct in their assertion that this case is analogous to an
individual action and that the rule against aggregation of attorney's fees does not apply --
which Plaintiff maintains *supra* that they are not -- Defendants have not met their burden
in this case. As argued *supra*, §1, Defendants effectively try to shift the burden to
Plaintiffs to prove "to a legal certainty" that damages will not exceed the jurisdictional
minimum. *See* Def Opp. at 4-5. This is not true as, given that they are seeking the
jurisdiction of this court, Defendants must supply "competent proof and justify its
allegations by a preponderance of the evidence." *Fallstrom v. Comstock*, No. 3:99cv952,
1999 U.S. Dist. LEXIS 12339 *3-4 (D. Conn. July 13, 1999); *see also Your Girl Friday*,
2006 WL 1028959 at *2 (amount in controversy not met even where defendants alleged
that the full amount could be met in a mere seventy-five hours worth of attorneys' fees);
*Julien v. CCA of Tennessee*, 268 F. Supp. 2d 19, 22 (D.D.C. 2003)(remanding case even
though court acknowledges that amount requested "*might* satisfy" the jurisdictional
requirement. (emphasis in original)); *Walker*, 267 F. Supp.2d at 33 (remanding when the
court finds that "[d]efendants have failed to show any evidence that the amount in . . .
controversy exceeds the jurisdictional requirement . . . ").

Here, Defendants have produced *no evidence*[10] regarding the fees generated up to
the time of removal or what fees will be generated through the conclusion of the case.
Instead they derive what they deem to be a "conservative" bill rate of $300 and calculate
that it would only take 250 billable hours to exceed the jurisdictional limit. *See* Opp. at
15. With zero analysis, Defendants thus summarily conclude that "any award of
attorney's fees . . . . in this case would *likely* exceed $75,000." *See* Opp. at 14-15
(emphasis added). This is exactly the type of speculative and unquantifiable analysis that

---

[10] *See* n.2, *supra*.

15

was so clearly discouraged by this Court in *Your Girl Friday*, 2006 WL 1028959 at *2.[11]

Although Defendants list some of the tasks that will need to be performed, they provide

no expert affidavits regarding the time such actions would take. *See Burke v. Medical*

*Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1068 (D. Ariz. 2004). They provide no competent

evidence regarding the time that would be required to prosecute this case. *See Surber*,

110 F. Supp. 2d at 1232. They provide no representative awards from similar actions.

*See Patton v. Fifth Third Bank*, No. 2:05-0790, 2006 U.S. Dist. LEXIS 23138 *9 (S.D.

W. Va. March 24, 2006); *Brown v. Cunningham Lindsey U.S., Inc.*, No. 3:05-cv-141-J-

32HTS, 2005 U.S. Dist. LEXIS 38862 *13-14 (M.D. Fl. May 11, 2005). Unquantifiable

and speculative allegations regarding attorney's fees are not sufficient to establish

jurisdiction, as "[j]urisdiction cannot be based upon probability, surmise or guesswork."

*Hohn*, 837 F. Supp. at 945.

Federal courts are courts of limited jurisdiction and there is a strong public policy

rationale for narrowly interpreting a federal court's diversity jurisdiction. *See St. Paul*,

303 U.S. at 288. Given such considerations, courts have expressed concern generally for

invoking subject matter jurisdiction based primarily upon non-compensatory damage

numbers. *See Srour v. Barnes*, 670 F. Supp. 18, 22 (D.D.C. 1987); *Packard*, 994 F.2d at

1046; *Neff v. General Motors Corp.*, 163 F.R.D. 478, 483 (E.D. Pa. 1995).

*Neff* is particularly instructive here. In *Neff*, plaintiffs filed a number of putative

class actions[12] in state court against General Motors alleging violation of the

---

[11]     Defendants' efforts to paint *Your Girl Friday* as a decision based on the "reasonableness" of the
fee alone are unpersuasive given the court's substantial focus on the "federalism concerns" inherent in
questions involving removal jurisdiction as well as its citations to multiple cases involving "conjecture"
and "unquantified and ambiguous" claims for extra-compensatory damages. *Cf.* Opp. at 16-17 with *Your
Girl Friday*, 2006 WL 1028959 at *2.

[12]     Because *Neff* had not been certified at the time of this decision, it is treated essentially as an

Pennsylvania Unfair Trade Practices and Consumer Protection law based on defendants'

sale of vehicles with defective rear disc brakes. *See Neff*, 163 F.R.D. at 479. Defendants

removed the case alleging diversity jurisdiction, and plaintiffs filed a motion to remand.

*See id.* at 480. The plaintiffs' complaint did not specify a specific amount of damages,

but specifically requested attorney's fees. *See id.* In evaluating whether the amount in

controversy requirement was met, the court first determined that attorney's fees would be

considered in computing the applicable amount in controversy. *See id.* at 483. The court

found that statutory damages equaled at most $3,703.69 for one plaintiff and $3,352.04

for the other. *See id.* The court ultimately held that, even with discretionary trebling and

reasonable attorney's fees, the then-existing jurisdictional amount of $50,000 could not

be reached. *See id.* at 484. In reaching this decision, the court noted that:

> As our Court of Appeals has cautioned, **"when it appears that
> such a claim [for punitive damages] comprises the bulk of the
> amount in controversy and may have been colorably asserted
> solely or primarily for the purpose of conferring jurisdiction,
> that claim should be given particularly close scrutiny."**
> *Packard*, 994 F.2d at 1046. The reasoning underlying this rule is
> that a party should not be permitted to shoehorn what is in truth a
> local action into federal court through extravagant punitive
> damages claims that are permitted only by virtue of the federal
> system's liberal pleading rules. *Kahal*, 673 F.2d at 549. **We think
> this logic applies with equal force to a claim for attorney's fees.**

*Neff*, 163 F.R.D. at 483 (emphasis added).

In reaching its decision that claims for attorney's fees should be given

"heightened scrutiny" when asserted by a defendant in the context of a notice of removal,

the *Neff* court brushed aside defendants' unsupported contentions (like those found here)

that the nature of plaintiff's claims meant that "substantial discovery, motion practice and

trial preparation will be needed," and that "[t]he fees of plaintiff's numerous counsel will

---

individual action. See *Neff*, 163 F.R.D. at 480 n.1.

substantially exceed the jurisdictional amount, assuming they haven't already, even without considering the compensatory and treble damages prayed for." *Id.* at 15. [13]

Otherwise, as this court has previously cautioned against, attorneys fees could be used confer jurisdiction on purely state law claims. *Srour*, 670 F. Supp. at 22.

*Neff* is significantly apt to the analysis here, and its holding should be followed. Plaintiff in the present case has asserted a consumer protection act claim against Defendants requesting statutory damages and attorney's fees. As in *Neff*, Plaintiff here filed in state court and Defendants removed. As in *Neff*, due to the relatively low statutory and trebled damage amount, the present Defendants need to rely almost exclusively on attorney's fees to reach the amount in controversy.

*Neff* is also completely in line with *Srour*. [14] In *Srour*, this court made a clear statement of policy, in line with the settled principle that federal courts are courts of limited jurisdiction, stating that jurisdictional "principles mitigate against allowing attorney fees to satisfy section 1332's amount in controversy" since such a practice would "hinge federal jurisdiction on the fee schedules of lawyers instead of the weight of the substantive issues before the court." *Srour*, 670 F. Supp. at 22.

---

[13]    The court stated that "[i]t is hard to conceive how a $10,000 claim, already statutorily trebled, could support a reasonable attorneys' fee of $40,000." *Id.* at 16. In reaching this particular conclusion, the court notably stressed that, at that time, the case was an individual action and that only the named plaintiffs are before the court: "As [Defendant] has reminded us at several junctures, only the named plaintiffs are now before the Court and this is not a class action, but only a putative one." *See id.* at **16. Apparently, as in this case, the defendants in *Neff* attempted to "have it both ways"; on the one hand stressing the individual nature of the case in order to avoid the rule against aggregation of damages, while, on the other hand, taking great pains to stress the procedural complexity of the case in an effort to increase the attorneys' fees. The *Neff* court did not permit that defendant to play both sides against the middle and neither should this Court.

[14]    Defendants' attempt to distinguish *Srour* based on its statement that attorney's fees are usually collateral does nothing to negate that case's clear statement of policy. *Cf.* Def. Opp. at 17-18 *with* 670 F. Supp. at 22. Here, given that there is no evidence of the value of the injunctive remedy from Plaintiff's perspective, and given that damages, at most, would be $1500, Defendants ask this Court to take jurisdiction by accepting 98% of the amount in controversy ($73,500 of $75,000) from attorneys' fees.

Accordingly, the Court here should follow *Neff* and *Srour* in giving "particularly close scrutiny" to Defendants' characterization of the likely attorney's fees. Given that Defendant here backs its summary analysis with no evidence to back up its claims regarding the attorney's fees that accrued by the time of removal[15] and are likely to accrue in the future, their contentions should be discounted and this case should be remanded to state court.

### D.    Defendants Have Not Met Their Burden Of Proving The Aggregate Value Of Damages Exceeds $75,000

Defendants then sum up their arguments by claiming that if one component of relief alone cannot satisfy the amount in controversy, then all three components, taken together and aggregated, can confer jurisdiction. Opp. at 18. As explained fully above, Defendants have failed to meet their burden in proving jurisdiction as they vacillate between arguing for an analysis under individual or group action theories. One, damages, if measured individually, can be anywhere from zero to $1500 and cannot otherwise be aggregated under class action principles. *See* § 3B, *supra*. Two, injunctive relief must be measured by the plaintiff's perspective and there is no evidence in the record of any valuation for that remedy. *See* § 3A, *supra*. Finally, speculative assertions of attorneys' fees, whether measured at the time of removal or prognosticated to the end of the case,

---

[15] Subject matter jurisdiction must exist at all phases of the litigation, and must be established in the notice of removal. *Coca-Cola Bottling*, 198 F. Supp.2d at 1283. Although the D.C. Circuit has not evaluated this issue, and although there is opposing authority on it as well, some courts have held that this means that only those attorney's fees that have accrued at the time of removal should be considered, as any possible additional fees are too speculative. *See Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958-9 (7th Cir. 1998); *Faulkner v. Astro Med., Inc.*, No. 99-2562, 1999 U.S. Dist. LEXIS 15801 *9 (N.D. Cal. 1999). Intuitively, such an argument makes sense since the claim, as it existed at removal, would not include speculative future attorneys' fees that had not (and may not) accrue in the future since "[j]urisdiction cannot be based upon probability, surmise or guesswork." Hohn v. Volkswagen of Am., 837 F. Supp. 943, 945 (C.D. Ill. 1993). If the case were settled at removal, only the attorneys' fees that have accrued up to that time would be considered. Thus all claims to future fees would necessarily be speculative and uncertain.

19

cannot constitute, for policy reasons, 98% of the amount in controversy. *See* § 3C, *supra*.

Therefore, Defendants' final attempt at clinging to jurisdiction in this Court equally fails.

## IV.    IN CASES WHERE THE AMOUNT IN CONTROVERSY IS SO DUBIOUS, A COURT SHOULD DECLINE JURISDICTION OVER NOVEL STATE LAW ISSUES

Defendants misinterpret and misstate Plaintiff's argument regarding the novelty

of the CPPA. Far from advocating that this court remand "regardless [of] whether

subject-matter jurisdiction exists," Opp. at 18, Plaintiff specifically stated that the

complaint "contains no federal cause of action and fails to meet the amount in

controversy requirement." Mot. for Remand at 11. The case cited by Defendants,

*Thermotron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 344-45 & n.9 (1976) is

therefore irrelevant since, in that case, the court explicitly found that subject matter

existed.

Plaintiff's argument is rather that the novelty of the state law claim is *yet another*

*reason* for the court to resolve all doubt concerning the propriety of removal in favor of

remand. *Walker*, 267 F. Supp.2d at 32; *Univ. of S. Ala.*, 168 F.3d at 411; *Nwachukwu*,

223 F. Supp. 2d at 66. Given the pronounced federal policy in favor of the limited

jurisdiction of federal courts, the dearth of evidence put forward by Defendants in this

case regarding the amount in controversy, and the novelty of the state law at issue, this

Court should resolve all doubt regarding jurisdiction against Defendants' on this matter.

*Smith v. Maryland & Virginia*, No. 04-1974 (HHK), 2005 WL 3276280 *12 (D.D.C.

Aug. 4, 2005)[16]

---

[16]    Defendants attempt to distinguish this case as a decision based on the supplemental jurisdiction statute, stating that it is "not relevant here." Opp. at 18 n.6. Putting aside their citation to *Allapattah* (Opp. at 14), this case is relevant in the sense that it also relies on the policy considerations of the federal court's limited jurisdiction.

## CONCLUSION

Because the Defendants have not met their burden in bringing forth affirmative
evidence that this Court's jurisdictional requirements are met, the Court should grant
Plaintiff's motion to remand this action.

Dated:  July 14, 2006                    **FINKELSTEIN, THOMPSON & LOUGHRAN**

Tracy D. Rezvani  (DC Bar #464293)
Donald J. Enright  (DC Bar #463007)
Hilary Ratway    (DC Bar #481465)
Stan M. Doerrer
The Duvall Foundry
1050 30th Street, NW
Washington, DC  20007
(202) 337-8000
(202) 337-8090 fax

21

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LYNN KOHAN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 06-1066 (RCL) |
| v. ) | |
| ) | |
| H&R BLOCK, INC. and H&R BLOCK ) | |
| FINANCIALADVISORS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 14th day of July, 2006, true and correct
copies of the Reply in Support of Plaintiff's Motion for Remand for Lack of Subject
Matter Jurisdiction and Declaration of Tracy D. Rezvani in Support of Plaintiff's Motion
to Remand for Lack of Subject Matter Jurisdiction were served by **electronic filing and
first class mail** upon:

| | |
|---|---|
| Paul M. Smith | Anton R. Valukas |
| Ginger D. Anders | Matthew M. Neurmeier |
| JENNER & BLOCK LLP | Richard P. Steinken |
| 601 Thirteenth Street, NW | Molly J. Moran |
| Suite 1200 South | JENNER & BLOCK LLP |
| Washington, DC 20005 | One IBM Plaza |
| Tel: 202-639-6000 | Chicago, IL 60611 |
| Fax: 202-639-6066 | Tel: 312-222-9350 |
| | Fax: 312-527-0484 |

Laurance W. Frierson

# EXHIBIT D

# Consumer Protection in the District of Columbia Following the Suspension of DCRA Enforcement of the Consumer Protection Procedures Act

## Report With Recommendations

by the Antitrust, Trade Regulation and Consumer Affairs Section of the D.C. Bar.

Steering Committee:
Ray V. Hartwell III, Chair
Mara E. Verheyden-Hilliard, Vice Chair
Don Farmer
Phyllis Kimmel
Carl Messineo
Emily B. Myers
Don A. Resnikoff
Deborah M. Zuckerman

Principal Authors:
Carl Messineo
Don A. Resnikoff
Patricia Sturdevant
Mara Verheyden-Hilliard

April, 1999

## STANDARD DISCLAIMER

The views expressed herein represent only those of the Antitrust, Trade Regulation and Consumer Affairs Section of the District of Columbia Bar and not those of the D.C. Bar or of its Board of Governors

Consumer Protection in the District of Columbia Following the Suspension of DCRA
Enforcement of the Consumer Protection Procedures Act

## EXECUTIVE SUMMARY

This report with recommendations of the Antitrust Trade Regulation and
Consumer Affairs Section updates its October 1997 report of the same title. It is the
outcome of a year long process in which members of the Consumer Affairs Committee of
the Section met and collaborated with a cross section of public and private entities with
an interest in D.C. consumer affairs, to develop achievable recommendations for
modernizing and improving consumer protection.

### The Existing Enforcement Structure

Under the existing enforcement structure, consumer protection is provided by
four types of entities:

1) The Department of Consumer and Regulatory Affairs (DCRA), designated
   by law as the District's consumer protection agency,
2) the Office of the Corporation Counsel,
3) the private bar, and
4) public interest organizations.

The consumer protection authority of DCRA has been suspended since 1994 as a
cost-savings measure, and in the foreseeable future appears unlikely to be reinstated.

### Shortfalls in the Existing System

The Antitrust, Trade Regulation and Consumer Affairs Section of the D.C. Bar
recognizes a number of critical shortfalls in the existing system:

- Suspension of DCRA's authority removed the primary mechanism for halting
  unlawful trade practices, and prohibited D.C.'s consumer protection agency from
  enforcing the law.

- Although the Office of the Corporation Counsel has recently established a new
  Consumer Protection Unit, legislative authority has not been enacted to provide
  Corporation Counsel with a similar range of authority to that previously exercised
  by DCRA, or to that exercised by the FTC or by the consumer protection units of
  state Offices of the Attorney General.

- Public interest organizations, and the bar do not have an enumerated authority to
  halt illegal practices through injunctive relief and disgorgement of ill-gotten gain



in the public interest.

- There is no central "point of entry" for consumer complaints.

## Recommendations of the D.C. Bar's Section on Antitrust, Trade Regulation and Consumer Affairs

The Section recommends a number of actions be taken to modernize and improve consumer protection in the District:

- The Office of the Corporation Counsel (OCC) should be provided authority comparable to that held by the Federal Trade Commission, state and local consumer protection agencies and consumer protection units of state offices of the attorney general, and certain authority granted to DCRA but now suspended.

- The OCC Consumer Protection Unit's funding should be supplemented with a Consumer Protection Fund, similar to the account used by OCC's Antitrust Unit.

- Public interest organizations and the private bar should be statutorily enabled to seek injunctive relief and disgorgement of illegal proceeds in the public interest. 

- A single point of entry should be reestablished for consumer complaints.

## Financial Impact

Financial Impact of the Recommendations: Low or none.

ii

# Consumer Protection in the District of Columbia Following the Suspension of DCRA Enforcement of the Consumer Protection Procedures Act

## Report With Recommendations

In October, 1997 the Antitrust, Trade Regulation and Consumer Affairs Section of the D.C. Bar issued a report with recommendations on the state of consumer protection in the District of Columbia following the prohibition of the Department of Consumer and Regulatory Affairs (DCRA), the District's consumer protection agency, from enforcement of the Consumer Protection Procedures Act, the District's principal consumer protection law.

A number of important changes have occurred since the issuance of the October, 1997 report, including legislative enactments of portions of the original report's recommendations. The Section has issued this report as an update of the original report, with recommendations in light of current circumstances.

## Introduction

Members of the Consumer Affairs Committee of the D.C. Bar Section on Antitrust, Trade Regulation and Consumer Affairs have spent approximately twelve months studying possibilities for improving and modernizing consumer protections in the District, in light of the current crisis and lack of existing consumer law enforcement.

The goal of this process has been to create a series of recommendations that are manageable and practical to implement, informed and supported by those who will be affected by them including the various government agencies whose responsibilities relate to consumer protection, and to develop recommendations that are achievable given existing government budget constraints and priorities.

We have sought the input and advice of a broad cross section of experts and persons who share a commitment to creating an honest and fair marketplace that will prevent deception to consumers, and will level the playing field for legitimate businesses.

We wish to express our sincere appreciation to those who have met with members of the Committee or otherwise contributed to this process, including: Wayne Chapman, Office of the Chief Management Officer; Cliff Dedrick, DCRA; Recita Evans, DCRA; Kitty Huggins, Multi-Door Dispute Resolution Division of D.C. Superior Court; Edward J. Johnson III, President, Better Business Bureau of Metropolitan Washington; Joan McKenzie, former Chief, DCRA, Office of Compliance; Nancy

1

Mercurio, WTOP Call for Action; Charlotte Parker, Office of the Corporation Counsel; Sharis Pozen, Hogan & Hartson; Luis Rambaut, Chief, Civil Division of the Office of the Corporation Counsel; Bennett Rushkoff, Senior Counsel, Consumer and Regulatory Actions, Office of the Corporation Counsel; Melanie Saunders, DCRA.

## Brief History of Consumer Protection in D.C.

The Department of Consumer and Regulatory Affairs Office of Compliance was established by statute in 1976 as the District's "principal consumer protection agency."[1] The legislative history of the D.C. Council in creating this office reflects an intention to create an "independent consumer protection agency structured along the lines and authority of a 'mini-FTC.'"[2]

Among other things, the Office of Compliance was authorized to:

- receive and investigate complaints and initiate its own investigation of deceptive, unfair or unlawful trade practices against consumers; issue summonses, hold hearings, compel the attendance of witnesses, administer oaths and take the testimony of any person under oath, concerning any trade practice or practices;
- issue subpoenas to compel the production of documents, papers, books, records, and other evidence concerning any trade practice;
- report to appropriate governmental agencies information concerning any violation of any law;
- assist, advise, and cooperate with private, local and federal agencies and officials to protect and promote the interest of the District of Columbia consumer public;
- assist, develop, and conduct programs of consumer education and information through public hearings, meetings, publications, or other materials prepared for distribution to the consumer public of the District of Columbia.

DCRA became the primary "point of entry" for consumer protection complaints. In 1993, the Office of Compliance received 3,447 consumer complaints and achieved a

---

[1]    D.C. Code § 28-3902(a).

[2]    Committee Report on Bill 1-253, the District of Columbia Consumer Protection Procedures Act, March 24, 1976.

cost savings to consumers of over $1.5 million in refunds and judgments.[3] In 1994, the District Council, citing budget constraints, prohibited DCRA, the District's consumer protection agency, from using administrative process to enforce consumer protection law.[4] That prohibition has been extended, and is now in effect through October, 2000.[5]

Currently, D.C. consumers can seek damages under a private right of action under the Consumer Protection Procedures Act.[6] This provides limited recourse, however, because the right of action does not supplant the role of a consumer protection agency. It does not explicitly empower consumers to obtain injunctive relief to stop a known fraudulent practice prior to its damaging effects; nor for injunctive relief to stop a known fraudulent practice from continuing to cause damage; nor to bring an end to fraudulent misrepresentations.[7] It does not provide for disgorgement of unjust gains to

---

[3]    "DCRA Consumer Protection — Then, Now and Future: DCRA CPPA Statistics," Miriam Hellen Jones, Esq., Chief, Office of Compliance, DCRA, January 30, 1997.

[4]    D.C. Code § 28-3902(h) (suspending enforcement of the Consumer Protection Procedures Act by the DCRA); See also sections 807 and 808 of Act 10-389, the Multiyear Budget Reduction and Support Emergency Act of 1994, 42 D.C. Reg. 229-30 (Jan. 13, 1995).

[5]    The Consumer Protection Amendment Act of 1998, Act 12-399 (June 23, 1998) (extending suspension until October, 2000).

[6]    D.C. Code § 28-3905(k)(1).

[7]    Most state Unfair and Deceptive Acts and Practices (UDAP) statutes authorize private injunctive actions, as does the model Uniform Deceptive Trade Practices Act (UDTPA). See e.g., 7 Uniform Laws Annotated (1978) (text of the UDTPA); Ala. Code § 8-19-1; Cal. Civ. Code § 1780 (West); Cal. Bus. & Prof. Code § 17200 (West); Conn. Gen. Stat. § 42-110(g); Del. Code Ann. tit. 6, § 2531; Fla. Stat. Ann. § 501.211(1) (West); Ga. Code Ann. § 106-701, 106-1201; Haw. Rev. Stat. § 480, 481A; Idaho Code § 48-608; 815 Ill. Comp. Stat. 505/10a et seg., 510-1; Kan. Stat. Ann. § 50-634; Me. Rev. Stat. Ann. tit. 5 § 213; Mass. Gen. Laws Ann. ch. 93A § 9 (West); Me. Rev. Stat. Ann. tit. 10, § 1211; Mich. Comp. Laws § 445.910; Minn. Stat. § 325D.23, 325F.69; Neb. Rev. Stat. § 87-301, 59-1608(2); N.H. Rev. Stat. Ann. § 358-A:10; N.M. Stat. Ann. § 57-12-1; N.Y. Gen. Bus. Law § 349; Ohio Rev. Code Ann. § 4165, 1345.09 (Baldwin); Okla. Stat. Ann. tit. 78, § 51 (West); Or. Rev. Stat. § 646.605; R.I. Gen. Laws § 6-13.1-5.2; Tenn. Code Ann. § 47-18-109; Tex. Bus & Comm. Code Ann. tit. 2 § 17.50(b) (Vernon); Utah

3

the public; nor does it allow an organization acting in the public interest, for example, to seek a remedy for or an end to a fraudulent practice prior to a victim coming forward.[8]

In 1999, the Office of the Corporation Counsel created a new Consumer Protection Unit. That unit does not yet have authority comparable to that exercised by DCRA, or by similar consumer protection offices in other jurisdictions. Legislation should also be enacted to enable the Unit to supplement its funding through the damage awards it obtains, as is provided for in similar units, such as OCC's Antitrust Unit.[9]

## Current Status : Consumer Law Enforcement Must Be Strengthened and Modernized

The prohibition of DCRA from administrative enforcement of the District's consumer protection laws leaves District consumers without a consumer protection agency. Three potential sources of consumer protection in the District remain, each of which has various abilities and legal authority to stop unlawful trade practices: The Office of the Corporation Counsel, [10] Private Attorneys[11] and Public Interest Organizations.[12]

---

Code Ann. § 13-2-1; Utah Code Ann. § 13-11-17; Wash. Rev. Code § 19.86.090; W. Va. Code § 46A-6-106.

[8]     See, Cal. Bus. & Prof. Code § 17200.

[9]     D.C. Code § 28-4516 (establishing District of Columbia Antitrust Fund).

[10]    See D.C. Code § 28-3909 (existing authority of the Office of Corporation Counsel to bring consumer protection actions).

[11]    D.C. Code 28-3905(k) (existing authority of private litigants to bring consumer protection actions).

[12]    Id.



Figure 1: Sources of Consumer Protection in the District of Columbia

Historically, the most active of the above sources of consumer protection has been DCRA. The authority and the roles of the three remaining consumer protection entities should be adjusted to offset the withdrawal of DCRA from consumer law enforcement.

### Shortfalls in the Existing System

There are a number of critical shortfalls in the existing system:

1) The suspension of the enforcement authority of DCRA removes the primary mechanism for halting unlawful trade practices. When active, DCRA fielded approximately 3,000 complaints per year.[13]

Some of the complaints fielded by DCRA were misunderstandings involving legitimate businesses that could be resolved through mediation or conciliation. Others involved unscrupulous merchants and required outside intervention to prevent and remedy consumer harm. Some involved patterns of unfair trade practices that caused substantial injury to consumers.

---

[13] "DCRA Consumer Protection -- Then, Now and Future: DCRA CPPA Statistics," Miriam Hellen Jones, Esq., Chief, Office of Compliance, DCRA, January 30, 1997.

5

For example, DCRA intervened after receiving allegations that D.C. based invention promotion companies were misrepresenting their services to investors across the country, DCRA negotiated a settlement that included repayment to 140 consumers of approximately $500,000, establishment of a fund of $200,000 for future complaints, and payment of fines to the D.C. Government.

In another situation, DCRA received multiple complaints that a local luxury car dealer was selling cars to D.C. area consumers even though the dealership never possessed title to the automobiles. Substantial recovery of damages was made.

DCRA litigated an award of compensatory and punitive damages against the "United Nations Student Council" for misrepresentation, after the Council marketed itself to international students falsely claiming to provide jobs, scholarships, student loans, immigration advise and other benefits.

2a)   The Office of the Corporation Counsel has recently established a new Consumer Protection Unit, but legislative authority has not been enacted to provide Corporation Counsel with a similar range of authority to that previously exercised by DCRA, or to that exercised by the FTC or by the consumer protection units of state Offices of the Attorney General.

The only D.C. Government agency with existing consumer protection authority is the Office of the Corporation Counsel. However, OCC's existing authority was granted at a time when DCRA was understood to be the District's principal consumer protection agency, and therefore OCC's authority is more limited than that granted to DCRA, which is now suspended.[14]

State agencies enforcing unfair and deceptive acts and practices (UDAP) laws generally have authority to conduct pre-filing investigations, and to issue civil investigation demands or subpoenas.[15] Investigative authority was granted to

---

[14]     Compare D.C. Code § 28-3909 (consumer protection authority granted to the Office of the Corporation Counsel), D.C. Code § 28-3903 (powers of the consumer protection agency, DCRA); See also, D.C. § 28-3902(h)(suspending DCRA's powers as consumer protection agency).

[15]     National Consumer Law Center, Unfair and Deceptive Acts and Practices, Fourth Edition (1997) at 641; See also, Md. Code Ann., Com. law II § 13-405 (providing Maryland Attorney General with subpoena power for consumer protection

DCRA for consumer law violations.[16] The Office of the Corporation Counsel currently has such authority to investigate other illegal practices, such as antitrust violations,[17] but such authority has not been vested in OCC for consumer law violations.

The legislative history of the Consumer Protection Procedures Act (CPPA) reflects an intent to grant the District a structure "along the lines and authority of a 'mini-FTC.'"[18] However, the illegal trade practices which the D.C. Government can remedy does not incorporate the definition of an unfair trade practice as defined by the Federal Trade Commission. The FTC's definitions, as defined by federal statute, 45 U.S.C. § 45(a), and administrative rules and regulations, is frequently refined to reflect current business practices, and would be appropriate to incorporate by reference into the CPPA's definition of illegal trade practices.

2b)   The newly created Consumer Unit of the Office of the Corporation Counsel lacks a supplemental source of funding, similar to that used by OCC's Antitrust Unit.[19]

3)   Public interest organizations, and private attorneys do not have the ability to seek injunctive relief and disgorgement of illegal proceeds in the public interest, as provided for example, by California consumer protection law.[20]

Under existing D.C. law, a public interest organization cannot undertake

---

investigations).

[16]     D.C. Code § 28-3903(c), § 28-3903(1)(DCRA may issue subpoenas to compel the production of documents, records, and other evidence concerning any trade practice).

[17]     D.C. Code § 28-4505 (authorizing civil investigative demands for antitrust violations).

[18]     Committee Report on Bill 1-253, the District of Columbia Consumer Protection Procedures Act, March 24, 1976.

[19]     D.C. Code § 28-4526 (establishing D.C. Antitrust Fund).

[20]     Cal. Bus. & Prof. Code § 17200.

7

representative actions to stop fraudulent conduct prior to a victim losing money. For example, under California law, an organization that monitors fraud against the elderly can take immediate action to enjoin illegal conduct, such as a fraudulent sweepstakes, before a victim loses his or her life savings.

4)  There is no central "point of entry" for consumer complaints.

The elimination of DCRA's consumer protection functions left consumers without a central location for lodging complaints and seeking consumer information. It further deprives law enforcement of a central and accessible repository of local complaints for review to identify repeat offenders or patterns and practices of illegal conduct.

8

## Recommendations

We propose the following actions be taken to modernize and improve consumer protection in the District, and to offset the elimination of the Department of Consumer and Regulatory Affairs (DCRA) as the District's consumer protection agency.

1)    Extend to the Office of the Corporation Counsel a Range of Enforcement Authority Comparable to that Exercised Previously by DCRA, and by the Federal Trade Commission and Consumer Protection Units of State Offices of the Attorney General

The Office of the Corporation Counsel should be provided with the ancillary authority necessary to carry out consumer protection functions, comparable to those vested in other law enforcement entities, such as Offices of the Attorney General in other states, the FTC, and those formerly vested in DCRA. This authority would include:

- Any appropriate[21] authority that has already been extended to DCRA, but is now suspended.[22]

- Authority to conduct pre-filing investigations, similar to the authority OCC currently holds for investigations of antitrust violations, and similar to the authority provided for consumer protection investigations to other enforcement agencies, including the Maryland Attorney General and the Federal Trade Commission.[23]

---

[21]    Certain of DCRA's former authorities would not be appropriate to extend to OCC, as they are inconsistent with OCC's function. For example, DCRA previously exercised administrative rulemaking authority that would not appropriately be transferred. See D.C. Code § 28-3903(a)(10). Nor should OCC receive the authority to issue cease and desist orders, See D.C. Code § 28-3903(a)(3), as the OCC petitions for such relief by filing a complaint with the Superior Court of the District of Columbia.

[22]    See D.C. Code § 28-3903 (powers exercised by DCRA); D.C. Code § 3902(h) (suspension of powers exercised by DCRA).

[23]    National Consumer Law Center, Unfair and Deceptive Acts and Practices, Fourth Edition (1997) at 641 (state agencies generally have authority to make civil investigative demands); See also, Md. Code Ann., Com. law II § 13-405 (providing Maryland Attorney General with subpoena power for consumer protection investigations).

- Creation of a District of Columbia Consumer Protection Fund, similar to the existing District of Columbia Antitrust Fund.[24] Contributions into this fund will consist of sums transferred pursuant to court order or judgment from an enforcement action brought by OCC, in settlement of penalties asserted by OCC, costs and attorneys fees awards to OCC, and gifts or grants or cy pres payments. This supplementary fund will enable consumer protection enforcement to be reestablished within reasonable budgetary constraints, as is the practice in other jurisdictions.

- The definition of unlawful trade practices should incorporate by reference the definition of unfair trade practices, as established by the Federal Trade Commission.[25] This is consistent with the D.C. Council's original intent to create a "mini-FTC"[26] for the District, and will allow the District's definition of unfair trade practices to reflect current federal law.

2)  Provide Public Interest Organizations and Private Attorneys the Ability to Seek Injunctive Relief and Disgorgement of Ill-Gotten Gains in the Public Interest



- Modify the existing private right of action to explicitly authorize injunctive relief and disgorgement. Disgorgement fulfills the "basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom." Bank of the West, 10 Cal. Rptr. 2d, at 547, quoting Fletcher v. Security Pacific National Bank, 23 Cal.3d 442, 451 (1979). Similarly, the inadequacy of injunctive relief alone to deter and remedy wrongful conduct has long been recognized by the courts. "While an injunction against future violations might have some deterrent effect, it is only a partial remedy since it does not correct the past consequences of past conduct...An 'order which commands [a party] only to go and sin no more simply allows every violator a free bite at the apple.'" Consumers Union, 6 Cal. Rptr. 2d, at 198.

- The private right of action should be modified to enable public interest organizations and individuals to take consumer protection actions in the public

---

24    See D.C. Code § 28-4516 (establishing District of Columbia Antitrust Fund)

25    See 15 U.S.C. § 45(a), Section 5, and related regulations.

26    Committee Report on Bill 1-253, the District of Columbia Consumer Protection Procedures Acts, March 24, 1976.

interest to stop fraudulent conduct. Currently it is not possible to bring a consumer action to stop illegal conduct until after a victim suffers injury. This is necessary in any event, but particularly important in light of the prohibition of DCRA from consumer protection enforcement, and OCC's foreseeable inability to step in and completely replace its functions.

This modernization would allow an entity or individual to bring an action and seek judicial relief when an unlawful trade practice comes to its attention. For example, an organization which monitors fraud against the elderly would be able to petition in court to stop a misleading and fraudulent mailing, in the public interest, without waiting for a senior citizen to lose his or her money.[27]

- These actions will also allow the government to coordinate with the private and non-profit sectors more efficiently, allowing the government to target its activities in areas where enforcement by private parties will not be sufficient. As a consequence, consumer protection can be increased without any additional or substantial cost to the government, as the actions brought under the private right of action will be supported by the private and non-profit sectors. Public interest organizations will be able to bring additional resources to consumer protection enforcement in the District, contributing private and donated funds that will advance public priorities without causing the expenditure of additional government resources.

3)    Reestablish A Single Point of Entry for Consumer Complaints

The elimination of DCRA as the central point of entry left consumers confused and lacking direction regarding where they can go for assistance, assuming assistance is available. We recommend options be explored for reestablishing a single point of entry for consumer complaints. Certain factors are necessary elements of any proposed point of entry:

- The point of entry should be able to advocate on behalf of the consumer and provide intake staff who are trained in the District's consumer laws.

- The point of entry should provide complainants with information that describes the full range of their options for resolution, including for example, legal remedies, sample complaint letters, information about filing a small claims complaint, and referrals to mediation centers, appropriate enforcement authorities, consumer law

---

[27]    See California Business and Professions Code Sections 17200 et seq.

11

clinics, public interest organizations and private attorneys who offer consumer protection services.

- The point of entry, if not part of District government, must provide law enforcement and government agencies full access to consumer complaints, for tracking purposes and so priorities for law enforcement actions can be identified. If the point of entry is not part of District government it is particularly important that consumer rights to pursue litigation in addition to mediation or arbitration not be precluded or hindered.

The Antitrust, Trade Regulation and Consumer Affairs Section offers its assistance to the D.C. Council in its consideration of these and other consumer related proposals. The Section welcomes input regarding additional measures that might be taken to aid D.C. consumers.

12

## Financial Impact of the Recommendations

An important consideration in making these recommendations is the constraint created by reduced government funding for consumer protection services. We expect the financial impact of the recommendations to be low or none, for the reasons below.

Recommendation No. 1, to extend to the Office of Corporation Counsel certain authority exercised previously by the DCRA, and by the FTC and consumer units of state law enforcement agencies, can be accomplished through legislative amendment. Expanded functions of the Office of Corporation Counsel may be offset by the supplemental stream of funding produced by the proposed D.C. Consumer Protection Fund. Existing funding within OCC exists for the recently created Consumer Protection Unit. Although increase in that funding for staffing purposes is desirable and possibly necessary for the most effective government consumer protection activities, increased funding is not necessitated by the proposed legislative amendments which do not mandate activities, but rather allow OCC to take actions as it perceives necessary.

Recommendation No. 2, to grant public interest organizations and private attorneys the authority to seek injunctive relief and disgorgement in the public interest, will cause no increase in government funding. Any actions pursuant to the private right of action will be funded solely by the non-profit and private sectors, who may be independently funded for such activities and/or compensated by fee shifting statutes. By coordinating with these sectors, the government can leverage the impact of existing limited public resources.

Recommendation No. 3, to reestablish a single point of entry for consumer complaints, is primarily a statement of need and a proposal for study and informed action. The point of entry may be developed at the OCC or through the creation of a 501(c)(3) non-profit organization for such purposes, which would be funded through foundation funding or other private sources.

13

# EXHIBIT E

LAW OFFICES
## PARTNERSHIP FOR CIVIL JUSTICE, INC.
1901 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, D.C. 20008-3405

CARL MESSINEO*
MARA VERHEYDEN-HILLIARD*
*ADMITTED IN D.C. AND N.Y.

TELEPHONE
(202) 530-5680

FACSIMILE
(202) 530-5684

April 30, 1999

Bennett Rushkoff, Esq.                    *Via facsimile and first class mail*
Senior Counsel
Consumer and Regulatory Actions
Office of Corporation Counsel
441 4th St. NW
Washington, DC 20001

Dear Bennett:

As we discussed, please find enclosed the proposed legislation, "The Consumer Protection Amendment Act of 1999." As you know this legislation grew out of the legislative committee of the Public-Private Working Group on Consumer Affairs, which had representatives from your office, DCRA, the non-profit sector and the private bar.

It has been a pleasure working with you to draft this document. Your experience in consumer protection law enforcement and your understanding of the needs of the Office of the Corporation Counsel and of consumers in general has been invaluable.

I believe that the enclosed legislation is consistent with and addresses the recommendations contained in the April, 1999 report of the D.C. Bar's Antitrust, Trade Regulation and Consumer Affairs Section, "Consumer Protection in the District of Columbia Following the Suspension of DCRA Enforcement on the Consumer Protection Procedures Act: Report with Recommendations."

Please let me know if the Office of Corporation Counsel would be willing to support this legislation, in view of the D.C. Bar Section's report.

Sincerely,

Mara Verheyden-Hilliard

## "The Consumer Protection Amendment Act of 1999"

To amend the Consumer Protection Procedures Act to equalize with that exercised by other jurisdictions the Office of the Corporation Counsel's authority to enforce consumer laws, and to modernize and improve existing consumer protection law enforcement systems.

### § 28-3901    Definitions and purposes

§ 28-3901(b)    The purposes of this chapter are to:

(1)    assure that a just mechanism exists to remedy all improper trade practices <u>and deter the continuing use of such practices by, among other things, requiring businesses to disgorge unjust gains obtained by the use of such acts or practices, and by assessing damages and civil penalties;</u>

(2)    promote, through effective enforcement, fair business standards throughout the community; and

(3)    educate consumers to demand high standards and seek proper redress of grievances.

> *Rationale: Disgorgement fulfills the "basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom." <u>Bank of the West v. Superior Court,</u> 10 Cal. Rptr. 2d 538, at 547 (1992)(en banc), quoting <u>Fletcher v. Security Pacific National Bank,</u> 23 Cal.3d 442, 451 (1979). Similarly, the inadequacy of injunctive relief alone to deter and remedy wrongful conduct has long been recognized by the courts. "While an injunction against future violations might have some deterrent effect, it is only a partial remedy since it does not correct the past consequences of past conduct...An 'order which commands [a party] only to go and sin no more simply allows every violator a free bite at the apple.'" <u>Consumers Union v. Alta-Dena Certified Dairy,</u> 6 Cal. Rptr. 2d 193 at 198 (Cal. App. 1 Dist. 1992).*

### § 28-3901(c)

<u>This chapter shall be construed and applied liberally to promote its purpose. In construing whether a trade practice violates this chapter, due consideration and weight shall be given to interpretations of § 5(a)(1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts.</u>

> *Rationale:*
> *The addition of subsection (c) codifies the general rule that remedial statutes be broadly construed in order to achieve their remedial purpose, and directs the court to interpretation of the FTC Act for guidance. It models a similar provision in the Maryland Consumer Protection Act, Md. Com. Law § 13-105. The*

1

*legislative history of the CPPA reflects an intent to grant the District a structure "along the lines and authority of a 'mini-FTC.'" See Committee Report on Bill 1-253, The D.C. Consumer Protection Procedures Act, March 24, 1976.*

§28-3904    Unlawful trade practices
§ 28-3904(ee) <u>violate Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a), or a Federal Trade Commission trade regulation rule.</u>

*Rationale: Subsection (ee) incorporates into the District's definition of unlawful trade practices the definition of "unfair trade practice" as established by the Federal Trade Commission. This is consistent with the legislative history of the CPPA which stated an intent to grant the District a structure "along the lines and authority of a 'mini-FTC.'" See Committee Report on Bill 1-253, The D.C. Consumer Protection Procedures Act, March 24, 1976. However, the illegal trade practices which the D.C. Government may currently remedy do not incorporate the definition of an unfair trade practice as defined by the Federal Trade Commission. The FTC's definitions, as defined by 15 U.S.C. § 45(a), and administrative rules and regulations, is frequently refined to reflect current business practices, and would be appropriate to incorporate by reference into the CPPA's definition of illegal trade practices.*

§ 28-3905    Complaint procedures
§ 28-3905(k)(1)
~~Any consumer who suffers any damage as a result of the use or employment by any person of a trade practice in violation of a law of the District of Columbia within the jurisdiction of the Department may bring an action~~ <u>Actions for relief under this chapter seeking remedy for the use or employment by any person of a trade practice in violation of a law of the District of Columbia may be brought by any person, whether acting for the interests of itself, its members, or the general public,</u> in the Superior Court of the District of Columbia to recover or obtain any of the following:

    ~~(a)    a civil fine, payable to the Department, not to exceed $500 per violation;~~

    (~~b~~ <u>a</u>)    treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;

    (~~c~~ <u>b</u>)    reasonable attorney's fees;

    (~~d~~ <u>c</u>)    punitive damages; ~~and~~

    <u>(d)    an injunction against the continuing use of an unlawful trade practice;</u>

    <u>(e)    in representative actions, in addition to the relief provided above, such orders or judgments as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unlawful trade practice; and</u>

    (~~e~~ <u>f</u>)    any other relief which the court deems proper.

2

*Rationale:* This enables public interest organizations and individuals to take consumer protection actions in the public interest to stop fraudulent conduct when an unlawful trade practice comes to their attention. Currently it is not possible to bring a consumer action to stop illegal conduct until after a victim suffers injury. This amendment allows, for example, an organization that monitors fraud against the elderly to petition the court to stop a misleading and fraudulent mailing in the public interest without waiting for a senior citizen to lose his or her life savings. This is modeled after existing California consumer protection law. *See* California Business and Professions Code Sections 17200 *et seq.*

This will also allow the government to coordinate with the non-profit and private sectors more efficiently, allowing the government to leverage the impact of existing public resources and target its activities in areas where enforcement by private parties will not be sufficient. As a consequence, consumer protection can be increased without any additional or substantial cost to the government. Public interest organizations will be able to bring additional resources to consumer protection enforcement in the District, contributing private and donated funds that will advance public priorities without causing the expenditure of additional government resources.

Proposed subsections (d) and (e) provide for injunctive relief and disgorgement of ill-gotten gain in representative actions, respectively. Although, injunctive relief presumably is available under current law pursuant to § 28-3905(k)(1)(e), this amendment codifies this presumption to eliminate any statutory ambiguity. Disgorgement has been recognized as an essential element of consumer protection law. According to the California Supreme Court, "[t]o permit the [retention of even] a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement [of the law] is to be achieved. One requirement of such enforcement is a basic policy that those who have engaged in proscribed conduct surrender all profits flowing therefrom." *Bank of the West, supra,* 10 Cal. Rptr. 2d, at 547, quoting *Fletcher v. Security Pacific National Bank,* 23 Cal.3d 442, 451 (1979).

§ 28-3905(k)(2)
The remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of the District. Nothing in this chapter shall prevent any person who is injured by a trade practice in violation of a law of the District of Columbia within the jurisdiction of the Department from exercising any right or seeking any remedy to which the person might be entitled or from filing any complaint with any other agency.

3

*Rationale: <u>cf.</u> § 28-4514(remedies cumulative in antitrust actions). This language is consistent with the existing provisions and intent of the CPPA.*

§ 29-3909 Authority of Corporation Counsel

(a)    Notwithstanding any provision of law to the contrary, if the Corporation Counsel has reason to believe that any person is using or intends to use any method, act, or practice in violation of section 28-3803, 28-3805, 28-3807, 28-3810, 28-3811, 28-3812, 28-3814, 28-3817, 28-3818, 28-3819, or 28-3904, and if it is in the public interest, the Corporation Counsel, in the name of the District of Columbia, may petition the Superior Court of the District of Columbia to issue a temporary or permanent injunction against the use of the method, act or practice. In any action under this section the Corporation Counsel shall not be required to prove damages and the injunction shall be issued without bond. The Corporation Counsel, ~~on behalf of any identifiable person,~~ may recover restitution for property lost or damages suffered <u>by consumers</u> as a consequence of the unlawful act or practice.

<u>(b)    In addition, in any action under this section, the Corporation Counsel may recover a civil penalty of not more than $1,000 for each violation found by the Court, the costs of the action, and reasonable attorney's fees.</u>

*Rationale:    cf. Md. Code Ann., Com. Law II §§ 13-409 and 13-410 (providing for recovery of costs and civil penalties by the Maryland Attorney General in consumer cases). The authority for this penalty exists currently at § 28-3905(k)(1)(A) but is more appropriately placed within the authority of Corporation Counsel, as payment of civil fines in private actions pursuant to § 28-3905 could compromise the ability of Corporation Counsel to recover civil penalties.*

<u>(c)    The Corporation Counsel may also:</u>
    <u>(1)    represent the interests of consumers before administrative and regulatory agencies and legislative bodies;</u>
    <u>(2)    assist, advise, and cooperate with private, local and federal agencies and officials to protect and promote the interests of consumers;</u>
    <u>(3)    assist, develop, and conduct programs of consumer education and information through public hearings, meetings, publications, or other materials prepared for distribution to consumers;</u>
    <u>(4)    undertake activities to encourage local business and industry to maintain high standards of honesty, fair business practices, and public responsibility in the production, promotion, and sale of consumer goods and services and in the extension of</u>

4

consumer credit;

(5)    exercise and perform such other functions and duties consistent with the purposes or provisions of this chapter, and with the Corporation's Counsel's role as parens patriae, which may be deemed necessary or appropriate to protect and promote the welfare of consumers;

(6)    negotiate, agree to, and sign enforceable assurances of voluntary compliance by merchants with the provisions of this chapter;

(7)    publicize its own actions taken in the interests of consumers.

*Rationale:    This extends to Corporation Counsel certain ancillary authorities that have already been extended to the Department of Consumer and Regulatory Affairs, but are suspended due to budget constraints. See D.C. Code § 28-3903; § 28-3902(h). The only D.C. Government agency with existing consumer protection authority is the Office of the Corporation Counsel. However, OCC's existing authority was granted at a time when DCRA was understood to be the District's principal consumer protection agency, and therefore OCC's existing authority is more limited than that granted to DCRA, which is now suspended.*

## § 28-3910    Civil investigative demand

In the course of any investigation to determine whether to seek relief under section 28-3909, the Corporation Counsel may subpoena witnesses, administer oaths, examine an individual under oath, and compel production of records, books, papers, contracts, and other documents. Information obtained under this section is not admissible in a later criminal proceeding against the person who provides the evidence.

*Rationale:    This provides Corporation Counsel with authority to conduct pre-filing investigations similar to the authority Corporation Counsel currently holds for investigations of antitrust violations, and similar to the authority provided for consumer protection investigations to other enforcement agencies, including the Maryland Attorney General and the Federal Trade Commission. cf. Md. Code Ann., Com. Law II § 13-405 (providing Maryland Attorney General with subpoena power for consumer protection investigations).*

## § 28-3911    District of Columbia Consumer Protection Fund

(a)    There is established a "District of Columbia Consumer Protection Fund" (hereafter referred to as "the Fund") to be operated as a proprietary fund with assets not to exceed $1,490,000 at any time. The fund shall consist of such sums as may be transferred to the Fund pursuant to a court order or judgment in an action brought pursuant to section 28-3909, gifts or grants or cy pres payments made to support consumer protection activities by the Corporation Counsel, and such sums as may be

recovered by the Corporation Counsel pursuant to section 28-3909 or in settlement of claims that the Corporation Counsel has asserted or could assert under section 28-3909. Any balance in excess of that allowed in the Fund shall be deposited in the General Fund of the District of Columbia.

(b)     The District of Columbia Consumer Protection Fund shall be available for use by the Corporation Counsel for the payment of costs, expenses, and charges incurred in and reasonably related to
     (1)     the investigation, preparation, institution, and maintenance of actions under section 28-3909 and section 28-3905(i)(4),
     (2)     receiving or responding to consumer complaints, or
     (3)     consumer education activities.

(c)     All income and expenses of the Fund shall be audited annually by the Mayor and reported to the Council of the District of Columbia.

*Rationale:     This will enable consumer protection enforcement to be re-established within reasonable budgetary constraints, and will allow for a supplemental source of funding, similar to that used by OCC's Antitrust Unit. See 28-3902(h) (suspending since October, 1994 enforcement of this chapter by the Department of Consumer and Regulatory Affairs due to budget constraints); cf § 28-4516 (establishing District of Columbia Antitrust Fund).*

6